## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: ASBESTOS LITIGATION

LILLIAN and JAMES HARWOOD,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀C.A. No. 1-06-CV-673
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
BONDEX INTERNATIONAL, INC., et al.⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀)

### PLAINTIFFS' MOTION TO REMAND TO STATE COURT

Plaintiffs Lillian and James Harwood, pursuant to 28 USC § 1447, hereby move this

Court to remand this case to Delaware State Superior Court (New Castle County), on the grounds

that the notice of removal is legally insufficient, there is no federal subject matter jurisdiction,

and removal is untimely. In support thereof Plaintiffs state:

1.⠀⠀Plaintiffs, Lillian and James Harwood, filed this asbestos personal-injury case in state

court (the Superior Court of Delaware for New castle County) against a number of defendants,

including Northrop Grumman Corporation ("Northrop"), on August 24, 2006 (*A true and correct*

*copy of the complaint is attached hereto as Exhibit A*). Northrop was served with Plaintiff's

Complaint on September 19, 2006 (*A true and correct copy of the Proof of Service is attached*

*hereto as Exhibit B*). Plaintiffs provided answers to standard-form interrogatories on August 28,

2006 (*A true and correct copy of Plaintiffs' Answers to Interrogaotires Directed to Defendants*

*are attached as Exhibit C*), and gave depositions to defendants on October 2, 2006.

2.⠀⠀Northrop removed this case under 28 USC §1442(a)(1)(federal officer or agency

removal), on November 1, 2006—thirty days after plaintiffs' depositions, but more than thirty

days after service of the complaint.

3.    Plaintiff Lillian Harwood was diagnosed with malignant mesothelioma in March 2005. Mesothelioma is a rapidly progressing, terminal cancer caused by exposure to asbestos. This case is set for trial in state court in May 2007.

4.    Because this is an asbestos personal-injury case, it is subject to being transferred to the Eastern District of Pennsylvania as part of the federal multi-district litigation ("MDL"). As more fully set forth in plaintiff's separate *Emergency Motion for Expedited Consideration*, this Court has the authority to hear the matter and remand the case to state court, prior to transfer.

5.    Plaintiff James Harwood worked at the Newport News Shipyard in Norfolk, Virginia from 1947 to 1970, and the Ingalls Shipyard in Pascagoula, Mississippi from 1970 to 1994, as a design specialist and field engineer. Defendant Northrop is the successor-in-interest to the prior owners of both shipyards.

6.    During this employment, Mr. Harwood worked with and around various asbestos-containing materials, which were used as components for naval ships, private commercial ships, and as building materials on the premises. Asbestos fibers from these materials adhered to his person and clothing and were, thereby, transported to the family home, vehicles and other areas where Ms. Harwood was exposed (beginning in 1951, when they were married). Plaintiffs allege that this "take-home" exposure from the shipyards caused or contributed to Ms. Harwood's contracting malignant mesothelioma.

7.    Ms. Harwood also worked briefly at the Newport News Shipyard in the early 1950's.

8.    Northrop generally contends that the shipyard activities giving rise to Ms. Harwood's exposures to asbestos were undertaken pursuant to contracts with the United States Navy and, therefore, that it will rely upon the 'government contractor defense' (*Notice of Removal*, ¶ 13). Northrop's removal is predicated upon the theory that it was acting under the direction of the

2

U.S. Navy, when it caused Ms. Harwood to be exposed to asbestos. Its *Notice of Removal* states, in brief and general terms:

> (a) that Northrop has designed and built ships for the United States Navy according to Navy specifications (*Notice*, ¶ 9);
>
> (b) that Northrop will demonstrate a causal connection between acts it performed under color of federal office and plaintiffs' claims (*Notice*, ¶ 12); and,
>
> (c) that in performing work at Newport News, Northrop followed detailed government specifications (*Notice*, ¶ 14).

9.   The *Notice of Removal* does not specifically describe any of the particular acts or omissions alleged to have been undertaken pursuant to the direction of the U.S. Navy. It does not set forth the express terms of any contracts or describe the particular requirements of any specifications relating to naval ships. It does not (even in general terms) assert that the U.S. Navy expressly specified the use of particular asbestos-containing materials, or expressly prohibited Northrop from providing warnings to its workers or taking other appropriate precautions to reduce or prevent exposure to asbestos. Northrop has not provided copies of any contracts, specifications, affidavits or other evidence in support of its very general contentions.

10.   Northrop contends that it was unable to ascertain that this case was removable, until plaintiffs were deposed on October 2, 2006. The initial complaint (served on Northrop on September 19, 2006) clearly sets out Mr. Harwood's work at Newport News and Ingalls, and expressly states Plaintiffs' 'take-home' theory of exposure. Northrop should be presumed to know the nature of the work it performed at these shipyards—especially, when it has been involved in numerous prior asbestos personal-injury cases relating to those same shipyards.

11.   None of the information, which Northrop asserts was essential to determining

removability, is reflected in its sparse *Notice of Removal*.

12.    As more fully set forth in the accompanying *Memorandum in Support*, Plaintiffs respectfully submit that removal was improper and that this case should be remanded on the following grounds:

(a) Northrop's *Notice of Removal* is insufficient as a matter of law because it lacks requisite details, specific factual allegations, and evidence in support of the asserted grounds for removal. Accordingly, Northrop, as the party invoking limited federal subject-matter jurisdiction, has failed to carry its burden to establish the existence of that jurisdiction and the propriety of removal.

(b) Separate and apart from the legally deficient *Notice*, subject matter jurisdiction is lacking here. Even if the Navy did specify the use of some asbestos-containing materials, these were necessarily 'stock items' of types equally available in the private sector. The government contractor defense does not apply to claims relating to the selection of such stock items by a government entity. Additionally, there is no causal nexus between government directives and plaintiff's injury (asbestos-related mesothelioma), because the U.S. Navy did not prohibit Northrop from issuing warnings or undertaking other precautions, which would have protected plaintiff from being exposed to asbestos.

(c) Northrop's *Notice of Removal* is untimely, having been filed more than thirty days after it received the initial complaint. Contrary to its assertions, the complaint provided more than enough information for Northrop to assess the potential for removability.

12.    Alternatively, if this Court denies remand as to claims against Northrop, Plaintiffs respectfully request that the Court decline to exercise supplemental jurisdiction over their claims against the other defendants, and remand those claims to state court. None of these other defendants timely joined in the removal.

4

WHEREFORE, Plaintiffs Lillian and James Harwood pray this Court to enter its Order

remanding this case to Delaware State Superior Court (New Castle County) and for such other

and further relief as this Court deems appropriate.


**BIFFERATO, GENTILOTTI ,
BIDEN & BALICK, L.L.C.**

_____
Ian Connor Bifferato (#3273)
Garvan F. McDaniel (#4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165
Tel. (302) 429-1900
Fax. (302) 429-8600

Dated: November 8, 2006

5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE: ASBESTOS LITIGATION

LILLIAN and JAMES HARWOOD,          )
                                    )
              Plaintiffs,           )          C.A. No. 1-06-CV-673
                                    )
       vs.                          )
                                    )
BONDEX INTERNATIONAL, INC., et al.  )
                                    )
              Defendants.           )

**ORDER**

  IT IS SO ORDERED this _____ day of _____, 2006 that the above captioned

matter is hereby remanded to the Delaware State Superior Court (New Castle County).

_____
Judge

6

# EXHIBIT "A"

EFiled: Aug 24 2006 5:50 [...] EDT
Transaction ID 12176251

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| IN RE: ASBESTOS LITIGATION: | ) | |
| | ) | |
| LILLIAN HARWOOD and JAMES HARWOOD, | ) | |
| her husband, | ) | |
| | ) | |
| Plaintiffs , | ) | |
| | ) | |
| -vs.- | ) | CA. NO. _____ |
| | ) | |
| BONDEX INTERNATIONAL INC., | ) | ASBESTOS |
| CERTAIN-TEED CORPORATION, | ) | |
| FORD MOTOR COMPANY, | ) | NON-ARBITRATION |
| FOSTER WHEELER ENERGY CORP., | ) | |
| GARLOCK INC., | ) | TRIAL BY JURY OF |
| GENERAL ELECTRIC COMPANY, | ) | TWELVE DEMANDED |
| GENERAL MOTORS CORPORATION, | ) | |
| HONEYWELL INTERNATIONAL INC., | ) | |
| INGERSOLL-RAND COMPANY, | ) | |
| JOHN CRANE, INC., | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| NORTHRUP GRUMMAN CORPORATION, | ) | |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | |
| CORPORATION, | ) | |
| RPM INTERNATIONAL INC., | ) | |
| RPM INC., | ) | |
| T.H. AGRICULTURE & NUTRITION, L.L.C. successor to) | | |
| THOMPSON HAYWARD CHEMICAL CO., INC., | ) | |
| UNION CARBIDE CORPORATION, | ) | |
| WESTINGHOUSE ELECTRIC CORPORATION, | ) | |
| n/k/a VIACOM, INC., | ) | |
| | ) | |
| Defendants, | ) | |

## COMPLAINT

Comes now Plaintiffs, Lillian Harwood and James Harwood, by and through their

attorneys, BIFFERATO, GENTILOTTI, BIDEN & BALICK, L.L.C., and in support of

their claims against the Defendants, states as follows:

1

## FACTS

1.     Lillian Harwood and her husband, James Harwood reside at: 110 San Souci Ave., Ocean Springs, Mississippi, and have lived at this residence from 1970 to the present.  Lillian Harwood's former residences include, but are not limited to: 920 Big Bethel Road, Hampton, Virginia, from 1965 to 1970; 3 Dimmock Ave., Newport News, Virginia, from 1959 to 1965; 636 Augusta St., Hampton, Virginia, from 1952 to 1959; 5885 Wickham Ave., Newport News, Virginia, from 1951 to 1952; 5400 Arlington Ave., Newport News, Virginia, from 1930 to 1951.

2.     Lillian Harwood was employed by Newport News Shipbuilding and Dry Dock Co. located at Newport News, Virginia, as a secretary from 1952 to 1953.  During the above employment, Lillian Harwood, was exposed to, inhaled, ingested and otherwise absorbed asbestos fibers emanating from various sources including, but not limited to, industrial equipment, industrial materials, refractories, insulation and sheet gasket material.

3.     Lillian Harwood, was exposed to asbestos from brakes, friction materials, and other automotive components during non-occupational projects, including, but not limited to, automotive repair and maintenance in Hampton, Virginia; Newport News, Virginia; and Ocean Springs, Mississippi; and from joint compound, drywall, roofing materials, siding, cement, and other building materials during non-occupational projects, including, but not limited to, home construction in Hampton, Virginia.

4.     Lillian Harwood's husband, James Harwood, was employed by Newport News Shipbuilding & Dry Dock Co. located at/in Newport News, Virginia, as a machinist and design specialist from 1950 to 1970, while Lillian Harwood resided with

2

her husband.    Lillian Harwood's husband, James Harwood, former employers include,

but are not limited to the following: Ingall's located at/in Pascagoula, Mississippi, as an

engineer from 1970 to 1994. Lillian Harwood's husband would on many occasions work

with and around asbestos and asbestos-containing products, including, but not limited to,

industrial equipment, industrial materials, boilers, turbines, insulation, sheet gasket

material, pumps, electrical components and materials, and refractories. Dust containing

asbestos fibers created by working with and around said asbestos and asbestos-containing

products would permeate the person and clothing of  Lillian Harwood 's husband. Said

family members carried this dust into the home, family vehicles and other areas where it

became airborne. As a result,  Lillian Harwood was repeatedly exposed to, inhaled,

ingested and otherwise absorbed asbestos fibers originating from said family members'

employment.

     5.    Lillian Harwood and James Harwood disclaim any claim for relief for any

portion of the injuries sustained upon a federal enclave or as a result of the malfeasance of any

persons acting as federal officers. Lillian Harwood and James Harwood allege no claim

arising under the maritime law of the United States or arising under any other law of the

United States of America or its Constitution. One or more Defendants are citizens of the State

of Delaware and this action is not properly removable on any theory or jurisdictional basis.

        a.    Defendant Bondex International Inc. is a foreign business entity doing

        business in the State of Delaware and subject to service of process pursuant to 10

        Del. C. § 3104(c) by service upon the Secretary of State of the State of Delaware.

        b.    Defendant Certain-Teed Corporation  is a Delaware Corporation whose

        registered agent for service of process is The Corporation Trust Company, 1209

Orange Street, Wilmington, DE 19801.

c.      Defendant Ford Motor Company is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

d.      Defendant Foster Wheeler Energy Corp. is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

e.      Defendant Garlock Inc. is a foreign business entity doing business in the State of Delaware and subject to service of process pursuant to 10 Del. C. § 3104(c) by service upon the Secretary of State of the State of Delaware.

f.      Defendant General Electric Company is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

g.      Defendant General Motors Corporation is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

h.      Defendant Honeywell International Inc. is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

i.      Defendant Ingersoll-Rand Company is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

j.      Defendant John Crane, Inc. is a Delaware Corporation whose registered

4

agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

k.     Defendant Metropolitan Life Insurance Company is an insurance company licensed to do business in the State of Delaware and as such is subject to service of process by serving the Insurance Commissioner of Delaware, 841 Silver Lake Blvd., Dover, DE 19901.

l.     Defendant Northrop Grumman Corporation is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

m.     Defendant Philips Electronics North America Corporation is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

n.     Defendant RPM International Inc. is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

o.     Defendant RPM Inc. is a foreign business entity doing business in the State of Delaware and subject to service of process pursuant to 10 Del. C. § 3104(c) by service upon the Secretary of State of the State of Delaware.

p.     Defendant T.H. Agriculture & Nutrition, L.L.C. successor to Thompson Hayward Chemical Co., Inc. is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

q.     Defendant Union Carbide Corporation is a Delaware Corporation whose

5

registered agent for service of process is The Corporation Trust Company, 1209

Orange Street, Wilmington, DE 19801.

r.     Defendant Westinghouse Electric Corporation n/k/a Viacom, Inc. is a

Delaware Corporation whose registered agent for service of process is

Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington,

DE 19808.

6.     All Defendants herein except for Metropolitan Life Insurance Company were at

all times pertinent directly or indirectly engaged in the specification, mining, manufacturing,

distribution, sales, licensing, leasing, installation, removal or use of asbestos and asbestos-

containing products. They were also engaged in the development, manufacture, distribution,

sales, licensing or leasing of equipment, procedures, or technology necessary to mine,

manufacture, sell, distribute, install, remove and use asbestos and asbestos-containing

products.

7.     During the course of her employment and her husband's employment at the

location(s) mentioned above, during non-occupational work projects (including, but not

limited to, home and automotive repairs, maintenance and remodeling) and/or in other ways,

Lillian Harwood was wrongfully exposed to and inhaled, ingested or otherwise absorbed

asbestos fibers, an inherently dangerous toxic substance emanating from certain products she

and her husband  were working with and around which were manufactured, sold, distributed

or installed by the Defendants:  BONDEX INTERNATIONAL INC., CERTAIN-TEED

CORPORATION, FORD MOTOR COMPANY, FOSTER WHEELER ENERGY CORP.,

GARLOCK INC., GENERAL ELECTRIC COMPANY, GENERAL MOTORS

CORPORATION, HONEYWELL INTERNATIONAL INC., INGERSOLL-RAND

6

COMPANY, JOHN CRANE, INC., METROPOLITAN LIFE INSURANCE COMPANY,

NORTHROP GRUMMAN CORPORATION, PHILIPS ELECTRONICS NORTH

AMERICA CORPORATION, RPM INTERNATIONAL INC., RPM INC., T.H.

AGRICULTURE & NUTRITION, L.L.C. successor to THOMPSON HAYWARD

CHEMICAL CO., INC., UNION CARBIDE CORPORATION, WESTINGHOUSE

ELECTRIC CORPORATION, n/k/a VIACOM, INC.

8.    At all times herein set forth, the Defendants' products were being employed in the

manner and for the purposes for which they were intended.

9.    Lillian Harwood's and/or her husband's exposure to and inhalation, ingestion or

absorption of the asbestos fibers emanating from the above-mentioned products was

completely foreseeable and could or should have been anticipated by the Defendants.

10.    The Defendants knew or should have known that the asbestos fibers contained in

their products had a toxic, poisonous, and highly deleterious effect upon the health of persons

inhaling, ingesting or otherwise absorbing them.

11.    Lillian Harwood suffers from an asbestos-related disease(s), including but not

limited to, mesothelioma. Lillian Harwood  first became aware that she suffered from said

disease(s) on or about March 14, 2006,  and, subsequently thereto, became aware that the

same was wrongfully caused. As a result of her developing mesothelioma, Lillian Harwood

has endured great physical pain and suffering, mental anguish and emotional pain and

suffering. Further, as a result of Defendants' wrongful conduct, Lillian Harwood was required

to receive and received medical treatment to mitigate her asbestos related disease, incurring

reasonable and necessary costs for medical care, diagnosis and treatment.

## COUNT I

7

## STRICT LIABILITY

12. The allegations in paragraphs One (1) through Eleven (11) are realleged and incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi or such law as the Court holds to be applicable.

13. At the time Defendants and each of them manufactured, sold and distributed the asbestos-containing products to which Plaintiff was exposed, said products were in a defective condition and were unreasonably dangerous in that:

      (a) Said products contained friable asbestos fibers as a constituent substance;

      (b) Said asbestos fibers were highly toxic, deleterious, poisonous and harmful to the health of Plaintiff and others similarly situated;

      (c) Said products were not accompanied by any warning/instructions or by adequate warning/ instructions advising of the danger of exposure to asbestos or of precautions to be employed in the use of asbestos-containing products.

14. Said products reached the point of Plaintiff's exposure in substantially the same condition as when manufactured, distributed and sold.

15. At all times relevant hereto, said products were used in the manner and environment intended, and in a manner reasonably foreseeable and anticipated by Defendants and each of them.

16. Defendants are strictly liable to Lillian Harwood, deceased, for all injuries and damages which were contracted as a direct and proximate result of her exposure to asbestos from said products.

17. That as a direct and proximate result of one or more of the foregoing negligent

8

acts or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled,

ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos

disease aforesaid, which has disabled and disfigured Lillian Harwood ; Lillian Harwood has in

the past and will in the future be compelled to expend and become liable for large sums of

monies for hospital, medical and other health care services necessary for the treatment of her

asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future

experience great physical pain and mental anguish as a result of her asbestos-induced disease and

conditions, Lillian Harwood has in the past and will in the future be hindered and prevented

from pursuing her normal course of employment, thereby losing large sums of money which

otherwise would have accrued to her.

**COUNT II**

**NEGLIGENCE**
**AS TO MANUFACTURERS, SELLERS, DISTRIBUTORS AND INSTALLERS**
**OF ASBESTOS PRODUCTS**

18.    The allegations in paragraphs One (1) through Seventeen (17) are realleged and

incorporated by reference within this Count.    Plaintiff's recovery herein is predicated upon the

substantive law of the State of Mississippi and the State of Virginia or such law as the Court

holds to be applicable.

19.    At all times herein relevant, the Defendants had a duty to exercise reasonable care

and caution for the safety of Lillian Harwood and her husband and others working with and

around the products of the Defendants containing asbestos.

20.    The Defendants knew or should have known that the asbestos fibers contained in

their products had a toxic, poisonous, and highly deleterious effect upon the health of persons

inhaling, ingesting or otherwise absorbing them.

9

21.     The Defendants were negligent in that they failed to exercise ordinary care and

caution for the safety of Lillian Harwood in one or more of the following respects:

a.    Included asbestos in their products, even though it was completely foreseeable
      and could or should have been anticipated that persons such as  Lillian
      Harwood and her husband working with or around them would inhale, ingest
      or otherwise absorb asbestos;

b.    Included asbestos in their products when the Defendants knew or should have
      known that said asbestos fibers would have a toxic, poisonous and highly
      deleterious effect upon the health of persons inhaling, ingesting or otherwise
      absorbing them;

c.    Included asbestos in their products when adequate substitutes for the asbestos
      in them was available;

d.    Failed to provide any or adequate warnings to persons working with and
      around the products of the dangers of inhaling, ingesting or otherwise
      absorbing the asbestos fibers contained in them;

e.    Failed to provide any or adequate instructions concerning the safe methods of
      working with and around the products, including specific instructions on how
      to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

f.    Failed to conduct tests on the asbestos containing products manufactured,
      sold, delivered or installed by the Defendants in order to determine the
      hazards to which persons such as Lillian Harwood and workers such as Lillian
      Harwood's husband might be exposed while working with the products; and,

g.    Failed to require and/or advise workers such as Lillian Harwood's family
      members of hygiene practices designed to reduce and/or prevent carrying
      asbestos fibers into the home and thereby exposing family members such as
      Lillian Harwood; and,

g.    Designed, manufactured and sold equipment, vehicles, machinery,
      technologies and systems that included asbestos-containing components
      and required and/or specified the use of asbestos-containing replacement
      components.

22.     That as a direct and proximate result of one or more of the foregoing negligent

acts or omissions on the part of the Defendants, Lillian Harwood  was exposed to and inhaled,

ingested or otherwise absorbed asbestos fibers causing Lillian Harwood  to develop the asbestos

10

disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in

the past and will in the future be compelled to expend and become liable for large sums of

monies for hospital, medical and other health care services necessary for the treatment of her

asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future

experience great physical pain and mental anguish as a result of her asbestos-induced disease and

conditions, Lillian Harwood has in the past and will in the future be hindered and prevented

from pursuing her normal course of employment, thereby losing large sums of money which

otherwise would have accrued to her.

### COUNT III

### WILLFUL AND WANTON CONDUCT
### AS TO MANUFACTURERS, SELLERS, DISTRIBUTORS AND INSTALLERS
### OF ASBESTOS PRODUCTS

23.     The allegations in paragraphs One (1) through Twenty-Two (22) are realleged and

incorporated by reference within this Count.  Plaintiff's recovery herein is predicated upon the

substantive law of the State of Mississippi and the State of Virginia or such law as the Court

holds to be applicable.

24.     The Defendants had a duty to refrain from willful and wanton acts or omissions

which would harm Lillian Harwood.

25.     Defendants are guilty of one or more of the following acts or omissions

amounting to willful and wanton misconduct:

      a.    Intentionally or with reckless disregard for the safety of Lillian Harwood,
included asbestos in their products, even though it was completely
foreseeable and could or should have been anticipated that persons such as
Lillian Harwood and her husband working with or around them would
inhale, ingest or otherwise absorb asbestos;

11

b.  Intentionally or with a reckless disregard for the safety of Lillian Harwood, included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

c.  Intentionally or with a reckless disregard for the safety of Lillian Harwood, included asbestos in the products when adequate substitutes for the asbestos in them was available;

d.  Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

e.  Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

f.  Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as Lillian Harwood's husband might be exposed while working with the products;

g.  Failed to adequately label, warn, package, market, distribute, install, remove, or use asbestos in a reasonable manner which would minimize or eliminate the escape of asbestos dust and fibers, therefore adding to the exposure of Lillian Harwood and other similarly situated;

h.  Failed to take adequate steps to remedy the above failures, including but not limited to (1) failure to recall or require removal of asbestos and asbestos products, coupled with (2) ongoing failure to conduct research as to how to cure or minimize asbestos injuries and how to use, install, or distribute asbestos so as to render if safe, and (3) failure to promptly and safely remove the asbestos now in place; and,

i.  Intentionally or with a reckless disregard for the safety of Lillian Harwood,  failed to require and/or advise workers such as Lillian Harwood's family members of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood; and,

12

j.    Intentionally or with a reckless disregard for the safety of Lillian Harwood, designed, manufactured and sold equipment, vehicles, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

26.    As a direct and proximate result of the above actions and/or omissions of Defendants, Lillian Harwood was injured as described herein.

27.    A direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood ; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

28.    In addition to compensatory damages, an award of punitive damages is appropriate and necessary in order to punish Defendants and each of them, for their willful, wanton, intentional and/or reckless misconduct and to deter each Defendant and others similarly situated from engaging in like misconduct in the future.

## COUNT IV

## (CONSPIRACY AGAINST METROPOLITAN LIFE INSURANCE COMPANY)

13

29.     The allegations in paragraphs One (1) through Twenty-Eight (28) are realleged and incorporated by reference within this Count.  Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

30.     Defendants METROPOLITAN LIFE INSURANCE COMPANY agreed and conspired with the Defendants named herein and with other miners, manufacturers, sellers, distributors and installers of asbestos-containing products to suppress and misrepresent the hazards of exposure to asbestos.

31.     Defendants Metropolitan Life Insurance Company, as well as other members of the asbestos industry, including but not limited to Defendants listed herein, engaged in investigations and research as to the hazards of asbestos and often edited out observations and conclusions deemed to be potentially harmful to the asbestos industry and only published favorable portions of their findings or refrained from publishing anything.  Furthermore, Metropolitan Life financially aided the asbestos industry in its endeavors to mislead and obfuscate.

32.     As a direct and proximate result of the above wrongful activities of the Defendants, Lillian Harwood and her family members were exposed to asbestos and he developed the asbestos-related disease discussed and sustained the injuries described herein.

33.     As a direct and proximate result of such actions and omissions of Defendants, Lillian Harwood was damaged as described herein.

## COUNT V

## STRICT LIABILITY/ULTRA-HAZARDOUS ACTIVITY (TAKE HOME PREMISES)

14

34. The allegations in paragraphs One (1) through Thirty-Three (33) are realleged and incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

35. Defendant, **NORTHROP GRUMMAN CORPORATION**, owned, operated and/or controlled the Newport News Shipbuilding & Dry Dock Co. premises located at/in Newport News, Virginia, at all relevant times. While Lillian Harwood resided with her husband, Lillian Harwood's husband worked at the premises of Defendant from 1950 to 1970. Defendant, **NORTHROP GRUMMAN CORPORATION**, owned, operated and/or controlled the Ingall's premises located at/in Pascagoula, Mississippi, at all relevant times.

36. While present upon the above-named premises, and during employment with Defendants, Lillian Harwood's husband was exposed to asbestos fiber emanating from asbestos-containing materials and raw asbestos present and being used at said premises by Lillian Harwood's husband and others, which Lillian Harwood's husband carried home on his person and clothing. Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed the asbestos fibers carried home on the person and clothing of her husband.

37. As a direct and proximate result of said exposure, inhalation, ingestion and/or absorption, Lillian Harwood suffered from asbestos-related disease(s), including but not limited to, mesothelioma. Lillian Harwood first became aware that she suffered from said disease(s) on or about March 14, 2006, and, subsequently thereto, became aware that the same was wrongfully caused.

15

38.    Lillian Harwood and/or her husband's exposure to and inhalation, ingestion and/or absorption of said asbestos fibers was foreseeable and could or should have been anticipated by Defendants and each of them.

39.    Defendants knew or should have known that exposure to asbestos fibers posed an unreasonable risk of harm to and others similarly situated.

40.    Defendants' use of asbestos-containing products and raw asbestos at the above-named facilities, in a manner causing the release of asbestos fibers, constituted an ultra-hazardous activity.  Defendants are strictly liable for injuries caused by such activity, regardless of the amount care exercised.

41.    That as a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

## COUNT VI

## NEGLIGENCE (TAKE HOME PREMISES)

16

42.    The allegations in paragraphs One (1) through Forty-One (41) are realleged and incorporated by reference within this Count.    Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

43.    Lillian Harwood and her husband were unaware and had no reasonable way to know or realize the risks of being exposed to asbestos.  Defendants should have anticipated that Lillian Harwood and her husband did not know and would not discover or realize the risks of being exposed to asbestos fibers or the risks of carrying asbestos fibers home.

44.    Defendants had a duty to use ordinary care to see that the premises, at which Lillian Harwood's husband was rightfully present, were in a reasonably safe condition for use by Lillian Harwood's husband and to use ordinary care for the safety of Lillian Harwood and her husband in conducting any operations or activities on said premises.

45.    Defendants breached its duties to Lillian Harwood and her husband and were negligent in one or more of the following respects:

> (a) Specified/required the use/application/removal of asbestos-containing materials by Lillian Harwood's husband, and others, including co-workers of Lillian Harwood's husband and outside contractors, in the vicinity of Lillian Harwood's husband and/or in areas in the vicinity of Lillian Harwood's husband and/or in areas in which Lillian Harwood's husband performed work;
>
> (b) Required Lillian Harwood's husband to perform work in the vicinity of those using/applying/removing asbestos-containing materials;
>
> (c) Purchased/provided asbestos-containing materials for purposes of application at the above-named premises;
>
> (d) Failed to replace asbestos-containing materials at the premises with non-asbestos substitutes, which Defendants knew or should have known were available;

(e) Failed to warn Lillian Harwood's husband that they were working with and/or around asbestos-containing materials and of the risks associated therewith, including that Lillian Harwood and her husband were being exposed to asbestos fibers and of the adverse health effects of such exposure;

(f) Failed to require and/or advise Lillian Harwood's husband, other employers and/or outside contractors to use safety equipment and practices designed to reduce the release of asbestos fibers and/or exposure to asbestos;

(g) Failed to provide equipment designed to contain asbestos fibers and reduce the risks of exposure to asbestos;

(h) Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as her husband might be exposed while working with the products; and,

(i) Failed to require and/or advise workers such as Lillian Harwood's husband of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood.

46.    As a direct and proximate result of one or more of the foregoing acts and/or omissions by Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, causing Lillian Harwood to develop the aforementioned asbestos-related disease.

47.    That as a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and

18

conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from

pursuing her normal course of employment, thereby losing large sums of money which otherwise

would have accrued to her.

## COUNT VII

## WILLFUL AND WANTON MISCONDUCT (TAKE HOME PREMISES)

48.    The allegations in paragraphs One (1) through Forty-Seven (47) are realleged and

incorporated by reference within this Count.  Plaintiff's recovery herein is predicated upon the

substantive law of the State of Mississippi and the State of Virginia or such law as the Court

holds to be applicable.

49.    Defendants and each of them had a duty to see that the premises, at which Lillian

Harwood's husband was rightfully present, was in a reasonably safe condition for use by Lillian

Harwood's husband and to protect Lillian Harwood and Lillian Harwood's husband from harm in

conducting any operations or activities on said premises.

50.  Defendants breached their duties to Lillian Harwood and her husband and acted

willfully, wantonly, intentionally and/or in reckless disregard for Lillian Harwood and her

husband's safety and health in one or more of the following respects:

> (a) Intentionally or with a reckless disregard for the safety of Lillian Harwood
> and/or her husband, specified/required the use/application/removal of
> asbestos-containing materials by Lillian Harwood's husband, and others,
> including co-workers of Lillian Harwood's Lillian Harwood and outside
> contractors, in the vicinity of Lillian Harwood's husband and/or in areas in the
> vicinity of Lillian Harwood's husband and/or in areas in which Lillian Harwood's
> husband performed work;

> (b) Intentionally or with a reckless disregard for the safety of Lillian Harwood
> and/or her husband, required Lillian Harwood's husband to perform work in the
> vicinity of those using/applying/removing asbestos-containing materials;

19

(c) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, purchased/provided asbestos-containing materials for purposes of application at the above-named premises;

(d) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to replace asbestos-containing materials at the premises with non-asbestos substitutes, which Defendants knew or should have known were available;

(e) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to warn Lillian Harwood's husband that he was working with and/or around asbestos-containing materials and of the risks associated therewith, including that Lillian Harwood and her husband were being exposed to asbestos fibers and of the adverse health effects of such exposure;

(f) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to require and/or advise Lillian Harwood's husband, other employers and/or outside contractors to use safety equipment and practices designed to reduce the release of asbestos fibers and/or exposure to asbestos;

(g) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to provide equipment designed to contain asbestos fibers and reduce the risks of exposure to asbestos;

(h) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as her husband might be exposed while working with the products; and,

(i) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to require and/or advise workers such as Lillian Harwood's husband of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood.

51.    As a direct and proximate result of one or more of the foregoing willful, wanton, intentional and/or reckless acts and/or omissions by Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, causing her to develop the aforementioned asbestos-related disease for which Lillian Harwood is entitled to recover compensatory damages, as prayed above.

20

52.    That as a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

## COUNT VIII

## LOSS OF CONSORTIUM

53.    The allegations in paragraphs One (1) through Fifty-Two (52) are realleged and incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

54.    Plaintiff James Harwood is married to plaintiff Lillian Harwood. As a result of the Defendants' wrongful conduct which cause her husband's above stated asbestos-related disease and problems, plaintiff James Harwood has and will continue in the future to suffer a loss of support, consortium and society of her husband, together with related mental anguish and pain and suffering.

21

WHEREFORE, plaintiffs, Lillian Harwood and James Harwood pray this Court to enter judgment against Defendants and to award: compensatory damages in an amount to be proved at trial, but believed to exceed $100,000; and punitive damages in an amount sufficient to punish Defendants for their misconduct and to deter similarly situated parties from committing like acts of misconduct in the future; and for such other and further relief that this Court deems appropriate.

**BIFFERATO, GENTILOTTI, BIDEN & BALICK, L.L.C.**

Ian Connor Bifferato (DE Id. No. 3273)
Garvan F. McDaniel (DE Id. No. 4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington DE 19899-2165
Tel. (302) 429-1900
Fax. (302) 429-8600

Dated: 8/24/06

**OF COUNSEL**
SIMMONSCOOPER LLC
John A. Barnerd (IL Id. No. 6269365)
707 Berkshire Boulevard
East Alton, Illinois 62024
Tele: (618) 259-2222
Fax: (618) 259-2251

22

# EXHIBIT "B"

EFiled: Sep 27 2006 9:11 AM EDT
Transaction ID 12470500

September 21,

OFFICE OF THE SHERIFF

Served: 1. CERTAINTEED CORPORATION 2. FORD MOTOR COMPANY 3. FOSTER WHEELER ENERGY CORPORATION    4. GENERAL ELECTRIC COMPANY    5. GENERAL MOTORS CORPORATION 6. INGERSOLL-RAND COMPANY 7. JOHN CRANE INC 8. NORTHROP GRUMMAN CORPORATION 9. UNION CARBIDE CORPORATION

By serving their R/A CORPORATION TRUST CO, by delivering copies of the within writs together with copies of the Summons and Complaint to SCOTT LA SCALA, , of the said registered agent on 9/19/2006 at 10:45AM.

Fees Paid: $145.00

Civil Action # 06C-08-224
Per: Deputy Sheriff, Clarence Everett

SO ANS;
SHERIFF

WRIT RET. 9-22-06

PER   Doreen Simmons

Document # 06015567

EFiled: Aug 24 2006 5:50PM EDT
Transaction ID 12176251



## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR NEW CASTLE COUNTY

IN RE: ASBESTOS LITIGATION:                          )
                                                     )
LILLIAN HARWOOD and JAMES HARWOOD,                   )
her husband,                                         )
                                                     )
        Plaintiffs ,                                 )
                                                     )
        -vs.-                                        )  CA. NO. _06C-08-224_
                                                     )
BONDEX INTERNATIONAL INC.,                           )  ASBESTOS
CERTAIN-TEED CORPORATION,                            )
FORD MOTOR COMPANY,                                  )  NON-ARBITRATION
FOSTER WHEELER ENERGY CORP.,                         )
GARLOCK INC.,                                        )  TRIAL BY JURY OF
GENERAL ELECTRIC COMPANY,                            )  TWELVE DEMANDED
GENERAL MOTORS CORPORATION,                          )
HONEYWELL INTERNATIONAL INC.,                        )
INGERSOLL-RAND COMPANY,                              )
JOHN CRANE, INC.,                                    )
METROPOLITAN LIFE INSURANCE                          )
   COMPANY,                                          )
NORTHROP GRUMMAN CORPORATION,                        )
PHILIPS ELECTRONICS NORTH AMERICA                    )
   CORPORATION,                                      )
RPM INTERNATIONAL INC.,                              )
RPM INC.,                                            )
T.H. AGRICULTURE & NUTRITION, L.L.C. successor to)
   THOMPSON HAYWARD CHEMICAL CO., INC.,              )
UNION CARBIDE CORPORATION,                           )
WESTINGHOUSE ELECTRIC CORPORATION,                   )
   n/k/a VIACOM, INC.,                               )
                                                     )
        Defendants,                                  )

## SUMMONS

### THE STATE OF DELAWARE:
### TO THE SHERIFF OF NEW CASTLE COUNTY:
### YOU ARE COMMANDED:

To summon the above named Defendants, as noted in the Praecipe, so that, within 20
days after service hereof upon Defendants' agent, exclusive of the day of service, Defendants

1

shall serve upon Plaintiffs' attorney, Ian Connor Bifferato, at Bifferato Gentilotti, Biden & Balick, L.L.C., 1308 Delaware Avenue, Wilmington, Delaware, 19806, an answer to the Complaint (and, if an affidavit of demand has been filed, an affidavit of defense).

To serve upon Defendants' Agent a copy hereof and of the Complaint (and of the affidavit of demand if any has been filed by Plaintiffs).

Date: 9/12/06

Prothonotary
SHARON D. AGNEW

Per Deputy

### TO THE ABOVE NAMED DEFENDANTS:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on Plaintiffs' attorney named above an answer to the Complaint (and, if an affidavit of demand has been filed, an affidavit of defense), judgment by default will be rendered against you for the relief demanded in the Complaint (or in the affidavit of demand, if any).

9/12/06

Prothonotary
SHARON D. AGNEW

Per Deputy

2

# EXHIBIT "C"

EFiled: Aug 28 2006 8:48AM EDT
Transaction ID 12193578

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

IN RE: ASBESTOS LITIGATION:                    )
                                               )    CA. NO.  06C-08-224 ASB
LILLIAN HARWOOD and JAMES HARWOOD,             )
her husband,                                   )    ASBESTOS
                                               )
         Plaintiffs,                           )    NON-ARBITRATION
                                               )
         -vs.-                                 )    TRIAL BY JURY OF
                                               )    TWELVE DEMANDED
BONDEX INTERNATIONAL INC., et al.,             )
                                               )
         Defendants,                           )

PLAINTIFFS' ANSWERS TO INTERROGATORIES
DIRECTED TO PLAINTIFF BY ALL DEFENDANTS
AND RESPONSE TO REQUEST FOR PRODUCTION

## Preamble

### A.    Personal History

1.    State all names by which you have been known; the date and place of your birth;

occupation; social security number; height; weight; color of hair and eyes; and the number of any

motor vehicle operator's license held in the State of Delaware or any other state.

ANSWER:    Name:          Lillian Vaughan Harwood
           DOB:           September 27, 1930
           Occupation:    Retired
           SSN:           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
           Height:        5' 5"
           Weight:        175 lbs.
           Hair:          Gray
           Eyes:          Hazel
           DL#:           800172742

2.    State the address of each place of residence that you have occupied from 1936 to

date.

1

ANSWER:

| | |
|---|---|
| Current Address: | 110 San Souci Ave., Ocean Springs, MS |
| Years: | Sept 1970 – Present |
| | |
| Previous Address: | 920 Big Bethel Road, Hampton, VA |
| Years: | 1965 – 1970 |
| | |
| Previous Address: | 3 Dimmock Ave., Newport News, VA |
| Years: | 1959 – 1965 |
| | |
| Previous Address: | 636 Augusta St., Hampton, VA |
| Years: | 1952 – 1959 |
| | |
| Previous Address: | 5885 Wickham Ave., Newport News, VA |
| Years: | January 1951 – 1952 |
| | |
| Previous Address: | 5400 Arlington Ave., Newport News, VA |
| Years: | 1930 - 1951 |

3.    Are you married?  If yes, please state the name and present address of your

spouse.

ANSWER:    James Harwood, 110 San Souci Ave , Ocean Springs, MS

4.    If you have had any previous marriages, please state the name of any former

spouse, and state the date, place and circumstances under which the marriage or marriages were

dissolved or terminated

ANSWER:    None.

5    Please state the name, ages and present address of your children.

ANSWER:
Son:    James Ray Harwood, 9170 E. Gold Links, Apt. 3102, Tucson, AZ; Born: February 1954
Son:    Robert Burleigh Harwood, 732 S. Old Mill rd., Dover, DE; Born:  June 1960

2

6.    If you have ever been a member of the Armed Forces of the United States, state

the following:

      (a)    The branch of the service, serial number, and highest rank held;

      (b)    The beginning and ending dates of your military services;

      (c)    The type of discharge that you received;

      (d)    Whether you were given a physical examination which included x-rays prior to the time you entered the service;

      (e)    Whether you received any injury while in the military services; and

      (f)    Whether you have claimed disability for any injury or physical condition arising out of your military service.

ANSWER:    I did not serve in the military.

7.    If you have had a claim arising out of your military service, state the date on

which the claim was made, the nature of the claim, the claimed disability and the disability

rating, if any, which you were given.

ANSWER:    I did not serve in the military.

8.    If you have ever been convicted of a felony or a crime involving dishonesty, state

fully and in detail the date, place and nature of each such felony conviction.

ANSWER:    Objection. Plaintiff objects to this interrogatory as being beyond the scope of discovery, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. By way of further answer without waiving said objection, then no.

9.    Give a brief summary of your education, including schools attended and the last

year completed.

ANSWER:
George Wythe Elementary School, Hampton, VA
Elementary School in Newport News, VA
George Wythe Junior High School, Hampton, VA

3

Hampton High School, Hampton, VA

**B.    Employment Background**

    10.    State the names and address of each employer for whom you worked during the years 1936 to date, stating as to each such employer the beginning and ending dates of employment, the nature of the business, the name and address of your direct supervisor, and your particular job function.

        ANSWER:    See attached employment history forms.

**C.    Product I.D. and Exposure History**

    11.    With respect to any products containing asbestos manufactured, packaged, furnished, supplied, or sold by each defendant named in this action that you claimed to have worked with or around, state the following for each defendant.

        (a)    The name of the product or products;

        (b)    The name of your employer at the time you worked with or around such product;

        (c)    The name and address of the plant where you worked with or around such products;

        (d)    The name and last known address of your immediate supervisor or job superintendent on such job;

        (e)    The name and last known address of all persons with whom you worked on such jobs; and,

        (f)    The approximate length of time that you worked on each such job.

    ANSWER:

    See work and exposure history forms of Lillian Harwood and James Harwood, her husband, attached hereto   Generally, I know types of asbestos products used in the shipyards but do not personally recall brand names at this time.  Investigation continues.

4

12.    State fully and in detail each and every evidentiary fact upon which the alleged

negligence or alleged liability of each defendant is based. As to each such fact, state:

    (a)    The identities, including names, business addresses, residential address, of
    each individual having knowledge of those facts;

    (b)    Identify each document which supports or tends to support the existence of
    such fact. Identify the document by briefly describing it, and by stating its
    present location and the name and full business address of the present
    custodian of the document.

ANSWER:    Objection. Plaintiff objects to this interrogatory as vague, overly broad and
unduly burdensome. Subject to and without waiving said objections, plaintiff states: Evidentiary
facts will be provided as to conditions of the workplace; the plaintiff's exposure to asbestos
containing products; the lack of and/or failures of safety or respiratory devices; defendants' state
of knowledge regarding asbestos; defendants' lack of warning; dangers of asbestos and the
defendants' disregard of these dangers; medical records and testimony specific to the plaintiff,
and other necessary elements of the claim.

The evidence will include, among other items: testimony specific to this case;
documents and exhibits from defendants and other parties, materials from other lawsuits
including exhibits, trial testimony, depositions, admissions, discovery, documents produced by
all defendants in previous litigation, and any other relevant sources of information now known or
discovered in the future, as investigations as to all defendants' are on-going.

See also, Master Expert Disclosures, Master Exhibit List, and Case Specific Fact
Witness Disclosures which will be filed in compliance with the scheduling order controlling this
case

13.    For each asbestos containing product, material or mineral, manufactured,

produced, prepared, distributed or sold by each defendant, state in detail for each such defendant:

    (a)    Which such product, material compound, etc. (hereinafter referred to as
    "product") you claimed to have come into contact with at any time from
    1936 to the present;

    (b)    Describe separately and in detail each such product as fully as possible
    including the trade name, product type and product contents;

    (c)    The dates on which you came into contact with each such product, as

listed in your answer to subpart (a) of this interrogatory, and state with
which product or products you came into contact with on each such date;

(d)     The name, address and telephone number of your employer and each date
        listed in subpart (c) above;

(e)     The name, address and location of your place of employment or job site on
        each date listed in subpart (c) above;

(f)     The address of your residence on each date listed in subpart (c) above;

(g)     The type of work you were performing on each such date set forth in
        subpart (c) above;

(h)     The present name, business address and telephone number, and residence
        address and telephone number of each person who witnessed your work on
        each date set forth in subpart (c) above;

(i)     All instructions, recommendations or warnings of any kind regarding each
        product listed in your answer to subpart (a) above that accompanied the
        product, i.e., printed on tag, tag covering or instruction sheet
        accompanying the product, etc., in verbatim or with as complete and
        accurate detail as is possible;

(j)     Any and all instructions or recommendations given to you regarding each
        product listed in your answer to subpart (a) above given by your employer
        or superior at any time, in verbatim or with as complete and accurate detail
        as is possible;

(k)     For what purpose you used each such product listed in your answer to
        subpart (a) above; and,

(l)     All literature that you, your attorneys, agents, or anyone acting in your
        behalf have received regarding each product listed in your answer to
        subpart (a) above to this interrogatory. Include in your answer the subject
        matter, document title and publication date of all such literature.

ANSWER:     (a-k) Objection. Plaintiff objects to this Interrogatory as overly broad, vague and
unduly burdensome. Subject to and without waiving objections, see above answers to
Interrogatories 10-12.
        (l) Objection. Plaintiff objects to this Interrogatory as vague, overly broad and
unduly burdensome. Subject to and without waiving said objections, see response to
Interrogatory 12. Furthermore, documents will be made available upon request.

6

14. In regard to each and every other defendant named or to be named in this lawsuit, answer and provide all the information requested in Interrogatory No. 13 accordingly.

ANSWER: See response to Interrogatory 13.

15. Did you ever work with or come in contact with asbestos products manufactured, sold, etc., by any other entity not named as a defendant in this lawsuit? If yes, identify each such entity and, with regard to same, answer fully and provide the information requested in Interrogatory No. 13 accordingly.

ANSWER: I do not personally recall others at this time. It would depend on the brands of asbestos products used at the shipyards identified in the work and exposure history forms

16. With respect to each job on which you worked with or around asbestos products, state separately the following as to each such job:

      (a)     The name and address of the employer for whom you worked;

      (b)     The location of each job (stating the plant site, city, county and state);

      (c)     The beginning and ending dates of the job; and product containing asbestos with which you worked on the particular job and a general description of each such product.

ANSWER: (a-c) See responses to Interrogatories 10 and 11.

17. Are you able to state that you have not worked with or around asbestos products manufactured by companies who are not named defendants in this suit?

ANSWER: See response to Interrogatories 15 and 16.

18. Please list all past employers in whose employ you came into contact with asbestos or asbestos-containing materials. Include in your answer for each such employer:

      (a)     Name, address and telephone number;

7

    (b)    Job title and work description;

    (c)    Type and identity of each such asbestos material with which you had contact;

    (d)    Whether employer provided safety equipment so as to reduce or prevent harmful exposure to asbestos materials;

    (e)    Whether employer required that employees use safety equipment of the type referred to in subpart (d) above;

    (f)    Whether employer ever recommended that such safety equipment be used by its employees;

    (g)    Whether employer provided showers for employees;

    (h)    Whether employer provided separate lockers for both work and personal clothing; and,

    (i)    If company-sponsored physical examinations were required or made available. If so, please state:

        (i)  Whether required or optional;

        (ii)  Frequency of examination;

        (iii)  Nature and extent of examination;

        (iv)  Whether x-ray examination or respiratory or pulmonary examinations were included;

        (v)  Frequency with which you submitted to such examination when required or made available;

        (vi)  Your detailed reason for failing to submit to such examination when required or made available;

        (vii)  Results of each such examination; and,

        (viii)  Name, address and telephone number of examining physician, nurse or technician.

ANSWER:   See attached work history forms. I was never offered nor participated in a company-sponsored physical at any of my employers. I was never offered nor used any safety

equipment at any of my employers.

19.    Were you ever employed where your duties involved the tearing out of insulation which contained asbestos? If your answer is in the affirmative, please state for each such employment:

      (a)    Name, address and telephone number of employer;

      (b)    Name and location of job site;

      (c)    Dates of such employment period;

      (d)    Detailed job description and description of work methods and techniques; and,

      (e)    Whether or not respiratory safety equipment was:

            (i) Required;

            (ii) Made available to you; or

            (iii) Recommended by employer

ANSWER:    No.

20    Have you at any time during your lifetime ever used any device to reduce your possible exposure to, or inhalation of, asbestos dust or fiber? If your answer is in the affirmative, please state for each such device:

      (a)    The make, model and type;

      (b)    From whom it was received;

      (c)    Company or employer requirements regarding use of such device;

      (d)    Company or employer recommendations regarding use of such device;

      (e)    Name, address and telephone number of document title, date and description of the source of such requirement or recommendation;

9

(f)    Date and time of each period of use of such device; and,

(g)    If you will do so without a motion to produce, please attach a copy of each writing which evidences the requirements or recommendations referred to in subparts (c) and (d) of this interrogatory.

ANSWER:    No.    ,

21.    Did any of your employers ever suggest or recommend that you might or should use any device to reduce your possible exposure to or inhalation of asbestos dust or fibers? If your answer is in the affirmative, please state for each and every such employer:

(a)    Name, address and telephone number;

(b)    The date, time and place when each such suggestion or recommendation was made;

(c)    The name, address and telephone number of each person present when such suggestion or recommendation was made to or received by you;

(d)    The name, address and telephone number of each person receiving same or similar suggestion or recommendation;

(e)    The exact wording and content of such suggestion or recommendation;

(f)    Whether such suggestion or recommendation was written or oral, and;

(i) If written, please identify in detail each such writing; and,

(ii) If oral, please set forth all persons involved and details as to the manner in which each such suggestion or recommendation was presented.

(g)    The type, make and model of each device referred to in each such suggestion or recommendation;

(h)    The nature of any action, if any, taken by you in response to each such suggestion; and,

(i)    Describe in detail your reasons for any response to such suggestions or recommendations other than full compliance thereto.

ANSWER:    No.

22. At any time, did you receive, have knowledge of, or possess any advice, publication, warning, order, directive, requirement or recommendation, written or oral, which purported to:

    (a)    Warn or advise you of the possible harmful effects of exposure to, or inhalation of, asbestos or asbestos-containing products; or

    (b)    Advise or recommend as to techniques, methods or equipment which would serve to reduce or guard against such potentially harmful exposure?

ANSWER:    No.

23. If your answer to any part of Interrogatory No. 22 is in the affirmative, please state:

    (a)    The nature and exact wording of such advice, warning or recommendation;

    (b)    The complete identity of each source of such advice, warning or recommendation;

    (c)    The date, time, place, manner and circumstances when each such advice, warning or recommendation was given;

    (d)    The name, business address and telephone number, job title, residence address and telephone number of each and every witness to the plaintiff's reception of such advice, warning or recommendation; and,

    (e)    The name, business address and telephone number, job title, residence address and telephone number of each and every co-worker or similar member of your trade and occupation who also received the same or similar advice, warning or recommendation.

ANSWER:    No.

**D.    Smoking History**

24. Do you smoke cigarettes, cigars or a pipe?

ANSWER:    Yes.

11

25. Have you ever smoked tobacco products of any type?

ANSWER:     Yes.

26. If your answer to Interrogatory No. 24 and/or 25 is in the affirmative, please state fully and in detail:

    (a) The type of tobacco products which you smoke or have smoked, that is, cigarettes, cigars, pipes, etc., stating whether you inhaled the smoke or not;

    (b) The daily frequency with which you smoke or have smoked same, e.g., two packages of cigarette daily, two pipefulls daily, etc.;

    (c) The dates and time periods during which you have smoked;

    (d) For any time periods during which you have ceased smoking tobacco products, your reasons for stopping;

    (e) For any time period when you have commenced smoking tobacco products after a period of having stopped smoking, your reasons for restarting;

    (f) If you smoke cigarettes, please state the average number of packs per day so consumed in each of the following five year periods of 1935 to the present time:

        (i) 1935 - 1940;

        (ii) 1941 - 1945;

        (iii) 1946 - 1950;

        (iv) 1951 - 1955;

        (v) 1956 - 1960;

        (vi) 1961 - 1965;

        (vii) 1966 - 1970;

        (viii) 1971 - 1975;

        (ix) 1976 - present;

12

     (g)     Whether you were ever advised by any physician to stop smoking. If your answer is yes, give the date and name and address of each physician who gave you any such advice, and also state whether you followed that advice; and,

     (h)     State the brand of tobacco used by plaintiff.

ANSWER:    I smoked filtered cigarettes from 1955- 2000, and then began smoking again in 2005 to present. I generally smoke at the most about six cigarettes per day. I have smoked various brands.

    27.    Are you aware of the United States Surgeon General's warning placed on all cigarette packages and advertisements?

ANSWER:    Objection. Plaintiff objects to this Interrogatory as irrelevant, vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence.

    28.    Have you ever read the warning referred to in Interrogatory No. 27. If so, state the date you first read it.

ANSWER:    Objection. See response to Interrogatory 27.

    29.    Have you ever smoked cigarettes subsequent to being aware of or reading the warning referred to in Interrogatory No. 27.

ANSWER:    Objection. See response to Interrogatory 27.

    30.    Have you ever smoked tobacco products other than cigarettes subsequent to being aware of or reading the warning referred to in Interrogatory No. 27? If so, what products and when?

ANSWER:    Objection. See response to Interrogatory 27.

    31.    Have you ever been discharged or voluntarily left a position or changed residence due to health reasons? If yes, please state in detail the times, places and circumstances.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as irrelevant, vague, and overly

13

broad. Subject to and without waiving said objection, No.

32.    Have you ever been hospitalized, operated upon, or confined to an institution?  If

yes, please state:

      (a)    The names and address of all hospitals or institutions involved;

      (b)    The beginning and ending dates of each period of hospitalization;

      (c)    The nature of the illness, injury or complaint for which you were admitted to the hospital;

      (d)    The names, addresses and relationships to you of all persons who treated or examined you;

      (e)    The nature and extent of any permanent disabilities or residual effects; and,

      (f)    The nature, source, and amount of any disability benefits, pensions or other remunerations received.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as irrelevant and overbroad. The Interrogatory specifically requests information wholly unrelated to the present illness. Subject to and without waiving said objections, plaintiff states:

    Singing River Hospital / Ocean Springs Hospital, 3109 Bienville Blvd., Ocean Springs, MS 39564

    See also authorizations and medical records deposited with Defense Coordinating Counsel.

33.    If you have ever suffered any personal injuries or illness other than those involved

in this lawsuit, state for each such injury or illness:

      (a)    The date, place, names of persons involved, and circumstances surrounding each such injury or illness;

      (b)    The nature and extent of the injuries or illnesses, including all ill effects or disabilities remaining at the time of the last treatment or examination;

      (c)    The nature and extent of the injuries or illnesses including all ill effects or disabilities remaining at the time of answering these interrogatories;

14

(d)   The names and addresses of all persons who treated or examined you, together with the date of the last treatment or examination; and,

(e)   The nature, source, and amount of any disability benefits, pensions, or other remunerations for such injuries or illnesses.

ANSWER:   See response to Interrogatories 32 and 34.

34.   With respect to each doctor who has examined or treated you from the year 1936 to date, state the following:

(a)   The name and address of each such doctor;

(b)   The complaint that you had which caused you to see the particular doctor;

(c)   The type of examination and treatment that each doctor gave you; and,

(d)   The date or dates on which you were examined and treated by each particular doctor.

ANSWER:   Objection. Plaintiff objects to this Interrogatory as irrelevant and overbroad. The Interrogatory specifically requests information unrelated to the present illness. Subject to and without waiving said objection, plaintiff states:

Dr. William Striegel, 11 Doctors Drive, Ocean Springs, MS 39564

Dr. Hazem Barmada, 11 Marks Rd , Ocean Springs, MS 39564

Dr. Daniel Patterson, Dr. Sam Dennis, Cancer Center, 2809 Denny Ave., Pascagoula, MS 39581

See also responses to Interrogatory 32.

35.   Have you ever had chest x-rays taken? If so, state the following for each set of x-rays taken:

(a)   The name and address of the office or hospital where the x-rays were taken;

(b)   The reason why such x-rays were taken;

      (c)     The date or dates on which the x-rays were taken;

      (d)     The x-ray diagnosis that was reported to you.

ANSWER:    See medical records and medical providers listed in response to Interrogatories 32 and 34. I do not recall other x-rays.

36.    Do you or your attorneys have any medical reports from any persons, hospitals, doctors or medical practitioners, or institutions that have ever treated or examined you at any time? If so, please attach copies of the reports to your answers to these interrogatories. If you will not voluntarily attach copies of the reports to your answers to these interrogatories, then please state fully and in detail:

      (a)     The identity of the report or reports by date, subject matter, name, address, job title or capacity of the person(s) to whom addressed or directed, and the job title or capacity of the person or persons who prepared these same; and,

      (b)     The name, address, and present whereabouts of the person who has custody or control of the medical records and the purpose of said preparation.

ANSWER:    See authorizations and medical records deposited with Defense Coordinating Counsel.

37    Have you ever received any nursing care or housekeeping services for or because of any injury sustained or any other physical condition? If yes, please state fully and in detail:

      (a)     The names, addresses and the relationship to you of the person(s) administering such care or services;

      (b)     The dates during which such care or services were received; and,

      (c)     The injury or illness or physical condition necessitating such care or services.

ANSWER:    No

38.    Have you ever been confined to bed or home as a result of any illness, injury, or

emotional or psychological illness or distress you may have sustained at any time? If yes, please state fully and in detail:

    (a)    The dates during which you were confined to your bed or home; and,

    (b)    The address where each confinement took place.

ANSWER:    Objection. Plaintiff objects to this interrogatory on the grounds that the information sought is irrelevant to the present claim. By way of further answer without waiving said objection, none other than previously disclosed in response to Interrogatories 32 and 34.

39    Have you ever had to wear any medical support, cast, brace, or other device or garment, or use any other type of medical aid at any time? If yes, please state fully and in detail:

    (a)    A description of the item;

    (b)    Whether it was rented or purchased;

    (c)    The name and address of the supplier;

    (d)    The cost of the item; and,

    (e)    The period of time it was used.

ANSWER:    Objection. Plaintiff objects to this interrogatory on the grounds that the information sought is irrelevant to the present claim By way of further answer without waiving said objection, no.

40.    State the dates, places and circumstances and results including any interpretative or diagnostic conclusions or possibilities of each and every x-ray or radiological examination of your body during your lifetime. Please include in your answer for each such examination, in addition to the above requested information:

    (a)    Name, address, and telephone number of each prescribing physician of each examination;

    (b)    Name, address, and telephone number of each examining physician in each examination;

(c)    Name, address, and telephone number of the medical institution or laboratory, public or private, in which such examination was performed;

(d)    The number of x-rays taken;

(e)    Name, address, and telephone number of the present or last known custodian of each such x-ray;

(f)    The specific areas of the body of which the x-ray examination was made;

(g)    The interpretative or diagnostic results, conclusions, or possibilities derived from each such examination. Include in your answer the date, time, place, source and nature of each such result, conclusion or possibility at the time same was made known to you, or anyone related to you or acting in your behalf; and,

(h)    Any treatment, recommendation or prescribed therapy resulting from such examination. Include in your answer:

(i)  Purpose and objective of same;

(ii)  Success or failure of same;

(iii)  Date, time, and duration of each such course of treatment or therapy;

(iv)  Name of medication and the prescribed dosage;

(v)  Accomplishments or degree of success of such treatment, therapy, or combination thereof; and,

(vi)  Whether you cooperated completely, or in part, or ignored any such treatment, recommendation, prescription, or course of therapy or treatment, and the reasons for any such behavior on your part other than complete cooperation.

ANSWER:    Objection. Plaintiff objects to this interrogatory on the grounds that it is overbroad and seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. By way of further answer without waiving said objection, see responses to Interrogatories 32, 34 and 35. See also authorizations and medical records deposited with Defense Coordinating Counsel.

41.    State the dates, places, and circumstances of each and every cardiology

18

examination, or examination related to the circulatory system in any fashion, conducted upon you during your lifetime. In addition, include in your answer for each and every such examination:

(a) Name, address and telephone number of each prescribing physician;

(b) Name, address and telephone number of each examining physician;

(c) Name, address and telephone number of each medical institution, office or laboratory, public or private, in which such examination was conducted;

(d) Name, address and telephone number of the present or last known custodian of any results of such examination;

(e) The interpretative or diagnostic results, conclusions or possibilities derived from each such examination. Include in your answer the date, time, place, source and nature of each such result, conclusion or possibility at the time that same was made known to you or anyone related to you or acting in your behalf; and,

(f) Any treatment, recommendation or prescribed therapy resulting from such examination. Include in your answer:

(i) Purpose and objective of same;

(ii) Success or failure of same;

(iii) Date, time, and duration of each such course of treatment or therapy;

(iv) Name of medication and the prescribed dosage;

(v) Accomplishments or degree of success of such treatment, therapy, or combination thereof; and,

(vi) Whether you cooperated completely, or in part, or ignored any such treatment, recommendation, prescription, or course of therapy or treatment, and the reasons for any such behavior on your part other than complete cooperation.

ANSWER:    Objection. Plaintiff objects to this interrogatory on the ground that it is overly broad and seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. By way of further answer without waiving said objection, see responses to Interrogatories 32 and 34. See also authorizations and medical records deposited with Defense Coordinating Counsel.

42.    State the dates, places and every pulmonary or respiratory system-related examination conducted upon you during your lifetime. In addition, include in your answer for each and every such examination the following:

(a)    Name, address and telephone number of each examining physician;

(b)    Name, address and telephone number of each medical institution, office, or laboratory, public or private, in which such examination was made;

(c)    Name, address and telephone number of the present or last known custodian of any results of such examination;

(d)    The interpretative or diagnostic results, conclusions, or possibilities derived from each such examination   Include in your answer the date, time, place, source and nature of each such result, conclusion or possibility at the time that same was made known to you or anyone related to you or acting in your behalf; and,

(e)    Any treatment, recommendation or prescribed therapy resulting from such examination. Include in your answer:

(i)  Name, address and telephone number of each prescribing physician;

(ii)  Purpose or objective of same;

(iii)  Success or failure of same;

(iv)  Date, time and duration of same;

(v)  Name and dosage of prescribed medication;

(vi)  Accomplishments or degree of success of such treatment or therapy or combination thereof; and,

(vii)  Whether you cooperated completely or only in part or ignored each such recommendation, prescribed treatment, or therapy, and the reasons for any such behavior on your part other than complete cooperation.

ANSWER:    See response to Interrogatories 32 and 34. See also authorizations and medical records deposited with Defense Coordinating Counsel

43.    If you will do so without a motion to produce, please attach copies of any records, receipts or invoices related in any fashion to any or all of your answers to the above three interrogatories.

ANSWER:    Pursuant to Standing Order #1, authorizations and medical records have been deposited with Defense Coordinating Counsel.

44.    For each and every present or past symptom, indication, malaise or effects which you contend to be directly or indirectly related to any disease, disability or physical condition or state of your body or health, and which you contend is relevant to this lawsuit, please state:

    (a)    Nature and description of such symptoms;

    (b)    The disease, disability or physical condition to which said symptom is related and the nature and extent of such relationship;

    (c)    The date, time, place and manner in which such symptom first manifested itself or was made known to you, including all pertinent information as to the source of such knowledge;

    (d)    Whether you contend such symptom is related in any fashion to asbestosis or pleuritis, or any other condition from which you allegedly suffer, and the nature and extent of such relationship;

    (e)    Whether you contend that such symptom is related in any fashion to the use or effect of any product manifested, sold or distributed, in whole or in part, by defendant or any subdivision or affiliate thereof. Include in your answer the nature and extent of said relationship and the name, description and identity of the product referred to in your answer;

    (f)    The facts, writings and publications, etc., upon which you base all or part of any of your above-stated contentions. If you will do so without a motion to produce, please attach copies of all such writings or publications; and,

    (g)    The name, business address and telephone number, job title, and resident address and telephone number of each and every witness who can testify in support of any or part of any of your above-stated contentions.

ANSWER:    (a-e) The symptoms began in August 2005. I had shortness of breath in the

21

beginning that caused me to see a doctor. Since my diagnosis, my lifestyle has been severely
limited, and I have been unable to enjoy most of my previous activities that I participated in due
to fatigue and side effects of chemotherapy treatment. I did not have these problems prior to the
mesothelioma. I believe the problems are caused by the disease. I believe the asbestos products
that I worked with and around caused the disease.

        (f-g) Objection. Plaintiff objects to this Interrogatory on the grounds that it is
overly broad and seeks information that is not relevant nor reasonably calculated to lead to
discovery of admissible evidence. By way of further answer without waiving said objection, see
responses to Interrogatories 11-13.

45.     Do you contend that you are suffering from pleuritis?

ANSWER:    Not to my knowledge. See medical records deposited with Defense Coordinating
Counsel.

46.     If your answer to Interrogatory No. 45 is in the affirmative, please state:

    (a)     Date and time of such diagnosis;

    (b)     Name, address and telephone number of diagnosing physician and any
        concurring physicians;

    (c)     Method and information upon which such diagnosis was based;

    (d)     Name, address and telephone number of each and every hospital, medical
        institution, laboratory, physician, nurse, laboratory technician, etc.,
        involved in any part of such diagnosis;

    (e)     Name, address and telephone number of each and every person, including
        your relatives, employer, or anyone acting in your behalf to whom such
        diagnosis was made known, including the date, time and place of such
        revelation, and the name, address and telephone number of anyone
        witnessing such revelation;

    (f)     Describe in detail the specific course of treatment or therapy, including
        any medication, prescribed as a result of such diagnosis, and the name,
        address and telephone number of each prescribing physician;

    (g)     Name, address and telephone number of plaintiff's employer at time of
        diagnosis; and,

    (h)     If said diagnosis resulted in any prescribed or recommended change in
        your occupation, behavior, life-style or work habits or conditions, please

state:

(i) Nature, extent and exact content of such prescription or recommendation;

(ii) Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and,

(iii) State all facts upon which you rely to support a contention that such pleuritis is related to exposure to asbestos

ANSWER:    N/A.

47.    Do you contend that you are suffering from asbestosis?

ANSWER:    Not to my knowledge. See authorizations and medical records deposited with Defense Coordinating Counsel.

48.    If your answer to Interrogatory No. 47 is in the affirmative, please state:

(a)    Date and time of such diagnosis;

(b)    Name, address and telephone number of diagnosing physician and any concurring physicians;

(c)    Method and information upon which such diagnosis was based;

(d)    Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

(e)    Name, address and telephone number of each and every person, including your relatives, employer or anyone acting in your behalf, to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing said revelation;

(f)    Describe in detail the specific course of treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

(g)    Name, address and telephone number of plaintiff's employer at the time of diagnosis; and,

23

    (h)    If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

        (i) Nature, extent and exact content of such prescription or recommendation; and,

        (ii) Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations.

ANSWER:   N/A.

49.    Do you contend you are suffering from any other pulmonary disease?

ANSWER:   Yes, Mesothelioma.

50.    If your answer to Interrogatory No. 49 is in the affirmative, please state:

    (a)    Date and time of such diagnosis;

    (b)    Name, address and telephone number of diagnosing physician and any concurring physicians;

    (c)    Method and information upon which such diagnosis was based;

    (d)    Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

    (e)    Name, address and telephone number of each and every person, including your relatives, employer or anyone acting in your behalf, to whom such diagnosis was made known, including the date, time and place of such revelation and the name, address and telephone number of anyone witnessing said revelation;

    (f)    Describe in detail the specific course of the treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

    (g)    Name, address and telephone number of plaintiff's employer at time of diagnosis; and,

(h)    If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

(i)  Nature, extent and exact content of such prescription or recommendation;

(ii)  Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and,

(iii)  State all facts upon which you rely to support a contention that such pulmonary disease is related to exposure to asbestos.

ANSWER:    See responses to Interrogatories 32, 34, 49 and the authorizations and medical records deposited with Defense Coordinating Counsel.

51.    Do you contend that you are suffering from any cancer, "incipient cancer", carcinoma or sarcoma?

ANSWER:    Yes, mesothelioma

52.    If your answer to Interrogatory No. 51 is in the affirmative, please state:

(a)    Date and time of such diagnosis;

(b)    Name, address and telephone number of diagnosing physician and any concurring physicians;

(c)    Method or information upon which such diagnosis was based including biopsies, histological or cytology studies;

(d)    Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

(e)    Name, address and telephone number of each and every person, including any relatives, employer or anyone acting in your behalf to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing said revelation;

(f)    Describe in detail the specific course of therapy or treatment, including any medication, prescribed as a result of such diagnosis, and the name,

address and telephone number of each prescribing physician;

(g)    Name, address and telephone number of plaintiff's employer at time of diagnosis; and,

(h)    If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

(i) Nature, extent and exact content of such prescription or recommendation;

(ii) Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and,

(iii) State all facts upon which you rely to support a contention that such pulmonary disease is related to exposure to asbestos.

ANSWER:    See responses to Interrogatories 32, 34, 49, 50, and 51 as well as the authorizations and medical records deposited with Defense Coordinating Counsel.

53.    Are you aware that any adverse effects of exposure to asbestos and asbestos products may be cumulative in nature and that continued exposure to such materials by one suffering from asbestosis or a related illness might have significant adverse effects upon the extent and severity of such illness? If your answer is in the affirmative, please state:

(a)    The date, time and place that you first acquired such awareness;

(b)    Specific identity of such source of information providing or leading to such awareness; and,

(c)    Any change in your behavior, life-style, occupation, work habits, etc., prescribed by such awareness.

ANSWER:    Objection. Plaintiff objects to this interrogatory on the ground that it is vague, overly broad, and irrelevant. By way of further answer without waiving said objection, I have mesothelioma and I don't know about anything to make it worse.

54.    After being informed that you were suffering from asbestosis, pleuritis, or any

alleged asbestos-related illness, did you continue to engage in any activity or occupation in which you encountered subsequent exposure to asbestos or asbestos- containing materials? If your answer is in the affirmative, please state:

    (a)    Nature and description of such activity or occupation;

    (b)    Name, address and telephone number of your employer at the time and subsequent to the diagnosis of any of the ailments referred to in the above interrogatory. Include in your answer:

        (i) Your job title and description of work and activities and duties; and,

        (ii) Manner and extent of resulting exposure to asbestos or asbestos-containing materials.

    (c)    Your detailed reasons for engaging in such activity or occupation; and,

    (d)    Whether your participation in such activity or occupation and consequential exposure to asbestos or asbestos- containing materials was contrary to competent medical or professional advice (including such advice from employers, union representatives, publications, etc.). If so, please state in detail:

        (i) The identity, description, address, etc , of each source of such advice;

        (ii) The date, time and place such advice was given;

        (iii) The name, address and telephone number of each and every person present when such advice was given to you; and,

        (iv) Your response to such advice and the reasons therefore.

ANSWER:    No.

55.    Please list in chronological order by date of admission all hospitals, extended care centers or nursing homes in which you have been a patient or an out-patient during your lifetime. Please include in your answer the dates of admission and discharge.

ANSWER:    See responses to Interrogatories 32 and 34, see also authorizations and medical records deposited with Defense Coordinating Counsel.

56.    For each such confinement or out-patient period listed in your answer to

Interrogatory No. 55, please state separately:

      (a)    Condition treated for;

      (b)    Name, address and telephone number of each treating or prescribing physician;

      (c)    Type and date of any diagnostic or operating procedure;

      (d)    The date of recovery from such condition referred to in subpart (a) of this interrogatory; and,

      (e)    Extent and duration of any disability resulting from such condition referred to in subpart (a) of this interrogatory

ANSWER:    See responses to Interrogatories 32, 34 and 55.

57.    State in detail such injuries, illnesses or types of ill health which you allege that

you have suffered from during the one-year period immediately preceding the diagnosis of

asbestosis, pleuritis and/or any other illness or disease alleged to be related to asbestos exposure

Set forth in detail such symptoms as were evident to you during that period, the date of their

appearance, and the identity of all diagnosing and treating physicians.

ANSWER:    None other than those in medical records  See medical records and authorizations provided to the Medical Coordinator.

58.    State the name and address of your personal physician at the time of the

incident(s) of which you complain in this law suit

ANSWER:    Dr. William Striegel, 11 Doctors Drive, Ocean Springs, MS 39564

**G.    Claims History**

59.    Have you, at any time, ever made a claim for or received any health or accident

insurance benefits, workmen's compensation payments, disability benefits, pensions, accident compensation payments or veterans' disability compensation awards?  If so, state for each:

> (a)   The circumstances under which you received the benefits or awards or payments;
>
> (b)   The illness or injury for which you received the benefits or awards or payments;
>
> (c)   The names and addresses of your employer at the time of each injury or illness;
>
> (d)   The names and addresses of the examining doctors for each injury or illness;
>
> (e)   The names of the superiors or officers or boards or tribunals before which or to whom the claim or claims were made or filed; the dates made or filed;
>
> (f)   The amount of the benefits or awards or payments;
>
> (g)   The dates covering the times during which you received the benefits or awards or payments; and,
>
> (h)   The agencies or insurance companies from whom you received the benefits or awards or payments

ANSWER:   Objection. Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and irrelevant to the extent it does not pertain to the current illness  Subject to and without waiving said objections, I currently have Blue Cross Blue Shields of Illinois medical insurance.

60.   On what date did you first become aware that asbestosis was a compensable occupational disease under the State Workmen's Compensation Act?

ANSWER:   N/A.

61.   Have you ever filed a suit for damages for any personal injury?  If yes, please state:

> (a)   The names and addresses of all plaintiffs, defendants, and other parties and their attorneys;

29

    (b)     The court and place where each suit was filed and the date of filing;

    (c)     The nature and extent of the injuries claimed; and,

    (d)     The present status of each suit; and, if concluded, the final result including the amount of any settlement or judgment.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and irrelevant to the extent it does not pertain to the current illness. Subject to and without waiving said objections, No.

    62.    Have you ever been a party to any other litigation? If so, describe:

    (a)     The nature of the suit; and,

    (b)     The date, court and place where the suit was filed.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and irrelevant to the extent it does not pertain to the current illness. Subject to and without waiving said objections, No.

**H.    Witnesses/Investigation**

    63.    Do you or your attorneys know of any person or persons having knowledge of facts relevant to the allegations in this lawsuit, including witnesses to the injury, illnesses, etc. in question? If yes, please state the names, addresses, home telephone numbers, places of employment, relationship to you, the present whereabouts of all such persons.

ANSWER:    Objection  Plaintiff objects to this Interrogatory as overly broad, vague, irrelevant, and overly burdensome. Subject to and without waiving said objections, my husband, children, former co-workers, health care workers, friends.

    64.    Do you or your attorneys have any written statements from any persons having knowledge of facts relevant to the subject matter of this lawsuit, including witnesses to the accident, injury, illnesses, etc. in question? If yes, please state the names, addresses, home telephone numbers, places of employment, relationship to you and the present whereabouts of all

such persons.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as overly broad, vague, and irrelevant. Subject to and without waiving said objections, no statements specific only to this lawsuit have been obtained. Plaintiff's counsel has depositions of some of the defendants in this lawsuit taken in other asbestos cases. See also responses to Interrogatories 11-14.

65.    Do you or your attorneys have any written statements or oral transcriptions of the statements of any defendant or agent, servant or employee of any defendant to this action?  If yes, state the name of such person, where and when the statement or statements were obtained, and who has custody of the statements or transcriptions.

ANSWER:    See response to Interrogatory 64.

66.    As a result of the illnesses, relevant working conditions or other circumstances complained of in this action, or related to the subject matter of this lawsuit, were any photographs, charts, drawings, diagrams or other graphic representation made by you or in your behalf?  If yes, state fully and in detail:

    (a)    How many pictures were taken or documents prepared;

    (b)    On what dates they were taken or prepared;

    (c)    What views, scenes or objects they depict;

    (d)    What is the name, address, telephone number, job title, or capacity and present whereabouts of the persons who have custody and control thereof;

    (e)    Will the plaintiffs permit the defendants, through authorized representatives, to inspect the said photographs or other documents without the necessity of a motion for their production; and,

    (f)    Will the plaintiffs furnish copies of designated photographs or other documents to the defendants at defendants' expense?

ANSWER:    Objection. Plaintiff objects to this Interrogatory as overly broad, vague, and seeking information protected by the attorney-client privilege and work-product doctrine.

31

Subject to and without waiving said objection, see responses to Interrogatories 11-14.

67. If your claim is based to any extent or nature upon expert opinion other than medical experts, please state the name, address, home telephone number, place of employment, relationship to you, and present whereabouts of all such experts.

ANSWER:   See Plaintiff's Master Expert Disclosures and any supplements thereto.

68. Have you made any statement which was reduced to writing concerning the facts of this lawsuit and the damages claimed to any police or law officer, insurance company representative, investigator, state or federal agent or employee of any kind, or anyone else? If yes, state the name and address of each and every such person or organization to whom these statements or reports were made and the purpose for which they were made.

ANSWER:   No.

69. Have any investigations or other reports been prepared, compiled, submitted or made by you or on your behalf in this action? If yes, state fully and in detail as to each such investigation or report:

(a)   The identity of same by date, subject matter, name, address, job title or capacity of the person or persons to whom addressed or directed;

(b)   The name, address, job title or capacity of the person or persons to whom addressed or directed; and,

(c)   The name, address, and present whereabouts of the person who has present custody or control thereof and the purpose of such preparation.

ANSWER:   Objection. Plaintiff objects to this Interrogatory as it seeks information protected by the attorney-client privilege and work-product doctrine

70. Do you have any health, accident or life insurance policies which are currently in effect? If yes, state the name, type, address of the insurance company, dates of commencement

and expiration of coverage, policy limits, etc.

ANSWER:     Objection. Plaintiff objects to this Interrogatory as it is overly broad and irrelevant. By way of further answer without waiving said objection, I currently have medical insurance through Blue Cross Blue Shield of Illinois, and I have a life insurance policy through Metropolitan Life Insurance Company.

71.     List the names, addresses and relationship to plaintiff of all persons who were witnesses to the accident, injuries or illnesses which are the subject matter of this lawsuit

ANSWER:     Objection. Plaintiff objects to this Interrogatory as it is overly broad, vague, and unduly burdensome. Subject to and without waiving said objections, it is impossible to know all persons who are witness to my illness. My wife, children and medical personnel would be the most knowledgeable. See responses to Interrogatories 10, 11, and 12. Other names will be provided as they become available.

72.     Do your agents, employees and representatives know of any statement having been made by the defendants pertaining to any circumstances of the injuries or illnesses which are the subject of this lawsuit?

ANSWER:     Objection. Plaintiff objects to this Interrogatory as it is overly broad, vague, and unduly burdensome. Subject to and without waiving said objections, I am not aware of any statements specifically about me. See also response to Interrogatory 64.

73     If your answer to Interrogatory No. 72 is in the affirmative, was any such statement in writing and, if so, in whose possession is such statement and when and where may it be inspected by defendants?

ANSWER:     N/A.

74.     If your answer to Interrogatory No. 72 is in the affirmative, and any such statement was oral, when and where was any such statement made, in whose presence was such statement made, and what was the substance of such statement?

ANSWER:     N/A.

75.     Give the names and present addresses of all witnesses you intend to use at the

33

trial of this case with respect to the occurrence and/or cause of your illness or with respect to

claimed damages or with respect to the liability of these defendants.

ANSWER:    Discovery is ongoing and Plaintiff's investigation continues. Plaintiff will
supplement this response in compliance with the scheduling order controlling this case.

76.    With reference to any expert you expect to call to testify as a witness at the trial,

state the name and address of such expert and, as to each expert named, state:

(a)    The subject matter on which the expert is expected to testify;

(b)    The substance of the facts and opinions to which the expert is expected to
testify; and,

(c)    A summary of the grounds for each such opinion.

ANSWER:    See response to Interrogatory 12.

77.    State the name and present address of any expert witness who has been retained

or specially employed by you or your attorneys in anticipation of litigation or preparation for

trial but who is not expected to testify as a witness at the trial.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as it seeks information protected
by the attorney-client privilege, work-product doctrine, and is beyond the scope of discovery
permissible pursuant to Superior Court Civil Rule 26. By way of further answer without waiving
said objection, expert reports from those experts whom Plaintiff intends to rely upon at time of
trial will be produced in compliance with the scheduling order controlling this case.

78.    Give an accurate statement of all medical, hospital and drug or other related costs

incurred by you or on your behalf as a result of the illness alleged in the Complaint.

ANSWER:    Plaintiff's investigation continues as to expenses incurred as a result of his
asbestos-related illness. Plaintiff will supplement as additional information becomes available.

79.    If you claim the right to recover any "out-of-pocket" expenses, including, but not

limited to, medical expenses, itemize each such expense and state:

34

      (a)    A specific description of each such expense;

      (b)    The date when such expense was incurred;

      (c)    To whom it was incurred; and,

      (d)    For what it was incurred.

ANSWER:    See answer to Interrogatory 78.

**I.**    **Union Activity**

80.    Were you a member of any labor union at any time from 1936 to the present?  If your answer is in the affirmative, state for each such union membership:

      (a)    The name, address and telephone number; and,

      (b)    The dates and time periods during which you maintained membership in such union.

ANSWER:    No.

81.    If you were a member of the International Association of Heat and Frost Insulators and Asbestos Workers, did you receive the publication known as The Asbestos Worker?

ANSWER:    N/A.

82.    If your answer to Interrogatory 81 is in the affirmative, state in detail:

      (a)    The manner of receipt, e.g., subscription, provided by union or employer, purchase, etc;

      (b)    Frequency of receipt, e.g., regularly, occasionally, rarely, etc ;

      (c)    The name, address and telephone number of each and every person or entity which provided this publication to you;

      (d)    Pertinent dates and time periods during which you received any issues of said publication;

      (e)    Publication date, issue and volume number of each issue of said publication received by you in any fashion; and,

(f)     Whether you read such publication.

ANSWER:     N/A.

83.     Did any of your employers or any union or other labor organization, group,

representative or officer ever provide or make any copies of the publication <u>The Asbestos</u>

<u>Worker</u> available to you at any time?

ANSWER:     No.

84.     If your answer to Interrogatory 83 is in the affirmative, please state in detail:

    (a)     The name, address, telephone number and title of each and every such
employer, union, representative, or officer referred to in your answer to the
above interrogatory;

    (b)     The dates and time periods during which the publication was so provided
or made available to you;

    (c)     The publication date, issue and volume of each issue of said publication so
provided or made available; and,

    (d)     The terms, circumstances or requirements of such availability or provision
or requirements of said publication, e.g., free, by subscription, mailed, to
be picked up, distributed at meetings, etc.

ANSWER:     N/A.

85.     If you were a member of a labor union other than the International Association of

Heat and Frost Insulators and Asbestos Workers, did you receive any newspapers, newsletters or

other publications from such union?

ANSWER:     N/A.

86     If your answer to Interrogatory 85 is in the affirmative, please state:

    (a)     The type of each publication received;

    (b)     The frequency with which such publications were received; and,

36

(c)    Whether you read such publications.

ANSWER:    N/A.

87.    Have you ever attended any international or local union meetings, seminars, conferences or conventions where the subjects of occupational health and exposure to asbestos were discussed?

ANSWER:    No.

88.    If your answer to Interrogatory 87 is in the affirmative, please state:

(a)    The date and place of such meeting, seminar, conference or convention;

(b)    The name and address of each speaker; and,

(c)    A summary of such speech, presentation or discussion.

ANSWER:    N/A.

89.    Please list together with places and dates all offices you have held or committees on which you have served in both your local and international union.

ANSWER:    None

90    Have you ever been informed by any person in an official capacity in your local or international union of any possible hazards associated with the exposure to asbestos dust?

ANSWER:    No.

91.    If your answer to Interrogatory 90 is in the affirmative, please state:

(a)    The name, address and official capacity of the individual or individuals who furnished you with such information;

(b)    The date and place such information was furnished;

(c)    The manner in which such information was communicated;

37

      (d)    The nature of the information furnished; and,

      (e)    What action, if any, you took in response to such information.

ANSWER:    N/A.

    92.    For what time periods, including dates, were you an apprentice in the insulation

materials installation trade (or a related trade) hereinafter referred to as "the trade"?

ANSWER:    None.

    93. For what time periods, including dates, were you a journeyman, or its equivalent,

in the trade?

ANSWER:    None.

    94.    State the date, times and places during which you were:

      (a)    A member of the National Insulation Contractors Association (N.I.C.A.);

      (b)    Employed by an employer who is a member of the National Insulation Contractors Association (N.I.C.A.). If so, please state the name, address and telephone number of said employer.

      (c)    Employed by an employer who is a member of the N.I.M.A. If so, please state the name, address and telephone number of said employer.

ANSWER:    None

    95.    Were you ever aware of, informed of, or advised in any fashion by the

informational and educational campaigns conducted by N.I.C.A. and N.I.M.A., the purpose and

goals of which were to promote awareness among asbestos materials workers as to potential

hazards of asbestos exposure and to reduce such harmful exposure through recommendations

regarding protective respiratory safety equipment and engineering and methods controls during

the manufacture and fabrication of asbestos products?

ANSWER:    No.

96.    If your answer to the foregoing interrogatory is in the affirmative, state the date,

times, places, names and circumstances under which such awareness, information or advice was

received, and the name, address and telephone number of anyone present at the time you received

such advice and/or who received the same or similar advice, information or awareness.

ANSWER:    None.

97.    State your average weekly or monthly earnings at the time of your last full-time

employment.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as irrelevant as no lost wage
claim is being made.

98.    State fully and in detail your annual earnings for the past ten years:

(a)    Do you or your attorneys have your W-2 forms and/or income tax returns
(or copies thereof) for any of the past ten years? If so, please state for
which years you have such W-2 forms and/or income tax returns and/or
copies thereof; and,

(b)    If you will do so without a motion to produce, please attach copies of said
W-2 forms and/or income tax returns to your answers to these
interrogatories.

ANSWER:    See response to Interrogatory 97.

99.    If you claim that you have sustained any loss of income or earning power as a

result of the incident which is the subject of this lawsuit, either in the past, present or in the

future, state:

(a)    The total value of the loss you claim was sustained;

(b)    The inclusive dates when you claim you were unable to work as a result of
the incident and the reason why you were unable to work on such dates;

(c)    A specific description of the type or types of work you would have been
performing or would have been able to perform during the period stated;

      (d)    The rate of income you would have been able to receive had the alleged incident not occurred, e.g., $1.00 per hour, $50.00 per week, etc.; and,

      (e)    The name and address of the person, corporation or other entity which would have been your employer

ANSWER:    See response to Interrogatory 97.

100.    Insofar as you intend to introduce into evidence any expert testimony concerning part of future loss or earning power or the present value of a sum of money concerning a future loss of expense and such evidence will be introduced through an expert economist or actuary, state the name and address of such expert and, as to each such person named, state:

      (a)    A specific description of the losses for which such of future earnings, present value of the loss of future earnings, present value of second job earnings, present value of future medical expenses, etc.;

      (b)    Describe in detail precisely the manner in which the person reached his conclusions showing the mathematical calculations involved; and,

      (c)    Insofar as such person has prepared any report or memoranda showing in whole or in part his conclusions or the facts on which such conclusions were based, state the date of such writing and the names and addresses of persons having copies of it. If you will do so without a motion to produce, please attach a copy of any such report to these answers.

ANSWER:    See response to Interrogatory 97.

101.    State all facts upon which you base your claim concerning your potential earnings or earning power.

ANSWER:    See response to Interrogatory 97.

102.    If your claim that, as a result of the negligence alleged in the Complaint, you experienced any conscious pain and suffering for which you claim the right to recover damages in this lawsuit, state:

(a)    The inclusive times or dates when you claim such conscious pain and suffering was experienced;

(b)    The name and address of any person having knowledge that it was, in fact, experienced;

(c)    The specific acts which you claim the defendants performed which resulted in such pain and suffering; and,

(d)    A description of the pain and suffering and the areas of the body effected so far as you are aware.

ANSWER:    (a-b) See response to Interrogatory 44. By way of further answer, I have experienced significant pain and suffering since the symptoms began in August 2005. The doctors, my family, friends, and attorneys all have knowledge that this pain and suffering is real.

(c) See responses to Interrogatories 11-14.

(d) See medical records and responses to Interrogatories 39 and 44.

**BIFFERATO, GENTILOTTI,
BIDEN & BALICK, L.L.C.**

Ian Connor Bifferato (DE Id. No. 3273)
Garvan F. McDaniel (DE Id. No. 4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165
Tel. (302) 429-1900
Fax. (302) 429-8600
Attorney for Plaintiffs

Dated: _____4/26/06_____

**OF COUNSEL:**
SIMMONSCOOPER LLC
Michael Angelides (IL. Id. No. 623072)
707 Berkshire Boulevard
E. Alton, Illinois 62024
Phone: (618) 259-2222

41

## CERTIFICATE OF SERVICE

I, Garvan F. McDaniel, hereby certify that on this 8th day of November, 2006 the

attached Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Remand to State

Court was served upon:

Armand Della Porta, Jr., Esquire
Ana Marie McCann, Esquire
Marshall, Dennehey, Warner,
Coleman & Goggin
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899

Loreto Rufo, Esquire
7217 Lancaster Pike, Suite F
Hockessin, DE 19707

Megan Mantzavinos, Esquire
Marks, O'Neill, O'Brien & Courtney
913 North Market Street, Suite 800
Wilmington, DE 19801

J. Michael Johnson, Esquire
Rawle & Henderson
300 Delaware Avenue, Suite 1015
P.O. Box 588
Wilmington, DE 19899

Timothy Dillon, Esquire
Slamon, Ricchezza, Singer & Turchi
222 Delaware Avenue, 11th Floor
Wilmington, DE 19801

Beth Valocchi, Esquire
Valocchi & Sasso
3513 Concord Pike, Suite 2000
Wilmington, DE 19803

Christian Singewald, Esquire
White & Williams
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899

Lynne Parker, Esquire
Hollstein, Keating, Cattell,
Johnson & Goldstein
One Commerce Center, Suite 730
1201 North Orange Street
Wilmington, DE 19801

Francis Murphy, Esquire
Murphy, Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE 19805

Mark Reardon, Esquire
Elzufon, Austin, Reardon,
Tarlov & Mondell
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899

via electronic filing.

**BIFFERATO, GENTILOTTI,
BIDEN & BALICK, L.L.C.**

Garvan F. McDaniel (#4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165
Tel. (302) 429-1900
Fax. (302) 429-8600