IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ASBESTOS LITIGATION

LILLIAN and JAMES HARWOOD,           )
                                     )
            Plaintiffs,              )        C.A. No. 1-06-CV-673
                                     )
      vs.                            )
                                     )
BONDEX INTERNATIONAL, INC., et al.   )
                                     )
            Defendants.              )

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF MOTION TO REMAND TO STATE COURT**

**BIFFERATO, GENTILOTTI ,
BIDEN & BALICK, L.L.C.**

_____
Ian Connor Bifferato (#3273)
Garvan F. McDaniel (#4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165
Tel. (302) 429-1900
Fax. (302) 429-8600

Dated: November 8, 2006

# TABLE OF CONTENTS

AUTHOTITIES CITED…………………………………………………..………ii

    Cases……………………………………..…………………………………..ii

    Statutes………………………………..……………………………….iii

INTRODUCTION……………………..…………………………………….1

STATEMENT OF THE CASE……………………………………………………1

ARGUMENT……………………………………………...……………….4

(A)  Northrop's Removal Notice Is Legally Insufficient
     And Fails To Meet The Burdens Imposed By §1442(a)(1)……………………….5

    (1) *Northrop's Notice of Removal is*
       *Insufficient as a Matter of Law*……………………………...………….5

    (2) *A Private Party Seeking Removal under*
       *§1442(a)(1)Bears a Special Burden to*
       *Establish the Existence of Federal Jurisdiction*……………………...……..11

    (3) *Northrop Cannot Amend or Supplement its*
       *Deficient Removal Notice*……………………………………...……..12

(B)  Separate And Apart From Northrop's Deficient Notice,
     Federal Jurisdiction Is Lacking On The Facts Of This Case………………..…….14

(C)  Northrop's Notice Of Removal Is Untimely……………………………………17

(D)  Alternatively, Plaintiffs' Claims Against
     Other Defendants Should Be Remanded……………………………..……..19

CONCLUSION………………………………………………….…………….20

## ATHORITIES CITED

## Cases

*Ariail Drug Co. v. Recomm Display, Inc.*,
  122 F.3d 930 (11th Cir. 1997)...................................................20

*Boyle v. United Technologies Corp.*,
  487 U.S. 500, 108 S.Ct. 2510 (1988)...............................6, 16-17

*Epperson v. Northrop Grumman Systems Corp.*,
  2006 WL 90070 (E.D. Va., January 11, 2006)...............................6

*Faulk v. Owens Corning Fiberglas Corp.*,
  48 F.Supp.2d 653 (E.D. Tex. 1999)...........................................11

*Feidt v. Owens Corning Fiberglas Corp.*,
  153 F.3d 124 (3rd Cir. 1998)...................................................5

*Freiberg v. Swinerton & Walberg Property Svcs.*,
  245 F.Supp.2d 1144 (D. Colo. 2002)...........................9, 10, 12, 15

*Good v. Armstrong World Industries, Inc.*,
  914 F.Supp. 1125 (E.D. Pa. 1996)...............................5, 7, 10-12

*Green v. A.W. Chesterton Co.*,
  366 F.Supp.2d 149 (D. Me. 2005)...........................................8-9

*Grzetich v. VLI Corp.*,
  670 F.Supp. 793 (N.D. Ill. 1987)...............................................5

*Int'l Equity Corp. v. Pepper and Tanner, Inc.*,
  323 F.Supp. 1107 (D. Pa. 1971)...............................................17

*Knudsen v. Samuels*,
  715 F.Supp. 1505 (D. Kan. 1989)...........................................18

*Lamb v. Martin Marietta Energy Systems, Inc.*,
  835 F.Supp. 959 (W.D. Ky. 1993)...........................................10

*Madden v. Able Supply Co.*,
  205 F.Supp.2d 695 (S.D. Tex. 2002)...................................19-20

*Marler v. Amoco Oil Co.*,
  793 F.Supp. 656 (E.D. N.C. 1992)...........................................17

*McCormick v. C.E. Thurston & Sons, Inc.,*
    977 F.Supp. 400 (E.D. Va. 1997)………………………..…….…………5, 12, 16

*McGlasson v. Barger,*
    220 F.Supp. 938 (D. Colo. 1963)……………………..…………...………12-13

*Mesa v. California,*
    489 U.S. 121, 109 S.Ct. 959 (1989)………………………..…...………5-6, 10, 12

*Mielke v. Allstate Insurance Co.,*
    472 F.Supp. 851 (E.D. Mich. 1979)………………………..………….…….…18

*New Jersey Dept. of Envmt'l Protection v. Exxon Mobil Corp.,*
    381 F.Supp.2d 398 (D. N.J. 2005)……………………..…………….…….12, 15

*Richman v. Zimmer,*
    644 F.Supp. 540 (S.D. Fla. 1986)………………………..…………………….18

*Roberts v. Anchor Packing Co.,*
    2005 WL 1201212 (S.D. W.Va. May 19, 2005)…………………….……..……18

*Ryan v. Dow Chemical Co.,*
    781 F.Supp. 934 (E.D. N.Y. 1992)………………………..………………….…7

*Sanborn Plastics Corp. v. St. Paul Fire and Marine Ins. Co.,*
    753 F.Supp. 660 (N.D. Ohio 1990)…………………….……………….…17-18

*Ward v. Lockheed Martin Corp.,*
    2006 WL 889729 (M.D. Fla. March 31, 2006)………………………...……15, 16

*Westmiller v. IMO Industries, Inc.,*
    2005 WL 2850334 (W.D. Wash., October 20, 2005)…………..…….…6, 8, 9-10, 12

*Williams v. General Electric Co.,*
    418 F.Supp.2d 610 (M.D. Pa. 2005)……………………..……..…...5, 9, 11, 12

*Willingham v. Morgan,*
    395 U.S. 402, 89 S.Ct. 1813 (1960)………………………..……...…………11-12

## Statutes

28 USC §1442………………………………..…….……………………1, 2, 5, 6, 11-15

28 USC §1446………………………………………………….............………………17

iii

## INTRODUCTION

This matter comes before the Court on *Plaintiffs' Motion to Remand to State Court*. The case was removed by Northrop Grumman Corporation ("Northrop"), pursuant 28 USC §1442(a)(1), on the theory that its liabilities to Plaintiffs involve acts performed under federal contracts. Plaintiffs have moved to remand their case to state court, and respectfully submit that said motion should be granted. Northrop's *Notice of Removal* ("Notice") is insufficient, as a matter of law, and fails to establish that removal is proper. Said *Notice* does not explain precisely how the government compelled Northrop to act in a manner that caused Ms. Harwood to be exposed to asbestos. Additionally, Northrop has not provided copies of contracts, specifications or other evidence necessary to establishing the existence of federal jurisdiction. In fact, federal subject-matter jurisdiction is lacking here because, *inter alia*, there is no causal nexus between any federal directives and Ms. Harwood's specific injury (asbestos-related mesothelioma). Said *Notice* is also untimely. If this Court declines remand as to Northrop, Plaintiffs have moved in the alternative to have their claims against the non-removing defendants severed and remanded.

Finally, because this is an asbestos personal-injury case, it is subject to being transferred to the Eastern District of Pennsylvania as part of the federal multi-district litigation ("MDL") pending in that court. Accordingly, in addition to their *Motion to Remand*, Plaintiffs have filed an *Emergency Motion for Expedited Consideration*.[1]

## STATEMENT OF THE CASE

Plaintiff Lillian Harwood was diagnosed with malignant mesothelioma in March 2005. Mesothelioma is a rapidly progressing and terminal cancer caused by exposure to

---

[1] The issue of expedited consideration is addressed in Plaintiffs' brief in support of the *Emergency Motion*.

asbestos. Plaintiffs filed their complaint in Delaware State Court (Superior Court of New Castle County) against a number of defendants, including Northrop, on August 24, 2006 (*Exhibit A*). In accordance with the State Court's standing orders for asbestos cases, upon filing the complaint, Plaintiffs provided coordinating defense counsel with a copy for distribution. Plaintiffs served answers to standard-form interrogatories on August 28, 2006 (*Exhibit C*). Northrop was formally served with the complaint on September 19, 2006 (*Exhibit B*). Both Plaintiffs were deposed by defendants on October 2, 2006. This case has been assigned a May 2007 trial date in state court.

Northrop removed the case to this Court, pursuant to 28 USC §1442(a)(1), on November 1, 2006—over thirty days after receiving the complaint. No other defendant joined in the removal. Northrop maintains that it had no notice that the case was removable until Plaintiffs were deposed on October 2, 2006. Yet, its *Notice* does not reflect any specific information derived from those depositions. Northrop generally asserts that removal is proper because it was acting under the direction of federal officers, when it committed the acts and omissions causing Plaintiffs' injuries. Northrop generally asserts that it has a colorable federal contractor defense to Plaintiffs' claims.

Plaintiffs Lillian and James Harwood were married on January 10, 1951. Mr. Harwood was employed at Newport News Shipbuilding & Dry Dock Co. in Norfolk, Virginia from 1947 to 1970, and at Ingalls Shipyard in Pascagoula, Mississippi from 1970 to 1994, as a design specialist and field engineer. Northrop is the successor-in-interest to the owners of both shipyards.[2] Plaintiffs have alleged and will prove at trial that, during his decades of employment with Northrop, Mr. Harwood worked with and

---

[2] For convenience, Plaintiffs will refer simply to Northrop when discussing both the removing defendant and its predecessors. At this point, Northrop has not denied that it is a successor.

around asbestos-containing materials. These materials were used as components of both Naval and private commercial vessels at the shipyards, as well as construction materials for buildings on the premises. Asbestos fibers from these materials adhered to Mr. Harwood's person and clothing and were, thereby, carried into the family home, vehicles and other areas where Ms. Harwood was exposed. Plaintiffs allege that this "take-home" exposure from the shipyards caused and/or contributed to Ms. Harwood's mesothelioma. Ms. Harwood was also employed at Newport News for a brief time in the early 1950's.

The stated grounds for removal in Northrop's *Notice* are vague and general (*see Notice of Removal*, ¶¶ 9, 12-14). Paragraph 9 generally states: that Northrop "has designed, built, overhauled and repaired a wide variety of ships for the U.S. Navy;" and that "these ships, and each of their parts, are designed and built in accordance with U.S. Navy specifications." Paragraph 12 asserts, in very non-specific terms: that Northrop "was acting under the direction of a federal officer or agency;" that it "has a colorable federal defense;" and, that it "will demonstrate that there is a causal connection between the acts [it] performed under color of federal office and Plaintiffs' allegations." Paragraph 13 suggests, in conclusory terms, that Northrop "is entitled to rely on the government contractor defense." Paragraph 14 declares that Northrop "can prove that [it] followed detailed instructions and specifications provided by the United States Navy in providing services at Newport News, and [that] the services it performed conformed to those instructions and specifications."[3] No 'proof' or further explanation is offered, including specific facts supporting the application of these general assertions to this particular case.

---

[3] Northrop mentions only Newport News and does not contend that operations at Ingalls involved government contracts. Thus, it has waived relying on Mr. Harwood's work at Ingalls as a basis for removal.

In this regard, Northrop does not describe any specific acts it allegedly performed pursuant to such direction or under color of federal office. It does not delineate the manner in which this alleged "direction and control" was exercised. In particular, it does not expressly assert (much less establish) that any federal officer or agency expressly specified the use of asbestos-containing materials where Mr. Harwood worked, or expressly precluded Northrop from taking precautions to protect workers and their families from unnecessary exposures. It does not identify any decision by a federal officer that precipitated Ms. Harwood's exposure to asbestos. It has abstractly 'promised,' but not actually provided, copies of government contracts, vessel specifications and like documentation. It has filed no affidavit or other evidence establishing the parameters of alleged federal control, or explaining how it was exercised.

## ARGUMENT

This case must be remanded, first of all, because Northrop's *Notice* is insufficient as a matter of law, and those insufficiencies are not amenable to correction at this time. Northrop's *Notice* contains only general recitals as to alleged federal control. It lacks critical factual details concerning the manner in which the federal government allegedly mandated the specific acts and omissions that caused Ms. Harwood to be exposed to asbestos and contract terminal malignant mesothelioma. As the removing party, Northrop has the burden to specifically allege and establish the existence of federal jurisdiction. It has not met that burden. Indeed, given the nature of the exposures and the specific claims at issue, Northrop cannot do so. Subject-matter jurisdiction is simply lacking here— separate and apart from the inadequacies in Northrop's *Notice*.

4

The removal here was also untimely, having been filed more than thirty days after Northrop had sufficient information to determine the alleged grounds it now asserts. Indeed, the conclusory *Notice* filed in this case makes it rather difficult for Northrop to assert that it needed to await the development of 'more details' to appreciate that removal was possible. Certainly, none of those additional details are reflected in its *Notice*. Thus, the generality of Northrop's *Notice* is at odds with its position as to timeliness, and plaintiffs respectfully suggest that it would strain reason to find that the *Notice* is both timely *and* sufficient (even if it 'might be' one or the other).

Finally and in the alternative, if this Court concludes that Northrop has met its burden (which it has not), it should decline supplemental jurisdiction over the entire case and remand as to the other defendants, none of which joined in removal.

(A)
Northrop's Removal Notice Is Legally Insufficient
And Fails To Meet The Burdens Imposed By §1442(a)(1)

(1)
*Northrop's Notice of Removal is Insufficient as a Matter of Law*

"A defendant seeking removal bears the burden of demonstrating federal subject matter jurisdiction." *Williams v. General Electric Co.*, 418 F.Supp.2d 610, 614 (M.D. Pa. 2005). *See also Good v. Armstrong World Industries, Inc.*, 914 F.Supp. 1125, 1127 (E.D. Pa. 1996); *Grzetich v. VLI Corp.*, 670 F.Supp. 793, 794 (N.D. Ill. 1987)("burden of showing that removal was proper is always on the removing party"). The factual basis for removal must be reflected in the notice. A removal notice pursuant to §1442(a)(1) must show that the particular acts or omissions, which caused the injury, were undertaken at the specific direction of a federal officer, and that defendant has a colorable federal defense. *See Mesa v. California*, 489 U.S. 121, 129, 109 S.Ct. 959, 965 (1989); *Feidt v.*

5

*Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3rd Cir. 1998). "[A]ny doubts as to the satisfaction of the statutory removal requirements should lead to remand." *Grzetich*, 670 F.Supp. at 794 (*citations omitted*). *See also McCormick v. C.E. Thurston & Sons, Inc.*, 977 F.Supp. 400, 401 (E.D. Va. 1997)(an asbestos case where court held "if federal jurisdiction is doubtful, a remand is necessary").

Specifically, a party seeking removal under §1442(a)(1) must allege and establish: "(1) that it acted under the direction of a federal officer; (2) that there exists a colorable federal defense to Plaintiff's claims; and (3) that there exists a causal nexus between the Plaintiff's claims and the acts performed by the defendant under the authority of a federal officer or agency." *Epperson v. Northrop Grumman Systems Corp.*, 2006 WL 90070 (E.D. Va., January 11, 2006) at *2 (remanding case removed by Northrop, involving asbestos exposure at Newport News Shipyard)(*citing Mesa v. California*, 489 U.S. 121, 124-25, 109 S.Ct. 959 (1989)). Here, Northrop raises the federal contractor defense, which requires it to show: (1) that the government approved "reasonably precise specifications;" (2) that the contractor followed those specifications; and (3) that the contractor warned the government about hazards that were known to the contractor, but not to the government. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 2518 (1988).

Basically, the defendant must show that avoiding the state-law liabilities at issue would have required violating its federal contract. *See Westmiller v. IMO Industries, Inc.*, 2005 WL 2850334 (W.D. Wash., October 20, 2005) at *2. "[S]tripped to its essentials, the military contractor's defense…is to claim[, 'the] Government made me do it.'" *Id.* (*citations omitted*). This analysis is similar to the "causal nexus" requirement under

*Mesa, supra,* although the respective burdens of proof differ (as discussed below). The critical common denominator is that both *Mesa* and *Boyle* require that the removing party must demonstrate *specific* linkage among government directives, defendants' alleged misconduct, and the plaintiff's injury. Here, that requires Northrop to establish not only that the federal government explicitly specified the use of asbestos, but also that it explicitly precluded Northrop from warning or taking other appropriate precautions to avoid exposures. Northrop has accomplished neither. 'Stripped to the essentials,' Northrop simply cannot show that the federal government 'made Northrop' expose Lillian Harwood to asbestos.

Establishing the nexus element requires more than merely alleging that defendant's acts were carried-out under general federal auspices. *See Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (E.D. N.Y. 1992)("a person or corporation establishing only that the relevant acts occurred under the general auspices of a federal office or officer is not entitled to [ removal]"); *Good*, 914 F.Supp. at 1129 ("if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to [removal]"). Rather, "removal must be predicated upon a showing that the acts that form the basis for the state [civil suit] were performed pursuant to [a federal] officer's direct orders or to comprehensive and detailed regulations." *Ryan*, 781 F.Supp. at 947. *See also Good*, 914 F.Supp. at 1129. Moreover, as the court in *Good* explained, the standard for showing a causal nexus is higher than the one that applies to whether there is a "colorable" federal defense:

> [Defendant] has confused its burden of proof with regard to the 'acting under' and 'federal defense' requirements from *Mesa*....The 'colorable claim' standard applies to the presentation of a federal defense, not the causal connection requirement....In

> order to remove to federal court, Westinghouse must set forth
> evidence showing that it did, in fact, act under a federal officer.

914 F.Supp. at 1129 (*citations omitted*).

There are several asbestos cases, which have been remanded to state court because the removing Defendant did not provide sufficient evidence that specifically connected the government's selection of asbestos-containing materials to the Plaintiff's disease. In *Westmiller, supra* Plaintiff's decedent contracted lung cancer as a result of asbestos exposure at naval shipyards. The district court remanded the case because the removing Defendant (Viad) failed to submit sufficient evidence that it was subject to reasonably precise government specifications with respect to the particular acts and omissions in question. *See Westmiller* at *3. Viad submitted an affidavit 'describing' the purported contents of specifications, but it did not actually produce any documents. The court struck the affidavit, and stated that "[a]bsent the actual specifications, [affiant's] conclusory statements about what the specifications would have stated amount to mere speculation and are not admissible." *Westmiller* at *1. The court declined to give any weight to an affidavit that described the extent to which the Navy generally controlled shipbuilding, but lacked averments relevant that particular case. *See Westmiller* at *2.

Here, Northrop has provided far less supporting information and evidence, than in *Westmiller*. It has merely suggested in an unverified removal notice that it can produce contracts and specifications, whereas the defendant in *Westmiller* at least described such documents in a sworn affidavit. Northrop's unverified notice contains only a few conclusory statements concerning its general course of dealing with the Navy. Again, the defendant in *Westmiller* provided a bit more detail as to the generalities, and did so in another sworn affidavit. If the removal notice and supporting evidence in *Westmiller*

8

were insufficient to establish removal, it is legally impossible for Northrop's unsupported and less adequate *Notice* to be enough.

As a threshold matter, Northrop must establish that the Navy expressly specified the use of asbestos-containing materials from which Ms. Harwood was exposed. In *Green v. A.W. Chesterton Co.*, the court held that the removing Defendant's (Viacom's) failure to attach or otherwise provide the actual specification and contract documents was fatal to removal. *See* 366 F.Supp.2d 149, 157 (D. Me. 2005). As in other cases, the court held that an affidavit, which merely described the degree and control exercised by the Navy over shipbuilding generally, was insufficient to meet Defendant's burden. *See* 366 F.Supp.2d at 156-57 ("[the] affidavit testimony, which simply describes the content of the regulations and specifications is, in the absence of the documents themselves, nothing more than hearsay, and is not entitled to any weight"). Even producing detailed specifications is insufficient—if what is produced does not expressly specify asbestos. *See Green* 366 F.Supp.2d at 157.

Likewise, *Williams v. GE*, 418 F.Supp.2d 610 provides another example in which an asbestos case was remanded because the removing Defendant's notice was deficient. As in *Westmiller*, the removing Defendant (GE), submitted an affidavit that described its dealings with the Navy in only vague and general terms—which the court held to be insufficient. *See Williams*, 418 F.Supp.2d at 616 ("[a]lthough a Defendant is not required to prove that an asserted defense is meritorious, the Court finds that GE has provided insufficient support for its assertion of the government contractor defense in the first instance"). *See also Freiberg v. Swinerton & Walberg Property Svcs.*, 245 F.Supp.2d 1144, 1150 (D. Colo. 2002)(in remanding an asbestos case, the court stated "[the] short,

9

three-paragraph affidavit speaks to these issues in only the vaguest of terms, and is insufficient under the case law").

Northrop has not even provided speculative or hearsay affidavits in support of its patently insufficient notice. *See e.g. Westmiller* at *1; *Green*, 366 F.Supp.2d at 156-57. It has not established that the acts causing Plaintiff's injury (the use of asbestos materials at Newport News without proper precautions) were undertaken pursuant to express federal directives. It has not pleaded the requisite causal nexus with anything approaching the necessary detail. Thus, it has failed to meet its burden to show a specific link between Plaintiff's asbestos disease and the express directive of a federal officer or agency.

Northrop has also failed to show that it has a colorable federal defense. *See Mesa*, 489 U.S. at 129 (federal officer removal "must be predicated on the allegation of a colorable federal defense"). In this regard, it is not enough for Northrop to merely assert that it was a government contractor (which is literally all that it has done). Federal contractors do not enjoy any type of automatic immunity. *See Lamb v. Martin Marietta Energy Systems, Inc.*, 835 F.Supp. 959, 962-63 (W.D. Ky. 1993)(*citing United States v. Boyd*, 378 U.S. 39, 44, 84 S.Ct. 1518, 1522 (1964)). Rather, this defense applies only to specific situations, which the defendant must establish. *See Lamb*, 835 F.Supp. 959; *Freiberg*, 245 F.Supp.2d at 1151, n. 5 ("the burden is substantive and is not satisfied by incantations of government contractor status alone").

Although a defendant need not "prove" its federal defense in order to remove a case, it still must offer enough evidence to show that the defense is "colorable." This requires, at a minimum, pleading each necessary element and offering *some* supporting evidence. *See Lamb*, 835 F.Supp. at 966-67. Here, Northrop has neither alleged nor

offered one iota of evidence as to the existence of any specifications (precise or

otherwise) expressly requiring the use of asbestos. In *Good*, where "[t]he Complaint

allege[d] personal injury based upon exposure to asbestos," the court remanded the case

because "[n]either the notice or the affidavit establishe[d] that the [ Navy] specified the

use of asbestos in the design and manufacture of the [equipment]." 914 F.Supp. at 1130.

Northrop's Notice, in the case at bar, is clearly insufficient. It does not allege

(much less establish) that any federal officer expressly required it to use specific

asbestos-containing materials. *See Faulk v. Owens Corning Fiberglas Corp.*, 48

F.Supp.2d 653, 660 (E.D. Tex. 1999)("the federal government did not dictate any

specifications regarding the warning about asbestos-containing products"); *Good*, 914

F.Supp. at 1129 ("[defendant] must set forth evidence showing that it did, in fact, act

under a federal officer, a burden that [defendant] has not satisfied"). It does not identify

any specific contract, agreements, regulations or specifications. It does not explain how

its alleged obligations to the Navy compelled it to commit acts exposing Ms. Harwood to

asbestos. Accordingly, Northrop cannot meet it burdens for federal officer removal and,

this case must be remanded to state court.

(2)
*A Private Party Seeking Removal under §1442(a)(1)*
*Bears a Special Burden to Establish the Existence of Federal Jurisdiction*

Northrop suggests that "federal officer removal" is not to be "frustrated by a

narrow interpretation of [the statute]." *See Notice*, ¶ 16 (*citing Willingham v. Morgan*,

395 U.S. 402, 405, 89 S.Ct. 1813 (1960)). That is essentially correct, but only as to actual

federal officers and not private parties merely acting under federal authority (e.g.

government contractors). As explained in *Williams*, "[n]otwithstanding its broad

application, because the federal officer removal statute is predicated 'on the protection of *federal* activity and an anachronistic mistrust of the state courts' ability to protect and enforce *federal* interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden in establishing the official nature of their activities." 418 F.Supp.2d at 614 (*quoting Freiberg v. Swinerton & Walberg Property Svcs.*, 245 F.Supp.2d 1144, 1150 (D. Colo. 2002)(*emphasis in original*); *accord New Jersey Dept. of Environmental Protection v. Exxon Mobil Corp.*, 381 F.Supp.2d 398, 403, n. 5 (D. N.J. 2005)(policies underlying broader construction of § 1442 are "inapplicable when the immunity of government contractors rather than federal officers [is] at issue"). Thus, Northrop is not entitled to benefit from a liberal application of § 1442(a)(1); but, on the contrary, bears a special burden to prove that the statute applies here.

It is noteworthy that whereas *Willingham*—the case cited by Northrop—involved a state-court suit by a federal prison inmate against federal prison officials, *Good, supra* and *Williams, supra* both involved the remand of asbestos cases removed by private-sector government contractors. *See also McCormick*, 977 F.Supp. at 401 (in an asbestos case removed by private party, remanding court held "if federal jurisdiction is doubtful, a remand is necessary"). Northrop's *Notice* is not even adequate to meet the lower burden for actual federal officers, much less the special burden for private contractors.

(3)
### Northrop Cannot Amend or Supplement its Deficient Removal Notice

A removing defendant must be "candid, specific and positive" in setting forth the necessary facts in its notice, and mere conclusions do not suffice. *McGlasson v. Barger*, 220 F.Supp. 938, 939 (D. Colo. 1963). The court in *Westmiller* made it clear that, even at an early stage of the litigation "before discovery," a removing defendant must "come

12

forward with such evidence [to justify removal]." *supra* at *3 ([w]hile it is true that *Mesa* requires only a 'colorable' federal defense, [defendant] has not produced any evidence that would meet even that minimum standard"). Here, Northrop had already obtained necessary discovery, including Plaintiffs' answers to interrogatories and their discovery depositions. Additional information, such as contracts, specifications and the like, is within the exclusive control of Northrop. Although vaguely referenced, none of this material has been produced by Northrop or specifically described in its *Notice*.

"[A] petition for removal may not be amended to supply jurisdictional averments that have been lacking." *See McGlasson,* 220 F.Supp. at 940-41. A removing defendant, which fails to provide the requisite facts and evidence, cannot amend or supplement, after the time for removal has expired, except to clarify facts already timely and properly alleged. *Id.* 'Clarifying' does not include adding extra details or offering additional evidence. *Id.* In *McGlasson*, the court refused to consider late-filed affidavits and stated:

> [N]o factual allegations to support jurisdiction appear in the petition for removal….the Court cannot look to the affidavits filed at the hearing on this matter for a factual basis upon which removal may rest since, in essence, they are an effort to amend the petition for removal beyond the [] period within which removal must be effected.

220 F.Supp. at 940-41.

In *McGlasson* (where as actual federal officers, defendants had the advantage of a liberal interpretation of the removal statute), the court remanded the case because there was "a complete absence of any facts in [the notice] which would justify a finding that [the] defendants did that which they [were] charged with doing under color of their office." *See* 220 F.Supp. at 939-40 ("any basis for federal jurisdiction under Section 1442(a)(1) is expressly denied in the complaint and no factual allegations to support

jurisdiction appear in the petition for removal"). The court refused to consider defendants' late-filed affidavits because they had merely alleged that the relevant events occurred during the course of their federal employment. *See* 220 F.Supp. at 939 ("the test for removal under Section 1442(a)(1) [is] 'not whether the Government employee was acting in the performance of his duties but rather whether the act complained of was under color of such office'"). In the absence of proper and specific allegations in the notice, there was simply nothing to clarify. *Id.*

Here, Northrop's Notice is completely lacking in the requisite detail. There is nothing to clarify because Northrop has not alleged specific facts constituting a proper basis for removal. Northrop admits that the time for removal began to run at least by October 2, 2006 (Plaintiffs maintain that this began on September 19). By its own 'generous' calculation, Northrop's time expired on November 1, 2006—when it filed its *Notice*. Northrop has had the entire thirty days—from the time it says that the case could be removed—in which to obtain and present some degree of factual detail and evidentiary support. At this point, it should have no opportunity to amend or supplement its patently deficient *Notice*.

(B)

Separate And Apart From Northrop's Deficient Notice,
Federal Jurisdiction Is Lacking On The Facts Of This Case

The inadequacy of Northrop's *Notice* is itself a sufficient basis for remanding this case to state court. Unless it is permitted to supplement that *Notice* in some way, Northrop cannot meet the significant burden imposed upon private companies seeking to invoke federal officer removal. Such indulgence would be unwarranted and also unnecessary here—because, as a matter of fact, the U.S. Navy did not expressly compel

14

the specific acts and omissions that precipitated Ms. Harwood's exposure to asbestos

from the shipyards. At most, the Navy selected stock-item materials, some of which

contained asbestos. It did not prevent Northrop from providing warnings to its employees

or taking other appropriate precautions.

    The case at bar is similar to those in which Plaintiffs seek damages for injuries

caused by the improper disposal of toxic substances, which may have been originally

produced or manufactured under a government contract. As recently summarized in *Ward*

*v. Lockheed Martin Corp.*, 2006 WL 889729 (M.D. Fla. March 31, 2006) at *5, there is a

critical "distinction between government control over manufacturing and production

verses government control over disposal." Even where the manufacturing of materials

was in accordance with precise government specifications, claims based upon improper

disposal are not removable. *supra* at *4-5. *See also New Jersey D.E.P. v. Exxon Mobil*,

381 F.Supp.2d at 404-05. As the court observed in *Freiberg*:

> Defendants fail to appreciate the essence of the "under color"
> causal connection requirement. They are being sued for
> unnecessarily and negligently causing their employees and other
> workers to be exposed to asbestos dust on the job and for failing to
> warn these employees and workers of the associated dangers. What
> they must establish for purposes of the § 1442(a)(1) is that the
> government authority under which they worked required them to
> act as they did. For purposes of Plaintiffs' failure to warn claims,
> for example, they must establish that the DOE's direction and
> control of their activities directly interfered with their ability to
> fulfill their state law obligation to warn.

245 F.Supp.2d at 1155.

    Likewise, in the case at bar, a similar distinction applies. The acts and omissions

of defendant that are primarily connected to causing Ms. Harwood's exposure do not

involve government control over the manufacture, production or even the specifying of

15

asbestos-containing materials. Rather, the primary misconduct involves Northrop's failures to warn of the hazards of asbestos and undertake other appropriate precautions to reduce or eliminate exposures. Thus, even if the Navy did precisely specify the use of particular asbestos-containing materials (which remains unproven), it did not control the work practices that caused Ms. Harwood's exposure—just as in *Ward* the government did not control the methods of disposal. Therefore, like *Ward*, this case should be remanded. *See e.g. McCormick*, 977 F.Supp. at 403 ("in thousands of asbestos cases that have preceded [and involved the Newport News Shipyard], the United States District Court for the Eastern District of Virginia has determined that the government contractor defense is not available in 'failure to warn' cases").

Moreover, even if the Navy did require Northrop to incorporate asbestos-containing materials into some vessels, this case still involves nothing more than standard, stock items that were equally available on the private-sector market. *See Boyle*, 487 U.S. at 2517 (government contractor defense does not apply to injury caused by "stock" item or "standard equipment"). There was nothing special or unique about any asbestos-containing materials at issue here, and there is no conflict between the requirements imposed by Northrop's federal contracts and the state laws imposing the duty of care relied upon by the Plaintiff. The U.S. Navy did not itself design any insulation or other asbestos components, but at most may have selected some for use. The mere selection of such stock components by the government does not cloak the involved contractor with immunity from suit. As the Court explained in *Boyle*:

> If, for example, the United States contracts for the purchase and installation of an air-conditioning unit, specifying the cooling capacity but not the precise manner of construction, a state law imposing upon the manufacturer of such units a duty of care to

> include a certain safety feature would not be a duty identical to
> anything promised the Government, but neither would it be
> contrary.

487 U.S. at 509.

In summary, Northrop simply cannot show that warning Mr. Harwood not to expose himself and his wife to asbestos or taking other appropriate precautions would have prevented it from fulfilling its obligations to the government. There is, therefore, no causal nexus between any government mandate and Ms. Harwood's mesothelioma. Additionally, the Navy's specification of stock items containing asbestos—which is the most that occurred here—is not a sufficient basis to invoke federal jurisdiction. These are state claims, and there is no legitimate conflict between the standards of conduct imposed by state law and any obligations Northrop had under a contract with the U.S. Navy.

(C)<br>Northrop's Notice Of Removal Is Untimely

A case must be removed within thirty days of when Defendant receives the initial complaint or, if the complaint affirmatively indicates that the case is not removable, within thirty days of when defendant learns that it is. *See* 28 USC §1446(b). *See Sanborn Plastics Corp. v. St. Paul Fire and Marine Insurance Co.*, 753 F.Supp. 660, 664 (N.D. Ohio 1990)("failure to comply with the thirty day limitation to file a petition for removal is an absolute *bar* regardless of whether the removal would have been proper if timely filed"); *Marler v. Amoco Oil Co.*, 793 F.Supp. 656 (E.D. N.C. 1992)("30-day time limit...must be strictly applied"). *See also Int'l Equity Corp. v. Pepper and Tanner, Inc.*, 323 F.Supp. 1107, 1109 (D. Pa. 1971) ("it was the intent of Congress to obtain the earliest possible removal").

Here, Northrop maintains that the asserted basis for removal was not revealed in the initial complaint, but only became apparent after Plaintiffs were deposed. In these circumstances, removal is untimely if, based upon the initial complaint, "a reasonably qualified attorney would or should be put on notice to investigate" the facts relating to removability. *Sanborn Plastics*, 753 F.Supp. at 663; *See also Mielke v. Allstate Insurance Co.*, 472 F.Supp. 851, 853 (E.D. Mich. 1979). "The statute places the burden on the [removing defendant] to show that the case stated in the initial pleading was not removable then." *Richman v. Zimmer*, 644 F.Supp. 540, 541 (S.D. Fla. 1986).

Unless the initial Complaint forecloses removal, the Defendant has a duty to investigate and, if appropriate, remove the case within thirty days. *See Sanborn Plastics*, 753 F.Supp. at 663-64. Here, assuming arguendo that removability was unclear initially, the question is why there are no additional facts developed from the depositions reflected in the *Notice*? Conversely, if what is stated in the *Notice* is all that is required for removal, why did Northrop need to depose Plaintiffs in order to make that determination—especially when any contracts or specifications are in Northrop's possession? As previously noted, if the *Notice* is not insufficient, it must be untimely.

Moreover, "the question is not whether the initial pleading disclose[d] the potential for removal but whether it disclose[d] that the case [was] not removable." *Knudsen v. Samuels*, 715 F.Supp. 1505, 1507 (D. Kan. 1989). "Most courts that have considered this issue require that a defendant remove the case within thirty days 'unless the initial pleading provides no clue that the action may be removable.'" *Roberts v. Anchor Packing Co.*, 2005 WL 1201212 (S.D. W.Va. May 19, 2005), p. *2 ("there is no

requirement that removability be unequivocally clear to trigger the thirty-day clock"). *See also Richman*, 644 F.Supp. at 542 (even "a clue" is enough to start the clock running).

The initial complaint discloses that Mr. Harwood worked at the Newport News and Ingalls shipyards, and that Ms. Harwood was exposed to asbestos carried home from those sites. Northrop is presumed to be aware that it constructed vessels for the U. S. Navy at those shipyards. Indeed, this is hardly the first asbestos case against Northrop involving Newport News and Ingalls. Northrop was obliged to investigate and remove the case within thirty days of being served with the complaint.[4] It is undisputed that Northrop did not do so. Instead, it waited until thirty days after plaintiffs were deposed. Because the basis asserted for removal (as reflected in Northrop's *Notice*) was apparent from the initial Complaint, Northrop's notice is untimely and the case must be remanded.

(D)

Alternatively, Plaintiff's Claims Against Other Defendants Should Be Remanded

Even if this Court concludes that Northrop has properly removed the claims against it (which it has not), this Court should decline jurisdiction over the controversy in its entirety. *See Madden v. Able Supply Co.*, 205 F.Supp.2d 695, 702 (S.D. Tex. 2002). Northrop is but one of several defendants named in this case, and none of the others joined in removal. There is no reason to try these other state-law claims in federal court.

In *Madden*, the court denied Plaintiff's motion to remand a case involving his exposure to asbestos in the Navy, but declined supplemental jurisdiction over claims against defendants other than the removing party. *See* 205 F.Supp.2d at 702. A court has such discretion, if one or more of four factors are present: (1) the claims involve novel or complex state-law issues; (2) the state-law claims and issues predominate; (3) the federal

---

[4] Because Mr. Harwood worked for Northrop, rather than an outside contractor, Defendant could have checked his employment records if it had questions about the nature of his work as it relates to removal.

court dismisses the claims over which it had original jurisdiction; and, (4) there are exceptional circumstances or other compelling reasons. *See* 205 F.Supp.2d at 702.

Here, as in *Madden*, the second and fourth factors apply and support remanding the other claims. Other than Northrop's alleged defense, there are no issues of federal law. Plaintiffs' claims against the other defendants involve state-law. Additionally, if this case remains in federal court, it will be transferred to the MDL—where it will likely experience delay before trial. The court in *Madden* specifically relied upon this prospect as a reason to decline supplemental jurisdiction. *See* 205 F.Supp.2d at 702. *See also Ariail Drug Co. v. Recomm Display, Inc.*, 122 F.3d 930, 934 (11th Cir. 1997). This case has an assigned state-court trial date in May 2007. Because mesothelioma is terminal, Ms. Harwood will probably not survive to participate in a later trial. Clearly, this is a situation in which this Court possesses the discretion to decline supplemental jurisdiction over plaintiff's state-law claims against other defendants—if it comes to that.

## CONCLUSION

For the reason set forth herein, Plaintiffs respectfully submit that their *Motion to Remand to State Court* should be granted.

BIFFERATO, GENTILOTTI ,
BIDEN & BALICK, L.L.C.

Ian Connor Bifferato (#3273)
Garvan F. McDaniel (#4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165
Tel. (302) 429-1900
Fax. (302) 429-8600

Dated: November 8, 2006

20

# EXHIBIT "A"

EFiled: Aug 24 2006 5:50PM EDT
Transaction ID 12176251

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| IN RE:  ASBESTOS LITIGATION: | ) | |
| | ) | |
| LILLIAN HARWOOD and JAMES HARWOOD, | ) | |
| her husband, | ) | |
| | ) | |
| Plaintiffs , | ) | |
| | ) | |
| -vs.- | ) | CA. NO. _____ |
| | ) | |
| BONDEX INTERNATIONAL INC., | ) | ASBESTOS |
| CERTAIN-TEED CORPORATION, | ) | |
| FORD MOTOR COMPANY, | ) | NON-ARBITRATION |
| FOSTER WHEELER ENERGY CORP., | ) | |
| GARLOCK INC., | ) | TRIAL BY JURY OF |
| GENERAL ELECTRIC COMPANY, | ) | TWELVE DEMANDED |
| GENERAL MOTORS CORPORATION, | ) | |
| HONEYWELL INTERNATIONAL INC., | ) | |
| INGERSOLL-RAND COMPANY, | ) | |
| JOHN CRANE, INC., | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| NORTHRUP GRUMMAN CORPORATION, | ) | |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | |
| CORPORATION, | ) | |
| RPM INTERNATIONAL INC., | ) | |
| RPM INC., | ) | |
| T.H. AGRICULTURE & NUTRITION, L.L.C. successor to | ) | |
| THOMPSON HAYWARD CHEMICAL CO., INC., | ) | |
| UNION CARBIDE CORPORATION, | ) | |
| WESTINGHOUSE ELECTRIC CORPORATION, | ) | |
| n/k/a VIACOM, INC., | ) | |
| | ) | |
| Defendants, | ) | |

## COMPLAINT

Comes now Plaintiffs, Lillian Harwood and James Harwood, by and through their

attorneys, BIFFERATO, GENTILOTTI, BIDEN & BALICK, L.L.C., and in support of

their claims against the Defendants, states as follows:

## FACTS

1.     Lillian Harwood and her husband, James Harwood  reside at:  110 San Souci Ave., Ocean Springs, Mississippi, and have lived at this residence from 1970 to the present.  Lillian Harwood's former residences include, but are not limited to: 920 Big Bethel Road, Hampton, Virginia, from 1965 to 1970; 3 Dimmock Ave., Newport News, Virginia, from 1959 to 1965; 636 Augusta St., Hampton, Virginia, from 1952 to 1959; 5885 Wickham Ave., Newport News, Virginia, from 1951 to 1952; 5400 Arlington Ave., Newport News, Virginia, from 1930 to 1951.

2.     Lillian Harwood was employed by Newport News Shipbuilding and Dry Dock Co. located at Newport News, Virginia, as a secretary from 1952 to 1953   During the above employment, Lillian Harwood, was exposed to, inhaled, ingested and otherwise absorbed asbestos fibers emanating from various sources including, but not limited to, industrial equipment, industrial materials, refractories, insulation and sheet gasket material.

3.     Lillian Harwood, was exposed to asbestos from brakes, friction materials, and other automotive components during non-occupational projects, including, but not limited to, automotive repair and maintenance in Hampton, Virginia; Newport News, Virginia; and Ocean Springs, Mississippi; and from joint compound, drywall, roofing materials, siding, cement, and other building materials during non-occupational projects, including, but not limited to, home construction in Hampton, Virginia.

4.     Lillian Harwood's husband, James Harwood, was employed by Newport News Shipbuilding & Dry Dock Co. located at/in Newport News, Virginia, as a machinist and design specialist from 1950 to 1970, while Lillian Harwood resided with

her husband.   Lillian Harwood's husband, James Harwood, former employers include,

but are not limited to the following:  Ingall's located at/in Pascagoula, Mississippi, as an

engineer from 1970 to 1994.  Lillian Harwood's husband would on many occasions work

with and around asbestos and asbestos-containing products, including, but not limited to,

industrial equipment, industrial materials, boilers, turbines, insulation, sheet gasket

material, pumps, electrical components and materials, and refractories. Dust containing

asbestos fibers created by working with and around said asbestos and asbestos-containing

products would permeate the person and clothing of  Lillian Harwood 's husband.  Said

family members carried this dust into the home, family vehicles and other areas where it

became airborne.  As a result,  Lillian Harwood was repeatedly exposed to, inhaled,

ingested and otherwise absorbed asbestos fibers originating from said family members'

employment.

     5.    Lillian Harwood and James Harwood disclaim any claim for relief for any

portion of the injuries sustained upon a federal enclave or as a result of the malfeasance of any

persons acting as federal officers. Lillian Harwood and James Harwood allege no claim

arising under the maritime law of the United States or arising under any other law of the

United States of America or its Constitution.  One or more Defendants are citizens of the State

of Delaware and this action is not properly removable on any theory or jurisdictional basis.

     a.    Defendant Bondex International Inc. is a foreign business entity doing

business in the State of Delaware and subject to service of process pursuant to 10

Del. C. § 3104(c) by service upon the Secretary of State of the State of Delaware.

     b.    Defendant Certain-Teed Corporation  is a Delaware Corporation whose

registered agent for service of process is The Corporation Trust Company, 1209

Orange Street, Wilmington, DE 19801.

c.      Defendant Ford Motor Company is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

d.      Defendant Foster Wheeler Energy Corp. is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

e.      Defendant Garlock Inc. is a foreign business entity doing business in the State of Delaware and subject to service of process pursuant to 10 Del. C. § 3104(c) by service upon the Secretary of State of the State of Delaware.

f.      Defendant General Electric Company is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

g.      Defendant General Motors Corporation is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

h.      Defendant Honeywell International Inc. is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

i.      Defendant Ingersoll-Rand Company is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

j.      Defendant John Crane, Inc. is a Delaware Corporation whose registered

4

agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

k.      Defendant Metropolitan Life Insurance Company is an insurance company licensed to do business in the State of Delaware and as such is subject to service of process by serving the Insurance Commissioner of Delaware, 841 Silver Lake Blvd., Dover, DE 19901.

l.      Defendant Northrop Grumman Corporation is a Delaware Corporation whose registered agent for service of process is The Corporation Trust Company, 1209 Orange Street, Wilmington, DE 19801.

m.      Defendant Philips Electronics North America Corporation is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

n.      Defendant RPM International Inc. is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

o.      Defendant RPM Inc. is a foreign business entity doing business in the State of Delaware and subject to service of process pursuant to 10 Del. C. § 3104(c) by service upon the Secretary of State of the State of Delaware.

p.      Defendant T.H. Agriculture & Nutrition, L.L.C. successor to Thompson Hayward Chemical Co., Inc. is a Delaware Corporation whose registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

q.      Defendant Union Carbide Corporation is a Delaware Corporation whose

5

registered agent for service of process is The Corporation Trust Company, 1209

Orange Street, Wilmington, DE 19801.

r.    Defendant Westinghouse Electric Corporation n/k/a Viacom, Inc. is a

Delaware Corporation whose registered agent for service of process is

Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington,

DE 19808.

6.    All Defendants herein except for Metropolitan Life Insurance Company were at

all times pertinent directly or indirectly engaged in the specification, mining, manufacturing,

distribution, sales, licensing, leasing, installation, removal or use of asbestos and asbestos-

containing products. They were also engaged in the development, manufacture, distribution,

sales, licensing or leasing of equipment, procedures, or technology necessary to mine,

manufacture, sell, distribute, install, remove and use asbestos and asbestos-containing

products.

7.    During the course of her employment and her husband's employment at the

location(s) mentioned above, during non-occupational work projects (including, but not

limited to, home and automotive repairs, maintenance and remodeling) and/or in other ways,

Lillian Harwood was wrongfully exposed to and inhaled, ingested or otherwise absorbed

asbestos fibers, an inherently dangerous toxic substance emanating from certain products she

and her husband  were working with and around which were manufactured, sold, distributed

or installed by the Defendants:  BONDEX INTERNATIONAL INC., CERTAIN-TEED

CORPORATION, FORD MOTOR COMPANY, FOSTER WHEELER ENERGY CORP.,

GARLOCK INC., GENERAL ELECTRIC COMPANY, GENERAL MOTORS

CORPORATION, HONEYWELL INTERNATIONAL INC., INGERSOLL-RAND

6

COMPANY, JOHN CRANE, INC., METROPOLITAN LIFE INSURANCE COMPANY,

NORTHROP GRUMMAN CORPORATION, PHILIPS ELECTRONICS NORTH

AMERICA CORPORATION, RPM INTERNATIONAL INC., RPM INC., T.H.

AGRICULTURE & NUTRITION, L.L.C. successor to THOMPSON HAYWARD

CHEMICAL CO., INC., UNION CARBIDE CORPORATION, WESTINGHOUSE

ELECTRIC CORPORATION, n/k/a VIACOM, INC.

8.    At all times herein set forth, the Defendants' products were being employed in the

manner and for the purposes for which they were intended.

9.    Lillian Harwood's and/or her husband's exposure to and inhalation, ingestion or

absorption of the asbestos fibers emanating from the above-mentioned products was

completely foreseeable and could or should have been anticipated by the Defendants.

10.    The Defendants knew or should have known that the asbestos fibers contained in

their products had a toxic, poisonous, and highly deleterious effect upon the health of persons

inhaling, ingesting or otherwise absorbing them.

11.    Lillian Harwood suffers from an asbestos-related disease(s), including but not

limited to, mesothelioma. Lillian Harwood first became aware that she suffered from said

disease(s) on or about March 14, 2006, and, subsequently thereto, became aware that the

same was wrongfully caused. As a result of her developing mesothelioma, Lillian Harwood

has endured great physical pain and suffering, mental anguish and emotional pain and

suffering. Further, as a result of Defendants' wrongful conduct, Lillian Harwood was required

to receive and received medical treatment to mitigate her asbestos related disease, incurring

reasonable and necessary costs for medical care, diagnosis and treatment.

## COUNT I

7

## STRICT LIABILITY

12. The allegations in paragraphs One (1) through Eleven (11) are realleged and incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi or such law as the Court holds to be applicable.

13. At the time Defendants and each of them manufactured, sold and distributed the asbestos-containing products to which Plaintiff was exposed, said products were in a defective condition and were unreasonably dangerous in that:

      (a) Said products contained friable asbestos fibers as a constituent substance;

      (b) Said asbestos fibers were highly toxic, deleterious, poisonous and harmful to the health of Plaintiff and others similarly situated;

      (c) Said products were not accompanied by any warning/instructions or by adequate warning/instructions advising of the danger of exposure to asbestos or of precautions to be employed in the use of asbestos-containing products.

14. Said products reached the point of Plaintiff's exposure in substantially the same condition as when manufactured, distributed and sold.

15. At all times relevant hereto, said products were used in the manner and environment intended, and in a manner reasonably foreseeable and anticipated by Defendants and each of them.

16. Defendants are strictly liable to Lillian Harwood, deceased, for all injuries and damages which were contracted as a direct and proximate result of her exposure to asbestos from said products.

17. That as a direct and proximate result of one or more of the foregoing negligent

8

acts or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

## COUNT II

### NEGLIGENCE
### AS TO MANUFACTURERS, SELLERS, DISTRIBUTORS AND INSTALLERS
### OF ASBESTOS PRODUCTS

18.    The allegations in paragraphs One (1) through Seventeen (17) are realleged and incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

19.    At all times herein relevant, the Defendants had a duty to exercise reasonable care and caution for the safety of Lillian Harwood and her husband and others working with and around the products of the Defendants containing asbestos.

20.    The Defendants knew or should have known that the asbestos fibers contained in their products had a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them.

9

21.     The Defendants were negligent in that they failed to exercise ordinary care and caution for the safety of Lillian Harwood in one or more of the following respects:

a.  Included asbestos in their products, even though it was completely foreseeable and could or should have been anticipated that persons such as Lillian Harwood and her husband working with or around them would inhale, ingest or otherwise absorb asbestos;

b.  Included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

c.  Included asbestos in their products when adequate substitutes for the asbestos in them was available;

d.  Failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers contained in them;

e.  Failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

f.  Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as Lillian Harwood's husband might be exposed while working with the products; and,

g.  Failed to require and/or advise workers such as Lillian Harwood's family members of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood; and,

g.  Designed, manufactured and sold equipment, vehicles, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

22.     That as a direct and proximate result of one or more of the foregoing negligent acts or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos

10

disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in

the past and will in the future be compelled to expend and become liable for large sums of

monies for hospital, medical and other health care services necessary for the treatment of her

asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future

experience great physical pain and mental anguish as a result of her asbestos-induced disease and

conditions, Lillian Harwood has in the past and will in the future be hindered and prevented

from pursuing her normal course of employment, thereby losing large sums of money which

otherwise would have accrued to her.

**COUNT III**

**WILLFUL AND WANTON CONDUCT**
**AS TO MANUFACTURERS, SELLERS, DISTRIBUTORS AND INSTALLERS**
**OF ASBESTOS PRODUCTS**

23.    The allegations in paragraphs One (1) through Twenty-Two (22) are realleged and

incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the

substantive law of the State of Mississippi and the State of Virginia or such law as the Court

holds to be applicable.

24.    The Defendants had a duty to refrain from willful and wanton acts or omissions

which would harm Lillian Harwood.

25.    Defendants are guilty of one or more of the following acts or omissions

amounting to willful and wanton misconduct:

        a.    Intentionally or with reckless disregard for the safety of Lillian Harwood,
included asbestos in their products, even though it was completely
foreseeable and could or should have been anticipated that persons such as
Lillian Harwood and her husband working with or around them would
inhale, ingest or otherwise absorb asbestos;

11

b.    Intentionally or with a reckless disregard for the safety of Lillian Harwood, included asbestos in their products when the Defendants knew or should have known that said asbestos fibers would have a toxic, poisonous and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing them;

c.    Intentionally or with a reckless disregard for the safety of Lillian Harwood, included asbestos in the products when adequate substitutes for the asbestos in them was available;

d.    Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to provide any or adequate warnings to persons working with and around the products of the dangers of inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

e.    Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to provide any or adequate instructions concerning the safe methods of working with and around the products, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers in them;

f.    Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to conduct tests on the asbestos-containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as Lillian Harwood's husband might be exposed while working with the products;

g.    Failed to adequately label, warn, package, market, distribute, install, remove, or use asbestos in a reasonable manner which would minimize or eliminate the escape of asbestos dust and fibers, therefore adding to the exposure of Lillian Harwood and other similarly situated;

h.    Failed to take adequate steps to remedy the above failures, including but not limited to (1) failure to recall or require removal of asbestos and asbestos products, coupled with (2) ongoing failure to conduct research as to how to cure or minimize asbestos injuries and how to use, install, or distribute asbestos so as to render if safe, and (3) failure to promptly and safely remove the asbestos now in place; and,

i.    Intentionally or with a reckless disregard for the safety of Lillian Harwood, failed to require and/or advise workers such as Lillian Harwood's family members of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood; and,

12

     j.     Intentionally or with a reckless disregard for the safety of Lillian Harwood, designed, manufactured and sold equipment, vehicles, machinery, technologies and systems that included asbestos-containing components and required and/or specified the use of asbestos-containing replacement components.

26.     As a direct and proximate result of the above actions and/or omissions of Defendants, Lillian Harwood was injured as described herein.

27.     A direct and proximate result of one or more of the foregoing acts or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood ; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

28.     In addition to compensatory damages, an award of punitive damages is appropriate and necessary in order to punish Defendants and each of them, for their willful, wanton, intentional and/or reckless misconduct and to deter each Defendant and others similarly situated from engaging in like misconduct in the future.

## COUNT IV

## (CONSPIRACY AGAINST METROPOLITAN LIFE INSURANCE COMPANY)

29.    The allegations in paragraphs One (1) through Twenty-Eight (28) are realleged and incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

30.    Defendants METROPOLITAN LIFE INSURANCE COMPANY agreed and conspired with the Defendants named herein and with other miners, manufacturers, sellers, distributors and installers of asbestos-containing products to suppress and misrepresent the hazards of exposure to asbestos.

31.    Defendants Metropolitan Life Insurance Company, as well as other members of the asbestos industry, including but not limited to Defendants listed herein, engaged in investigations and research as to the hazards of asbestos and often edited out observations and conclusions deemed to be potentially harmful to the asbestos industry and only published favorable portions of their findings or refrained from publishing anything. Furthermore, Metropolitan Life financially aided the asbestos industry in its endeavors to mislead and obfuscate.

32.    As a direct and proximate result of the above wrongful activities of the Defendants, Lillian Harwood and her family members were exposed to asbestos and he developed the asbestos-related disease discussed and sustained the injuries described herein.

33.    As a direct and proximate result of such actions and omissions of Defendants, Lillian Harwood was damaged as described herein.

## COUNT V

## STRICT LIABILITY/ULTRA-HAZARDOUS ACTIVITY (TAKE HOME PREMISES)

14

34.    The allegations in paragraphs One (1) through Thirty-Three (33) are realleged and incorporated by reference within this Count.  Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

35.    Defendant, **NORTHROP GRUMMAN CORPORATION**, owned, operated and/or controlled the Newport News Shipbuilding & Dry Dock Co. premises located at/in Newport News, Virginia, at all relevant times.   While Lillian Harwood resided with her husband, Lillian Harwood's husband worked at the premises of Defendant from 1950 to 1970.  Defendant, **NORTHROP GRUMMAN CORPORATION**, owned, operated and/or controlled the Ingall's premises located at/in Pascagoula, Mississippi, at all relevant times.

36.    While present upon the above-named premises, and during employment with Defendants,  Lillian Harwood's husband was exposed to asbestos fiber emanating from asbestos-containing materials and raw asbestos present and being used at said premises by Lillian Harwood's husband and others, which Lillian Harwood's husband carried home on his person and clothing.   Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed the asbestos fibers carried home on the person and clothing of her husband.

37.    As a direct and proximate result of said exposure, inhalation, ingestion and/or absorption, Lillian Harwood suffered from asbestos-related disease(s), including but not limited to, mesothelioma.  Lillian Harwood first became aware that she suffered from said disease(s) on or about March 14, 2006, and, subsequently thereto, became aware that the same was wrongfully caused.

15

38.    Lillian Harwood and/or her husband's exposure to and inhalation, ingestion and/or absorption of said asbestos fibers was foreseeable and could or should have been anticipated by Defendants and each of them.

39.    Defendants knew or should have known that exposure to asbestos fibers posed an unreasonable risk of harm to and others similarly situated.

40.    Defendants' use of asbestos-containing products and raw asbestos at the above-named facilities, in a manner causing the release of asbestos fibers, constituted an ultra-hazardous activity.  Defendants are strictly liable for injuries caused by such activity, regardless of the amount care exercised.

41.    That as a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

## COUNT VI

## NEGLIGENCE (TAKE HOME PREMISES)

42.   The allegations in paragraphs One (1) through Forty-One (41) are realleged and incorporated by reference within this Count.   Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

43.   Lillian Harwood and her husband were unaware and had no reasonable way to know or realize the risks of being exposed to asbestos.   Defendants should have anticipated that Lillian Harwood and her husband did not know and would not discover or realize the risks of being exposed to asbestos fibers or the risks of carrying asbestos fibers home.

44.   Defendants had a duty to use ordinary care to see that the premises, at which Lillian Harwood's husband was rightfully present, were in a reasonably safe condition for use by Lillian Harwood's husband and to use ordinary care for the safety of Lillian Harwood and her husband in conducting any operations or activities on said premises.

45.   Defendants breached its duties to Lillian Harwood and her husband and were negligent in one or more of the following respects:

> (a) Specified/required the use/application/removal of asbestos-containing materials by Lillian Harwood's husband, and others, including co-workers of Lillian Harwood's husband and outside contractors, in the vicinity of Lillian Harwood's husband and/or in areas in the vicinity of Lillian Harwood's husband and/or in areas in which Lillian Harwood's husband performed work;

> (b) Required Lillian Harwood's husband to perform work in the vicinity of those using/applying/removing asbestos-containing materials;

> (c) Purchased/provided asbestos-containing materials for purposes of application at the above-named premises;

> (d) Failed to replace asbestos-containing materials at the premises with non-asbestos substitutes, which Defendants knew or should have known were available;

17

(e) Failed to warn Lillian Harwood's husband that they were working with and/or around asbestos-containing materials and of the risks associated therewith, including that Lillian Harwood and her husband were being exposed to asbestos fibers and of the adverse health effects of such exposure;

(f) Failed to require and/or advise Lillian Harwood's husband, other employers and/or outside contractors to use safety equipment and practices designed to reduce the release of asbestos fibers and/or exposure to asbestos;

(g) Failed to provide equipment designed to contain asbestos fibers and reduce the risks of exposure to asbestos;

(h) Failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as her husband might be exposed while working with the products; and,

(i) Failed to require and/or advise workers such as Lillian Harwood's husband of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood.

46.    As a direct and proximate result of one or more of the foregoing acts and/or omissions by Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, causing Lillian Harwood to develop the aforementioned asbestos-related disease.

47.    That as a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and

18

conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

## COUNT VII

## WILLFUL AND WANTON MISCONDUCT (TAKE HOME PREMISES)

48.    The allegations in paragraphs One (1) through Forty-Seven (47) are realleged and incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

49.    Defendants and each of them had a duty to see that the premises, at which Lillian Harwood's husband was rightfully present, was in a reasonably safe condition for use by Lillian Harwood's husband and to protect Lillian Harwood and Lillian Harwood's husband from harm in conducting any operations or activities on said premises.

50.    Defendants breached their duties to Lillian Harwood and her husband and acted willfully, wantonly, intentionally and/or in reckless disregard for Lillian Harwood and her husband's safety and health in one or more of the following respects:

> (a) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, specified/required the use/application/removal of asbestos-containing materials by Lillian Harwood's husband, and others, including co-workers of Lillian Harwood's Lillian Harwood and outside contractors, in the vicinity of Lillian Harwood's husband and/or in areas in the vicinity of Lillian Harwood's husband and/or in areas in which Lillian Harwood's husband performed work;

> (b) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, required Lillian Harwood's husband to perform work in the vicinity of those using/applying/removing asbestos-containing materials;

19

(c) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, purchased/provided asbestos-containing materials for purposes of application at the above-named premises;

(d) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to replace asbestos-containing materials at the premises with non-asbestos substitutes, which Defendants knew or should have known were available;

(e) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to warn Lillian Harwood's husband that he was working with and/or around asbestos-containing materials and of the risks associated therewith, including that Lillian Harwood and her husband were being exposed to asbestos fibers and of the adverse health effects of such exposure;

(f) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to require and/or advise Lillian Harwood's husband, other employers and/or outside contractors to use safety equipment and practices designed to reduce the release of asbestos fibers and/or exposure to asbestos;

(g) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to provide equipment designed to contain asbestos fibers and reduce the risks of exposure to asbestos;

(h) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to conduct tests on the asbestos containing products manufactured, sold, delivered or installed by the Defendants in order to determine the hazards to which persons such as Lillian Harwood and workers such as her husband might be exposed while working with the products; and,

(i) Intentionally or with a reckless disregard for the safety of Lillian Harwood and/or her husband, failed to require and/or advise workers such as Lillian Harwood's husband of hygiene practices designed to reduce and/or prevent carrying asbestos fibers into the home and thereby exposing family members such as Lillian Harwood.

51.    As a direct and proximate result of one or more of the foregoing willful, wanton, intentional and/or reckless acts and/or omissions by Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, causing her to develop the aforementioned asbestos-related disease for which Lillian Harwood is entitled to recover compensatory damages, as prayed above.

20

52.    That as a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of the Defendants, Lillian Harwood was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Lillian Harwood to develop the asbestos disease aforesaid, which has disabled and disfigured Lillian Harwood; Lillian Harwood has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of her asbestos-induced disease and conditions; Lillian Harwood has in the past and will in the future experience great physical pain and mental anguish as a result of her asbestos-induced disease and conditions, Lillian Harwood has in the past and will in the future be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to her.

## COUNT VIII

## LOSS OF CONSORTIUM

53.    The allegations in paragraphs One (1) through Fifty-Two (52) are realleged and incorporated by reference within this Count. Plaintiff's recovery herein is predicated upon the substantive law of the State of Mississippi and the State of Virginia or such law as the Court holds to be applicable.

54.    Plaintiff James Harwood is married to plaintiff Lillian Harwood. As a result of the Defendants' wrongful conduct which cause her husband's above stated asbestos-related disease and problems, plaintiff James Harwood has and will continue in the future to suffer a loss of support, consortium and society of her husband, together with related mental anguish and pain and suffering.

21

WHEREFORE, plaintiffs, Lillian Harwood and James Harwood pray this Court to enter

judgment against Defendants and to award: compensatory damages in an amount to be proved at

trial, but believed to exceed $100,000; and punitive damages in an amount sufficient to punish

Defendants for their misconduct and to deter similarly situated parties from committing like acts

of misconduct in the future; and for such other and further relief that this Court deems

appropriate.

**BIFFERATO, GENTILOTTI, BIDEN
& BALICK, L.L.C.**

_____

Ian Connor Bifferato (DE Id. No. 3273)
Garvan F. McDaniel (DE Id. No. 4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington DE 19899-2165
Tel. (302) 429-1900
Fax. (302) 429-8600

Dated: 8/24/06

**OF COUNSEL**
SIMMONSCOOPER LLC
John A. Barnerd (IL Id. No. 6269365)
707 Berkshire Boulevard
East Alton, Illinois 62024
Tele: (618) 259-2222
Fax: (618) 259-2251

22

# EXHIBIT "B"

**EFiled: Sep 27 2006 9:11** **EDT**
**Transaction ID 12470500**

September 21,

OFFICE OF THE SHERIFF

Served: 1. CERTAINTEED CORPORATION 2. FORD MOTOR COMPANY 3. FOSTER WHEELER ENERGY CORPORATION    4. GENERAL ELECTRIC COMPANY    5. GENERAL MOTORS CORPORATION    6. INGERSOLL-RAND COMPANY    7. JOHN CRANE INC    8. NORTHROP GRUMMAN CORPORATION 9. UNION CARBIDE CORPORATION

By serving their R/A CORPORATION TRUST CO, by delivering copies of the within writs together with copies of the Summons and Complaint to SCOTT LA SCALA, , of the said registered agent on 9/19/2006 at 10:45AM.

Fees Paid: $145.00

Civil Action # 06C-08-224
Per: Deputy Sheriff, Clarence Everett

SO ANS;
SHERIFF

WRIT RET. 9-22-06

PER   Doreen Simmons

Document # 06015567

EFiled: Aug 24 2006 5:50 PM EDT
Transaction ID 12176251

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

IN RE: ASBESTOS LITIGATION:                          )
                                                     )
LILLIAN HARWOOD and JAMES HARWOOD,                   )
her husband,                                         )
                                                     )
        Plaintiffs,                                  )
                                                     )
        -vs.-                                        )   CA. NO. _06C-08-224_
                                                     )
BONDEX INTERNATIONAL INC.,                           )   ASBESTOS
CERTAIN-TEED CORPORATION,                            )
FORD MOTOR COMPANY,                                  )   NON-ARBITRATION
FOSTER WHEELER ENERGY CORP.,                         )
GARLOCK INC.,                                        )   TRIAL BY JURY OF
GENERAL ELECTRIC COMPANY,                            )   TWELVE DEMANDED
GENERAL MOTORS CORPORATION,                          )
HONEYWELL INTERNATIONAL INC.,                        )
INGERSOLL-RAND COMPANY,                              )
JOHN CRANE, INC.,                                    )
METROPOLITAN LIFE INSURANCE                          )
  COMPANY,                                           )
NORTHROP GRUMMAN CORPORATION,                        )
PHILIPS ELECTRONICS NORTH AMERICA                    )
  CORPORATION,                                       )
RPM INTERNATIONAL INC.,                              )
RPM INC.,                                            )
T.H. AGRICULTURE & NUTRITION, L.L.C. successor to)
  THOMPSON HAYWARD CHEMICAL CO., INC.,               )
UNION CARBIDE CORPORATION,                           )
WESTINGHOUSE ELECTRIC CORPORATION,                   )
  n/k/a VIACOM, INC.,                                )
                                                     )
        Defendants,                                  )

## SUMMONS

THE STATE OF DELAWARE:
TO THE SHERIFF OF NEW CASTLE COUNTY:
YOU ARE COMMANDED:

        To summon the above named Defendants, as noted in the Praecipe, so that, within 20
days after service hereof upon Defendants' agent, exclusive of the day of service, Defendants

1

shall serve upon Plaintiffs' attorney, Ian Connor Bifferato, at Bifferato Gentilotti, Biden & Balick, L.L.C., 1308 Delaware Avenue, Wilmington, Delaware, 19806, an answer to the Complaint (and, if an affidavit of demand has been filed, an affidavit of defense).

To serve upon Defendants' Agent a copy hereof and of the Complaint (and of the affidavit of demand if any has been filed by Plaintiffs).

Date: 9/12/06

Prothonotary
SHARON D. AGNEW
Per Deputy

TO THE ABOVE NAMED DEFENDANTS:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on Plaintiffs' attorney named above an answer to the Complaint (and, if an affidavit of demand has been filed, an affidavit of defense), judgment by default will be rendered against you for the relief demanded in the Complaint (or in the affidavit of demand, if any).

9/12/06

Prothonotary
SHARON D. AGNEW
Per Deputy

2

# EXHIBIT "C"

EFiled: Aug 28 2006 8:48AM EDT
Transaction ID 12193578

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| IN RE: ASBESTOS LITIGATION: | ) | |
| | ) | CA. NO.  06C-08-224 ASB |
| LILLIAN HARWOOD and JAMES HARWOOD, | ) | |
| her husband, | ) | ASBESTOS |
| | ) | |
| Plaintiffs, | ) | NON-ARBITRATION |
| | ) | |
| -vs.- | ) | TRIAL BY JURY OF |
| | ) | TWELVE DEMANDED |
| BONDEX INTERNATIONAL INC., et al., | ) | |
| | ) | |
| Defendants, | ) | |

### PLAINTIFFS' ANSWERS TO INTERROGATORIES
### DIRECTED TO PLAINTIFF BY ALL DEFENDANTS
### AND RESPONSE TO REQUEST FOR PRODUCTION

**Preamble**

**A.     Personal History**

1.     State all names by which you have been known; the date and place of your birth;

occupation; social security number; height; weight; color of hair and eyes; and the number of any

motor vehicle operator's license held in the State of Delaware or any other state.

ANSWER:     Name:          Lillian Vaughan Harwood
            DOB:           September 27, 1930
            Occupation:    Retired
            SSN:           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
            Height:        5' 5"
            Weight:        175 lbs.
            Hair:          Gray
            Eyes:          Hazel
            DL#:           800172742

2.     State the address of each place of residence that you have occupied from 1936 to

date.

1

ANSWER:

| | |
|---|---|
| Current Address:<br>Years: | 110 San Souci Ave., Ocean Springs, MS<br>Sept 1970 – Present |
| Previous Address:<br>Years: | 920 Big Bethel Road, Hampton, VA<br>1965 – 1970 |
| Previous Address:<br>Years: | 3 Dimmock Ave., Newport News, VA<br>1959 – 1965 |
| Previous Address:<br>Years: | 636 Augusta St., Hampton, VA<br>1952 – 1959 |
| Previous Address:<br>Years: | 5885 Wickham Ave., Newport News, VA<br>January 1951 – 1952 |
| Previous Address:<br>Years: | 5400 Arlington Ave., Newport News, VA<br>1930 - 1951 |

3.    Are you married?  If yes, please state the name and present address of your

spouse.

ANSWER:    James Harwood, 110 San Souci Ave., Ocean Springs, MS

4.    If you have had any previous marriages, please state the name of any former

spouse, and state the date, place and circumstances under which the marriage or marriages were

dissolved or terminated.

ANSWER:    None.

5    Please state the name, ages and present address of your children.

ANSWER:
Son:   James Ray Harwood, 9170 E. Gold Links, Apt. 3102, Tucson, AZ; Born: February 1954
Son:   Robert Burleigh Harwood, 732 S. Old Mill rd., Dover, DE; Born:  June 1960

6.    If you have ever been a member of the Armed Forces of the United States, state the following:

    (a)    The branch of the service, serial number, and highest rank held;

    (b)    The beginning and ending dates of your military services;

    (c)    The type of discharge that you received;

    (d)    Whether you were given a physical examination which included x-rays prior to the time you entered the service;

    (e)    Whether you received any injury while in the military services; and

    (f)    Whether you have claimed disability for any injury or physical condition arising out of your military service.

ANSWER:    I did not serve in the military.

7.    If you have had a claim arising out of your military service, state the date on which the claim was made, the nature of the claim, the claimed disability and the disability rating, if any, which you were given.

ANSWER:    I did not serve in the military.

8.    If you have ever been convicted of a felony or a crime involving dishonesty, state fully and in detail the date, place and nature of each such felony conviction.

ANSWER:    Objection. Plaintiff objects to this interrogatory as being beyond the scope of discovery, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. By way of further answer without waiving said objection, then no.

9.    Give a brief summary of your education, including schools attended and the last year completed.

ANSWER:
George Wythe Elementary School, Hampton, VA
Elementary School in Newport News, VA
George Wythe Junior High School, Hampton, VA

3

Hampton High School, Hampton, VA

**B.    Employment Background**

10.    State the names and address of each employer for whom you worked during the years 1936 to date, stating as to each such employer the beginning and ending dates of employment, the nature of the business, the name and address of your direct supervisor, and your particular job function.

ANSWER:    See attached employment history forms.

**C.    Product I.D. and Exposure History**

11.    With respect to any products containing asbestos manufactured, packaged, furnished, supplied, or sold by each defendant named in this action that you claimed to have worked with or around, state the following for each defendant.

(a)    The name of the product or products;

(b)    The name of your employer at the time you worked with or around such product;

(c)    The name and address of the plant where you worked with or around such products;

(d)    The name and last known address of your immediate supervisor or job superintendent on such job;

(e)    The name and last known address of all persons with whom you worked on such jobs; and,

(f)    The approximate length of time that you worked on each such job.

ANSWER:
See work and exposure history forms of Lillian Harwood and James Harwood, her husband, attached hereto   Generally, I know types of asbestos products used in the shipyards but do not personally recall brand names at this time.  Investigation continues.

4

12. State fully and in detail each and every evidentiary fact upon which the alleged negligence or alleged liability of each defendant is based. As to each such fact, state:

(a) The identities, including names, business addresses, residential address, of each individual having knowledge of those facts;

(b) Identify each document which supports or tends to support the existence of such fact. Identify the document by briefly describing it, and by stating its present location and the name and full business address of the present custodian of the document.

ANSWER: Objection. Plaintiff objects to this interrogatory as vague, overly broad and unduly burdensome. Subject to and without waiving said objections, plaintiff states: Evidentiary facts will be provided as to conditions of the workplace; the plaintiff's exposure to asbestos containing products; the lack of and/or failures of safety or respiratory devices; defendants' state of knowledge regarding asbestos; defendants' lack of warning; dangers of asbestos and the defendants' disregard of these dangers; medical records and testimony specific to the plaintiff, and other necessary elements of the claim.

The evidence will include, among other items: testimony specific to this case; documents and exhibits from defendants and other parties, materials from other lawsuits including exhibits, trial testimony, depositions, admissions, discovery, documents produced by all defendants in previous litigation, and any other relevant sources of information now known or discovered in the future, as investigations as to all defendants' are on-going.

See also, Master Expert Disclosures, Master Exhibit List, and Case Specific Fact Witness Disclosures which will be filed in compliance with the scheduling order controlling this case

13. For each asbestos containing product, material or mineral, manufactured, produced, prepared, distributed or sold by each defendant, state in detail for each such defendant:

(a) Which such product, material compound, etc. (hereinafter referred to as "product") you claimed to have come into contact with at any time from 1936 to the present;

(b) Describe separately and in detail each such product as fully as possible including the trade name, product type and product contents;

(c) The dates on which you came into contact with each such product, as

5

listed in your answer to subpart (a) of this interrogatory, and state with which product or products you came into contact with on each such date;

(d)    The name, address and telephone number of your employer and each date listed in subpart (c) above;

(e)    The name, address and location of your place of employment or job site on each date listed in subpart (c) above;

(f)    The address of your residence on each date listed in subpart (c) above;

(g)    The type of work you were performing on each such date set forth in subpart (c) above;

(h)    The present name, business address and telephone number, and residence address and telephone number of each person who witnessed your work on each date set forth in subpart (c) above;

(i)    All instructions, recommendations or warnings of any kind regarding each product listed in your answer to subpart (a) above that accompanied the product, i.e., printed on tag, tag covering or instruction sheet accompanying the product, etc., in verbatim or with as complete and accurate detail as is possible;

(j)    Any and all instructions or recommendations given to you regarding each product listed in your answer to subpart (a) above given by your employer or superior at any time, in verbatim or with as complete and accurate detail as is possible;

(k)    For what purpose you used each such product listed in your answer to subpart (a) above; and,

(l)    All literature that you, your attorneys, agents, or anyone acting in your behalf have received regarding each product listed in your answer to subpart (a) above to this interrogatory. Include in your answer the subject matter, document title and publication date of all such literature.

ANSWER:    (a-k) Objection. Plaintiff objects to this Interrogatory as overly broad, vague and unduly burdensome. Subject to and without waiving objections, see above answers to Interrogatories 10-12.

(l) Objection. Plaintiff objects to this Interrogatory as vague, overly broad and unduly burdensome. Subject to and without waiving said objections, see response to Interrogatory 12 Furthermore, documents will be made available upon request.

6

14.    In regard to each and every other defendant named or to be named in this lawsuit,

answer and provide all the information requested in Interrogatory No. 13 accordingly.

ANSWER:    See response to Interrogatory 13.

15.    Did you ever work with or come in contact with asbestos products manufactured,

sold, etc., by any other entity not named as a defendant in this lawsuit? If yes, identify each such

entity and, with regard to same, answer fully and provide the information requested in

Interrogatory No. 13 accordingly.

ANSWER:    I do not personally recall others at this time. It would depend on the brands of
asbestos products used at the shipyards identified in the work and exposure history forms

16.    With respect to each job on which you worked with or around asbestos products,

state separately the following as to each such job:

      (a)    The name and address of the employer for whom you worked;

      (b)    The location of each job (stating the plant site, city, county and state);

      (c)    The beginning and ending dates of the job; and product containing
          asbestos with which you worked on the particular job and a general
          description of each such product.

ANSWER:    (a-c) See responses to Interrogatories 10 and 11.

17.    Are you able to state that you have not worked with or around asbestos products

manufactured by companies who are not named defendants in this suit?

ANSWER:    See response to Interrogatories 15 and 16.

18.    Please list all past employers in whose employ you came into contact with

asbestos or asbestos-containing materials. Include in your answer for each such employer:

      (a)    Name, address and telephone number;

(b) Job title and work description;

(c) Type and identity of each such asbestos material with which you had contact;

(d) Whether employer provided safety equipment so as to reduce or prevent harmful exposure to asbestos materials;

(e) Whether employer required that employees use safety equipment of the type referred to in subpart (d) above;

(f) Whether employer ever recommended that such safety equipment be used by its employees;

(g) Whether employer provided showers for employees;

(h) Whether employer provided separate lockers for both work and personal clothing; and,

(i) If company-sponsored physical examinations were required or made available. If so, please state:

   (i) Whether required or optional;

   (ii) Frequency of examination;

   (iii) Nature and extent of examination;

   (iv) Whether x-ray examination or respiratory or pulmonary examinations were included;

   (v) Frequency with which you submitted to such examination when required or made available;

   (vi) Your detailed reason for failing to submit to such examination when required or made available;

   (vii) Results of each such examination; and,

   (viii) Name, address and telephone number of examining physician, nurse or technician.

ANSWER:    See attached work history forms. I was never offered nor participated in a company-sponsored physical at any of my employers. I was never offered nor used any safety

equipment at any of my employers.

19.   Were you ever employed where your duties involved the tearing out of insulation which contained asbestos? If your answer is in the affirmative, please state for each such employment:

(a)   Name, address and telephone number of employer;

(b)   Name and location of job site;

(c)   Dates of such employment period;

(d)   Detailed job description and description of work methods and techniques; and,

(e)   Whether or not respiratory safety equipment was:

(i) Required;

(ii) Made available to you; or

(iii) Recommended by employer

ANSWER:    No.

20    Have you at any time during your lifetime ever used any device to reduce your possible exposure to, or inhalation of, asbestos dust or fiber? If your answer is in the affirmative, please state for each such device:

(a)   The make, model and type;

(b)   From whom it was received;

(c)   Company or employer requirements regarding use of such device;

(d)   Company or employer recommendations regarding use of such device;

(e)   Name, address and telephone number of document title, date and description of the source of such requirement or recommendation;

9

    (f)    Date and time of each period of use of such device; and,

    (g)    If you will do so without a motion to produce, please attach a copy of each writing which evidences the requirements or recommendations referred to in subparts (c) and (d) of this interrogatory.

ANSWER:    No.   ,

21.    Did any of your employers ever suggest or recommend that you might or should use any device to reduce your possible exposure to or inhalation of asbestos dust or fibers? If your answer is in the affirmative, please state for each and every such employer:

    (a)    Name, address and telephone number;

    (b)    The date, time and place when each such suggestion or recommendation was made;

    (c)    The name, address and telephone number of each person present when such suggestion or recommendation was made to or received by you;

    (d)    The name, address and telephone number of each person receiving same or similar suggestion or recommendation;

    (e)    The exact wording and content of such suggestion or recommendation;

    (f)    Whether such suggestion or recommendation was written or oral, and;

        (i) If written, please identify in detail each such writing; and,

        (ii) If oral, please set forth all persons involved and details as to the manner in which each such suggestion or recommendation was presented.

    (g)    The type, make and model of each device referred to in each such suggestion or recommendation;

    (h)    The nature of any action, if any, taken by you in response to each such suggestion; and,

    (i)    Describe in detail your reasons for any response to such suggestions or recommendations other than full compliance thereto.

ANSWER:    No.

22. At any time, did you receive, have knowledge of, or possess any advice, publication, warning, order, directive, requirement or recommendation, written or oral, which purported to:

    (a) Warn or advise you of the possible harmful effects of exposure to, or inhalation of, asbestos or asbestos-containing products; or

    (b) Advise or recommend as to techniques, methods or equipment which would serve to reduce or guard against such potentially harmful exposure?

ANSWER:   No.

23. If your answer to any part of Interrogatory No. 22 is in the affirmative, please state:

    (a) The nature and exact wording of such advice, warning or recommendation;

    (b) The complete identity of each source of such advice, warning or recommendation;

    (c) The date, time, place, manner and circumstances when each such advice, warning or recommendation was given;

    (d) The name, business address and telephone number, job title, residence address and telephone number of each and every witness to the plaintiff's reception of such advice, warning or recommendation; and,

    (e) The name, business address and telephone number, job title, residence address and telephone number of each and every co-worker or similar member of your trade and occupation who also received the same or similar advice, warning or recommendation.

ANSWER:   No.

**D.   Smoking History**

24. Do you smoke cigarettes, cigars or a pipe?

ANSWER:   Yes.

11

25. Have you ever smoked tobacco products of any type?

ANSWER: Yes.

26. If your answer to Interrogatory No. 24 and/or 25 is in the affirmative, please state fully and in detail:

    (a) The type of tobacco products which you smoke or have smoked, that is, cigarettes, cigars, pipes, etc., stating whether you inhaled the smoke or not;

    (b) The daily frequency with which you smoke or have smoked same, e.g., two packages of cigarette daily, two pipefulls daily, etc.;

    (c) The dates and time periods during which you have smoked;

    (d) For any time periods during which you have ceased smoking tobacco products, your reasons for stopping;

    (e) For any time period when you have commenced smoking tobacco products after a period of having stopped smoking, your reasons for restarting;

    (f) If you smoke cigarettes, please state the average number of packs per day so consumed in each of the following five year periods of 1935 to the present time:

        (i) 1935 - 1940;

        (ii) 1941 - 1945;

        (iii) 1946 - 1950;

        (iv) 1951 - 1955;

        (v) 1956 - 1960;

        (vi) 1961 - 1965;

        (vii) 1966 - 1970;

        (viii) 1971 - 1975;

        (ix) 1976 - present;

12

(g)   Whether you were ever advised by any physician to stop smoking. If your answer is yes, give the date and name and address of each physician who gave you any such advice, and also state whether you followed that advice; and,

(h)   State the brand of tobacco used by plaintiff.

ANSWER:   I smoked filtered cigarettes from 1955- 2000, and then began smoking again in 2005 to present. I generally smoke at the most about six cigarettes per day. I have smoked various brands.

27.   Are you aware of the United States Surgeon General's warning placed on all cigarette packages and advertisements?

ANSWER:   Objection. Plaintiff objects to this Interrogatory as irrelevant, vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence.

28.   Have you ever read the warning referred to in Interrogatory No. 27. If so, state the date you first read it.

ANSWER:   Objection. See response to Interrogatory 27.

29.   Have you ever smoked cigarettes subsequent to being aware of or reading the warning referred to in Interrogatory No. 27.

ANSWER:   Objection. See response to Interrogatory 27.

30.   Have you ever smoked tobacco products other than cigarettes subsequent to being aware of or reading the warning referred to in Interrogatory No. 27? If so, what products and when?

ANSWER:   Objection. See response to Interrogatory 27.

31.   Have you ever been discharged or voluntarily left a position or changed residence due to health reasons? If yes, please state in detail the times, places and circumstances.

ANSWER:   Objection. Plaintiff objects to this Interrogatory as irrelevant, vague, and overly

13

broad. Subject to and without waiving said objection, No.

32. Have you ever been hospitalized, operated upon, or confined to an institution? If

yes, please state:

(a) The names and address of all hospitals or institutions involved;

(b) The beginning and ending dates of each period of hospitalization;

(c) The nature of the illness, injury or complaint for which you were admitted to the hospital;

(d) The names, addresses and relationships to you of all persons who treated or examined you;

(e) The nature and extent of any permanent disabilities or residual effects; and,

(f) The nature, source, and amount of any disability benefits, pensions or other remunerations received.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as irrelevant and overbroad. The Interrogatory specifically requests information wholly unrelated to the present illness. Subject to and without waiving said objections, plaintiff states:

Singing River Hospital / Ocean Springs Hospital, 3109 Bienville Blvd., Ocean Springs, MS 39564

See also authorizations and medical records deposited with Defense Coordinating Counsel.

33. If you have ever suffered any personal injuries or illness other than those involved

in this lawsuit, state for each such injury or illness:

(a) The date, place, names of persons involved, and circumstances surrounding each such injury or illness;

(b) The nature and extent of the injuries or illnesses, including all ill effects or disabilities remaining at the time of the last treatment or examination;

(c) The nature and extent of the injuries or illnesses including all ill effects or disabilities remaining at the time of answering these interrogatories;

14

     (d)    The names and addresses of all persons who treated or examined you, together with the date of the last treatment or examination; and,

     (e)    The nature, source, and amount of any disability benefits, pensions, or other remunerations for such injuries or illnesses.

ANSWER:    See response to Interrogatories 32 and 34.

34.    With respect to each doctor who has examined or treated you from the year 1936 to date, state the following:

     (a)    The name and address of each such doctor;

     (b)    The complaint that you had which caused you to see the particular doctor;

     (c)    The type of examination and treatment that each doctor gave you; and,

     (d)    The date or dates on which you were examined and treated by each particular doctor.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as irrelevant and overbroad. The Interrogatory specifically requests information unrelated to the present illness. Subject to and without waiving said objection, plaintiff states:

Dr. William Striegel, 11 Doctors Drive, Ocean Springs, MS 39564

Dr. Hazem Barmada, 11 Marks Rd , Ocean Springs, MS 39564

Dr. Daniel Patterson, Dr. Sam Dennis, Cancer Center, 2809 Denny Ave., Pascagoula, MS 39581

See also responses to Interrogatory 32.

35.    Have you ever had chest x-rays taken?  If so, state the following for each set of x-rays taken:

     (a)    The name and address of the office or hospital where the x-rays were taken;

     (b)    The reason why such x-rays were taken;

15

    (c)     The date or dates on which the x-rays were taken;

    (d)     The x-ray diagnosis that was reported to you.

ANSWER:   See medical records and medical providers listed in response to Interrogatories 32 and 34. I do not recall other x-rays.

36.    Do you or your attorneys have any medical reports from any persons, hospitals, doctors or medical practitioners, or institutions that have ever treated or examined you at any time? If so, please attach copies of the reports to your answers to these interrogatories. If you will not voluntarily attach copies of the reports to your answers to these interrogatories, then please state fully and in detail:

    (a)     The identity of the report or reports by date, subject matter, name, address, job title or capacity of the person(s) to whom addressed or directed, and the job title or capacity of the person or persons who prepared these same; and,

    (b)     The name, address, and present whereabouts of the person who has custody or control of the medical records and the purpose of said preparation.

ANSWER:   See authorizations and medical records deposited with Defense Coordinating Counsel.

37    Have you ever received any nursing care or housekeeping services for or because of any injury sustained or any other physical condition? If yes, please state fully and in detail:

    (a)     The names, addresses and the relationship to you of the person(s) administering such care or services;

    (b)     The dates during which such care or services were received; and,

    (c)     The injury or illness or physical condition necessitating such care or services.

ANSWER:   No

38.    Have you ever been confined to bed or home as a result of any illness, injury, or

16

emotional or psychological illness or distress you may have sustained at any time?  If yes, please

state fully and in detail:

      (a)    The dates during which you were confined to your bed or home; and,

      (b)    The address where each confinement took place.

ANSWER:    Objection. Plaintiff objects to this interrogatory on the grounds that the information sought is irrelevant to the present claim. By way of further answer without waiving said objection, none other than previously disclosed in response to Interrogatories 32 and 34.

    39    Have you ever had to wear any medical support, cast, brace, or other device or

garment, or use any other type of medical aid at any time? If yes, please state fully and in detail:

      (a)    A description of the item;

      (b)    Whether it was rented or purchased;

      (c)    The name and address of the supplier;

      (d)    The cost of the item; and,

      (e)    The period of time it was used.

ANSWER:    Objection. Plaintiff objects to this interrogatory on the grounds that the information sought is irrelevant to the present claim. By way of further answer without waiving said objection, no.

    40.    State the dates, places and circumstances and results including any interpretative

or diagnostic conclusions or possibilities of each and every x-ray or radiological examination of

your body during your lifetime. Please include in your answer for each such examination, in

addition to the above requested information:

      (a)    Name, address, and telephone number of each prescribing physician of each examination;

      (b)    Name, address, and telephone number of each examining physician in each examination;

17

(c)  Name, address, and telephone number of the medical institution or laboratory, public or private, in which such examination was performed;

(d)  The number of x-rays taken;

(e)  Name, address, and telephone number of the present or last known custodian of each such x-ray;

(f)  The specific areas of the body of which the x-ray examination was made;

(g)  The interpretative or diagnostic results, conclusions, or possibilities derived from each such examination. Include in your answer the date, time, place, source and nature of each such result, conclusion or possibility at the time same was made known to you, or anyone related to you or acting in your behalf; and,

(h)  Any treatment, recommendation or prescribed therapy resulting from such examination. Include in your answer:

(i)  Purpose and objective of same;

(ii)  Success or failure of same;

(iii)  Date, time, and duration of each such course of treatment or therapy;

(iv)  Name of medication and the prescribed dosage;

(v)  Accomplishments or degree of success of such treatment, therapy, or combination thereof; and,

(vi)  Whether you cooperated completely, or in part, or ignored any such treatment, recommendation, prescription, or course of therapy or treatment, and the reasons for any such behavior on your part other than complete cooperation.

ANSWER:    Objection. Plaintiff objects to this interrogatory on the grounds that it is overbroad and seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. By way of further answer without waiving said objection, see responses to Interrogatories 32, 34 and 35. See also authorizations and medical records deposited with Defense Coordinating Counsel.

41.    State the dates, places, and circumstances of each and every cardiology

18

examination, or examination related to the circulatory system in any fashion, conducted upon you during your lifetime. In addition, include in your answer for each and every such examination:

    (a)    Name, address and telephone number of each prescribing physician;

    (b)    Name, address and telephone number of each examining physician;

    (c)    Name, address and telephone number of each medical institution, office or laboratory, public or private, in which such examination was conducted;

    (d)    Name, address and telephone number of the present or last known custodian of any results of such examination;

    (e)    The interpretative or diagnostic results, conclusions or possibilities derived from each such examination. Include in your answer the date, time, place, source and nature of each such result, conclusion or possibility at the time that same was made known to you or anyone related to you or acting in your behalf; and,

    (f)    Any treatment, recommendation or prescribed therapy resulting from such examination. Include in your answer:

        (i) Purpose and objective of same;

        (ii) Success or failure of same;

        (iii) Date, time, and duration of each such course of treatment or therapy;

        (iv) Name of medication and the prescribed dosage;

        (v) Accomplishments or degree of success of such treatment, therapy, or combination thereof; and,

        (vi) Whether you cooperated completely, or in part, or ignored any such treatment, recommendation, prescription, or course of therapy or treatment, and the reasons for any such behavior on your part other than complete cooperation.

ANSWER:    Objection. Plaintiff objects to this interrogatory on the ground that it is overly broad and seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. By way of further answer without waiving said objection, see responses to Interrogatories 32 and 34. See also authorizations and medical records deposited with Defense Coordinating Counsel.

42.     State the dates, places and every pulmonary or respiratory system-related examination conducted upon you during your lifetime. In addition, include in your answer for each and every such examination the following:

(a)     Name, address and telephone number of each examining physician;

(b)     Name, address and telephone number of each medical institution, office, or laboratory, public or private, in which such examination was made;

(c)     Name, address and telephone number of the present or last known custodian of any results of such examination;

(d)     The interpretative or diagnostic results, conclusions, or possibilities derived from each such examination. Include in your answer the date, time, place, source and nature of each such result, conclusion or possibility at the time that same was made known to you or anyone related to you or acting in your behalf; and,

(e)     Any treatment, recommendation or prescribed therapy resulting from such examination. Include in your answer:

(i) Name, address and telephone number of each prescribing physician;

(ii) Purpose or objective of same;

(iii) Success or failure of same;

(iv) Date, time and duration of same;

(v) Name and dosage of prescribed medication;

(vi) Accomplishments or degree of success of such treatment or therapy or combination thereof; and,

(vii) Whether you cooperated completely or only in part or ignored each such recommendation, prescribed treatment, or therapy, and the reasons for any such behavior on your part other than complete cooperation.

ANSWER:     See response to Interrogatories 32 and 34. See also authorizations and medical records deposited with Defense Coordinating Counsel

20

43.    If you will do so without a motion to produce, please attach copies of any records, receipts or invoices related in any fashion to any or all of your answers to the above three interrogatories.

ANSWER:    Pursuant to Standing Order #1, authorizations and medical records have been deposited with Defense Coordinating Counsel.

44.    For each and every present or past symptom, indication, malaise or effects which you contend to be directly or indirectly related to any disease, disability or physical condition or state of your body or health, and which you contend is relevant to this lawsuit, please state:

(a)    Nature and description of such symptoms;

(b)    The disease, disability or physical condition to which said symptom is related and the nature and extent of such relationship;

(c)    The date, time, place and manner in which such symptom first manifested itself or was made known to you, including all pertinent information as to the source of such knowledge;

(d)    Whether you contend such symptom is related in any fashion to asbestosis or pleuritis, or any other condition from which you allegedly suffer, and the nature and extent of such relationship;

(e)    Whether you contend that such symptom is related in any fashion to the use or effect of any product manifested, sold or distributed, in whole or in part, by defendant or any subdivision or affiliate thereof. Include in your answer the nature and extent of said relationship and the name, description and identity of the product referred to in your answer;

(f)    The facts, writings and publications, etc., upon which you base all or part of any of your above-stated contentions. If you will do so without a motion to produce, please attach copies of all such writings or publications; and,

(g)    The name, business address and telephone number, job title, and resident address and telephone number of each and every witness who can testify in support of any or part of any of your above-stated contentions.

ANSWER:    (a-e) The symptoms began in August 2005. I had shortness of breath in the

21

beginning that caused me to see a doctor. Since my diagnosis, my lifestyle has been severely limited, and I have been unable to enjoy most of my previous activities that I participated in due to fatigue and side effects of chemotherapy treatment. I did not have these problems prior to the mesothelioma. I believe the problems are caused by the disease. I believe the asbestos products that I worked with and around caused the disease.

(f-g) Objection. Plaintiff objects to this Interrogatory on the grounds that it is overly broad and seeks information that is not relevant nor reasonably calculated to lead to discovery of admissible evidence. By way of further answer without waiving said objection, see responses to Interrogatories 11-13.

45.   Do you contend that you are suffering from pleuritis?

ANSWER:   Not to my knowledge. See medical records deposited with Defense Coordinating Counsel.

46.   If your answer to Interrogatory No. 45 is in the affirmative, please state:

(a)   Date and time of such diagnosis;

(b)   Name, address and telephone number of diagnosing physician and any concurring physicians;

(c)   Method and information upon which such diagnosis was based;

(d)   Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

(e)   Name, address and telephone number of each and every person, including your relatives, employer, or anyone acting in your behalf to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing such revelation;

(f)   Describe in detail the specific course of treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

(g)   Name, address and telephone number of plaintiff's employer at time of diagnosis; and,

(h)   If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please

22

state:

(i) Nature, extent and exact content of such prescription or recommendation;

(ii) Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and,

(iii) State all facts upon which you rely to support a contention that such pleuritis is related to exposure to asbestos

ANSWER:    N/A.

47.    Do you contend that you are suffering from asbestosis?

ANSWER:    Not to my knowledge. See authorizations and medical records deposited with Defense Coordinating Counsel.

48.    If your answer to Interrogatory No. 47 is in the affirmative, please state:

(a)    Date and time of such diagnosis;

(b)    Name, address and telephone number of diagnosing physician and any concurring physicians;

(c)    Method and information upon which such diagnosis was based;

(d)    Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

(e)    Name, address and telephone number of each and every person, including your relatives, employer or anyone acting in your behalf, to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing said revelation;

(f)    Describe in detail the specific course of treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

(g)    Name, address and telephone number of plaintiff's employer at the time of diagnosis; and,

(h)    If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

(i) Nature, extent and exact content of such prescription or recommendation; and,

(ii) Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations.

ANSWER:    N/A.

49.    Do you contend you are suffering from any other pulmonary disease?

ANSWER:    Yes, Mesothelioma.

50.    If your answer to Interrogatory No. 49 is in the affirmative, please state:

(a)    Date and time of such diagnosis;

(b)    Name, address and telephone number of diagnosing physician and any concurring physicians;

(c)    Method and information upon which such diagnosis was based;

(d)    Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc , involved in any part of such diagnosis;

(e)    Name, address and telephone number of each and every person, including your relatives, employer or anyone acting in your behalf, to whom such diagnosis was made known, including the date, time and place of such revelation and the name, address and telephone number of anyone witnessing said revelation;

(f)    Describe in detail the specific course of the treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

(g)    Name, address and telephone number of plaintiff's employer at time of diagnosis; and,

    (h)    If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

        (i)  Nature, extent and exact content of such prescription or recommendation;

        (ii)  Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and,

        (iii)  State all facts upon which you rely to support a contention that such pulmonary disease is related to exposure to asbestos.

ANSWER:    See responses to Interrogatories 32, 34, 49 and the authorizations and medical records deposited with Defense Coordinating Counsel.

    51.    Do you contend that you are suffering from any cancer, "incipient cancer", carcinoma or sarcoma?

ANSWER:    Yes, mesothelioma

    52.    If your answer to Interrogatory No. 51 is in the affirmative, please state:

    (a)    Date and time of such diagnosis;

    (b)    Name, address and telephone number of diagnosing physician and any concurring physicians;

    (c)    Method or information upon which such diagnosis was based including biopsies, histological or cytology studies;

    (d)    Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

    (e)    Name, address and telephone number of each and every person, including any relatives, employer or anyone acting in your behalf to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing said revelation;

    (f)    Describe in detail the specific course of therapy or treatment, including any medication, prescribed as a result of such diagnosis, and the name,

address and telephone number of each prescribing physician;

(g)     Name, address and telephone number of plaintiff's employer at time of diagnosis; and,

(h)     If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

(i)   Nature, extent and exact content of such prescription or recommendation;

(ii)  Plaintiff's response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and,

(iii) State all facts upon which you rely to support a contention that such pulmonary disease is related to exposure to asbestos.

ANSWER:     See responses to Interrogatories 32, 34, 49, 50, and 51 as well as the authorizations and medical records deposited with Defense Coordinating Counsel.

53     Are you aware that any adverse effects of exposure to asbestos and asbestos products may be cumulative in nature and that continued exposure to such materials by one suffering from asbestosis or a related illness might have significant adverse effects upon the extent and severity of such illness? If your answer is in the affirmative, please state:

(a)     The date, time and place that you first acquired such awareness;

(b)     Specific identity of such source of information providing or leading to such awareness; and,

(c)     Any change in your behavior, life-style, occupation, work habits, etc., prescribed by such awareness.

ANSWER:     Objection. Plaintiff objects to this interrogatory on the ground that it is vague, overly broad, and irrelevant. By way of further answer without waiving said objection, I have mesothelioma and I don't know about anything to make it worse.

54.     After being informed that you were suffering from asbestosis, pleuritis, or any

26

alleged asbestos-related illness, did you continue to engage in any activity or occupation in which you encountered subsequent exposure to asbestos or asbestos- containing materials? If your answer is in the affirmative, please state:

     (a)   Nature and description of such activity or occupation;

     (b)   Name, address and telephone number of your employer at the time and subsequent to the diagnosis of any of the ailments referred to in the above interrogatory. Include in your answer:

         (i)  Your job title and description of work and activities and duties; and,

         (ii)  Manner and extent of resulting exposure to asbestos or asbestos-containing materials.

     (c)   Your detailed reasons for engaging in such activity or occupation; and,

     (d)   Whether your participation in such activity or occupation and consequential exposure to asbestos or asbestos- containing materials was contrary to competent medical or professional advice (including such advice from employers, union representatives, publications, etc.). If so, please state in detail:

         (i)  The identity, description, address, etc , of each source of such advice;

         (ii)  The date, time and place such advice was given;

         (iii)  The name, address and telephone number of each and every person present when such advice was given to you; and,

         (iv)  Your response to such advice and the reasons therefore.

ANSWER:   No.

    55.   Please list in chronological order by date of admission all hospitals, extended care centers or nursing homes in which you have been a patient or an out-patient during your lifetime. Please include in your answer the dates of admission and discharge.

ANSWER:   See responses to Interrogatories 32 and 34, see also authorizations and medical records deposited with Defense Coordinating Counsel.

56.    For each such confinement or out-patient period listed in your answer to

Interrogatory No. 55, please state separately:

      (a)    Condition treated for;

      (b)    Name, address and telephone number of each treating or prescribing
           physician;

      (c)    Type and date of any diagnostic or operating procedure;

      (d)    The date of recovery from such condition referred to in subpart (a) of this
           interrogatory; and,

      (e)    Extent and duration of any disability resulting from such condition
           referred to in subpart (a) of this interrogatory

ANSWER:    See responses to Interrogatories 32, 34 and 55.

57.    State in detail such injuries, illnesses or types of ill health which you allege that

you have suffered from during the one-year period immediately preceding the diagnosis of

asbestosis, pleuritis and/or any other illness or disease alleged to be related to asbestos exposure

Set forth in detail such symptoms as were evident to you during that period, the date of their

appearance, and the identity of all diagnosing and treating physicians.

ANSWER:    None other than those in medical records   See medical records and authorizations
provided to the Medical Coordinator.

58.    State the name and address of your personal physician at the time of the

incident(s) of which you complain in this law suit

ANSWER:    Dr. William Striegel, 11 Doctors Drive, Ocean Springs, MS 39564

G.    **Claims History**

59.    Have you, at any time, ever made a claim for or received any health or accident

insurance benefits, workmen's compensation payments, disability benefits, pensions, accident compensation payments or veterans' disability compensation awards? If so, state for each:

    (a)    The circumstances under which you received the benefits or awards or payments;

    (b)    The illness or injury for which you received the benefits or awards or payments;

    (c)    The names and addresses of your employer at the time of each injury or illness;

    (d)    The names and addresses of the examining doctors for each injury or illness;

    (e)    The names of the superiors or officers or boards or tribunals before which or to whom the claim or claims were made or filed; the dates made or filed;

    (f)    The amount of the benefits or awards or payments;

    (g)    The dates covering the times during which you received the benefits or awards or payments; and,

    (h)    The agencies or insurance companies from whom you received the benefits or awards or payments

ANSWER:    Objection. Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and irrelevant to the extent it does not pertain to the current illness  Subject to and without waiving said objections, I currently have Blue Cross Blue Shields of Illinois medical insurance.

60.    On what date did you first become aware that asbestosis was a compensable occupational disease under the State Workmen's Compensation Act?

ANSWER:    N/A.

61.    Have you ever filed a suit for damages for any personal injury? If yes, please state:

    (a)    The names and addresses of all plaintiffs, defendants, and other parties and their attorneys;

(b)    The court and place where each suit was filed and the date of filing;

(c)    The nature and extent of the injuries claimed; and,

(d)    The present status of each suit; and, if concluded, the final result including the amount of any settlement or judgment.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and irrelevant to the extent it does not pertain to the current illness. Subject to and without waiving said objections, No.

62.    Have you ever been a party to any other litigation? If so, describe:

(a)    The nature of the suit; and,

(b)    The date, court and place where the suit was filed.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as overly broad, unduly burdensome, and irrelevant to the extent it does not pertain to the current illness. Subject to and without waiving said objections, No.

H.    **Witnesses/Investigation**

63.    Do you or your attorneys know of any person or persons having knowledge of facts relevant to the allegations in this lawsuit, including witnesses to the injury, illnesses, etc. in question? If yes, please state the names, addresses, home telephone numbers, places of employment, relationship to you, the present whereabouts of all such persons.

ANSWER:    Objection  Plaintiff objects to this Interrogatory as overly broad, vague, irrelevant, and overly burdensome. Subject to and without waiving said objections, my husband, children, former co-workers, health care workers, friends.

64.    Do you or your attorneys have any written statements from any persons having knowledge of facts relevant to the subject matter of this lawsuit, including witnesses to the accident, injury, illnesses, etc. in question? If yes, please state the names, addresses, home telephone numbers, places of employment, relationship to you and the present whereabouts of all

30

such persons.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as overly broad, vague, and irrelevant. Subject to and without waiving said objections, no statements specific only to this lawsuit have been obtained. Plaintiff's counsel has depositions of some of the defendants in this lawsuit taken in other asbestos cases. See also responses to Interrogatories 11-14.

65.    Do you or your attorneys have any written statements or oral transcriptions of the statements of any defendant or agent, servant or employee of any defendant to this action? If yes, state the name of such person, where and when the statement or statements were obtained, and who has custody of the statements or transcriptions.

ANSWER:    See response to Interrogatory 64.

66.    As a result of the illnesses, relevant working conditions or other circumstances complained of in this action, or related to the subject matter of this lawsuit, were any photographs, charts, drawings, diagrams or other graphic representation made by you or in your behalf? If yes, state fully and in detail:

(a)    How many pictures were taken or documents prepared;

(b)    On what dates they were taken or prepared;

(c)    What views, scenes or objects they depict;

(d)    What is the name, address, telephone number, job title, or capacity and present whereabouts of the persons who have custody and control thereof;

(e)    Will the plaintiffs permit the defendants, through authorized representatives, to inspect the said photographs or other documents without the necessity of a motion for their production; and,

(f)    Will the plaintiffs furnish copies of designated photographs or other documents to the defendants at defendants' expense?

ANSWER:    Objection. Plaintiff objects to this Interrogatory as overly broad, vague, and seeking information protected by the attorney-client privilege and work-product doctrine.

31

Subject to and without waiving said objection, see responses to Interrogatories 11-14.

67.    If your claim is based to any extent or nature upon expert opinion other than medical experts, please state the name, address, home telephone number, place of employment, relationship to you, and present whereabouts of all such experts.

ANSWER:    See Plaintiff's Master Expert Disclosures and any supplements thereto.

68.    Have you made any statement which was reduced to writing concerning the facts of this lawsuit and the damages claimed to any police or law officer, insurance company representative, investigator, state or federal agent or employee of any kind, or anyone else? If yes, state the name and address of each and every such person or organization to whom these statements or reports were made and the purpose for which they were made.

ANSWER:    No.

69.    Have any investigations or other reports been prepared, compiled, submitted or made by you or on your behalf in this action? If yes, state fully and in detail as to each such investigation or report:

      (a)    The identity of same by date, subject matter, name, address, job title or capacity of the person or persons to whom addressed or directed;

      (b)    The name, address, job title or capacity of the person or persons to whom addressed or directed; and,

      (c)    The name, address, and present whereabouts of the person who has present custody or control thereof and the purpose of such preparation.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as it seeks information protected by the attorney-client privilege and work-product doctrine

70.    Do you have any health, accident or life insurance policies which are currently in effect? If yes, state the name, type, address of the insurance company, dates of commencement

32

and expiration of coverage, policy limits, etc.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as it is overly broad and irrelevant. By way of further answer without waiving said objection, I currently have medical insurance through Blue Cross Blue Shield of Illinois, and I have a life insurance policy through Metropolitan Life Insurance Company.

71.    List the names, addresses and relationship to plaintiff of all persons who were witnesses to the accident, injuries or illnesses which are the subject matter of this lawsuit

ANSWER:    Objection. Plaintiff objects to this Interrogatory as it is overly broad, vague, and unduly burdensome. Subject to and without waiving said objections, it is impossible to know all persons who are witness to my illness. My wife, children and medical personnel would be the most knowledgeable. See responses to Interrogatories 10, 11, and 12. Other names will be provided as they become available.

72.    Do your agents, employees and representatives know of any statement having been made by the defendants pertaining to any circumstances of the injuries or illnesses which are the subject of this lawsuit?

ANSWER:    Objection. Plaintiff objects to this Interrogatory as it is overly broad, vague, and unduly burdensome. Subject to and without waiving said objections, I am not aware of any statements specifically about me. See also response to Interrogatory 64.

73    If your answer to Interrogatory No. 72 is in the affirmative, was any such statement in writing and, if so, in whose possession is such statement and when and where may it be inspected by defendants?

ANSWER:    N/A.

74.    If your answer to Interrogatory No. 72 is in the affirmative, and any such statement was oral, when and where was any such statement made, in whose presence was such statement made, and what was the substance of such statement?

ANSWER:    N/A

75    Give the names and present addresses of all witnesses you intend to use at the

33

trial of this case with respect to the occurrence and/or cause of your illness or with respect to

claimed damages or with respect to the liability of these defendants.

ANSWER:    Discovery is ongoing and Plaintiff's investigation continues. Plaintiff will
supplement this response in compliance with the scheduling order controlling this case.

76.    With reference to any expert you expect to call to testify as a witness at the trial,

state the name and address of such expert and, as to each expert named, state:

(a)    The subject matter on which the expert is expected to testify;

(b)    The substance of the facts and opinions to which the expert is expected to
testify; and,

(c)    A summary of the grounds for each such opinion.

ANSWER:    See response to Interrogatory 12.

77.    State the name and present address of any expert witness who has been retained

or specially employed by you or your attorneys in anticipation of litigation or preparation for

trial but who is not expected to testify as a witness at the trial.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as it seeks information protected
by the attorney-client privilege, work-product doctrine, and is beyond the scope of discovery
permissible pursuant to Superior Court Civil Rule 26. By way of further answer without waiving
said objection, expert reports from those experts whom Plaintiff intends to rely upon at time of
trial will be produced in compliance with the scheduling order controlling this case.

78.    Give an accurate statement of all medical, hospital and drug or other related costs

incurred by you or on your behalf as a result of the illness alleged in the Complaint.

ANSWER:    Plaintiff's investigation continues as to expenses incurred as a result of his
asbestos-related illness. Plaintiff will supplement as additional information becomes available.

79.    If you claim the right to recover any "out-of-pocket" expenses, including, but not

limited to, medical expenses, itemize each such expense and state:

34

(a)    A specific description of each such expense;

(b)    The date when such expense was incurred;

(c)    To whom it was incurred; and,

(d)    For what it was incurred.

ANSWER:    See answer to Interrogatory 78.

I.    **Union Activity**

80.    Were you a member of any labor union at any time from 1936 to the present?  If your answer is in the affirmative, state for each such union membership:

(a)    The name, address and telephone number; and,

(b)    The dates and time periods during which you maintained membership in such union.

ANSWER:    No.

81.    If you were a member of the International Association of Heat and Frost Insulators and Asbestos Workers, did you receive the publication known as The Asbestos Worker?

ANSWER:    N/A.

82.    If your answer to Interrogatory 81 is in the affirmative, state in detail:

(a)    The manner of receipt, e.g., subscription, provided by union or employer, purchase, etc;

(b)    Frequency of receipt, e.g., regularly, occasionally, rarely, etc ;

(c)    The name, address and telephone number of each and every person or entity which provided this publication to you;

(d)    Pertinent dates and time periods during which you received any issues of said publication;

(e)    Publication date, issue and volume number of each issue of said publication received by you in any fashion; and,

35

(f)    Whether you read such publication.

ANSWER:    N/A.

83.    Did any of your employers or any union or other labor organization, group, representative or officer ever provide or make any copies of the publication The Asbestos Worker available to you at any time?

ANSWER:    No.

84.    If your answer to Interrogatory 83 is in the affirmative, please state in detail:

(a)    The name, address, telephone number and title of each and every such employer, union, representative, or officer referred to in your answer to the above interrogatory;

(b)    The dates and time periods during which the publication was so provided or made available to you;

(c)    The publication date, issue and volume of each issue of said publication so provided or made available; and,

(d)    The terms, circumstances or requirements of such availability or provision or requirements of said publication, e.g., free, by subscription, mailed, to be picked up, distributed at meetings, etc.

ANSWER:    N/A.

85.    If you were a member of a labor union other than the International Association of Heat and Frost Insulators and Asbestos Workers, did you receive any newspapers, newsletters or other publications from such union?

ANSWER:    N/A.

86    If your answer to Interrogatory 85 is in the affirmative, please state:

(a)    The type of each publication received;

(b)    The frequency with which such publications were received; and,

36

(c)    Whether you read such publications.

ANSWER:    N/A.

87.    Have you ever attended any international or local union meetings, seminars, conferences or conventions where the subjects of occupational health and exposure to asbestos were discussed?

ANSWER:    No.

88.    If your answer to Interrogatory 87 is in the affirmative, please state:

(a)    The date and place of such meeting, seminar, conference or convention;

(b)    The name and address of each speaker; and,

(c)    A summary of such speech, presentation or discussion.

ANSWER:    N/A.

89.    Please list together with places and dates all offices you have held or committees on which you have served in both your local and international union.

ANSWER:    None

90    Have you ever been informed by any person in an official capacity in your local or international union of any possible hazards associated with the exposure to asbestos dust?

ANSWER:    No.

91.    If your answer to Interrogatory 90 is in the affirmative, please state:

(a)    The name, address and official capacity of the individual or individuals who furnished you with such information;

(b)    The date and place such information was furnished;

(c)    The manner in which such information was communicated;

37

(d)     The nature of the information furnished; and,

(e)     What action, if any, you took in response to such information.

ANSWER:     N/A.

92.     For what time periods, including dates, were you an apprentice in the insulation materials installation trade (or a related trade) hereinafter referred to as "the trade"?

ANSWER:     None.

93. For what time periods, including dates, were you a journeyman, or its equivalent, in the trade?

ANSWER:     None.

94.     State the date, times and places during which you were:

(a)     A member of the National Insulation Contractors Association (N.I.C.A.);

(b)     Employed by an employer who is a member of the National Insulation Contractors Association (N.I.C.A.). If so, please state the name, address and telephone number of said employer.

(c)     Employed by an employer who is a member of the N.I.M.A. If so, please state the name, address and telephone number of said employer.

ANSWER:     None

95.     Were you ever aware of, informed of, or advised in any fashion by the informational and educational campaigns conducted by N.I.C.A. and N.I.M.A., the purpose and goals of which were to promote awareness among asbestos materials workers as to potential hazards of asbestos exposure and to reduce such harmful exposure through recommendations regarding protective respiratory safety equipment and engineering and methods controls during the manufacture and fabrication of asbestos products?

ANSWER:     No.

38

96.    If your answer to the foregoing interrogatory is in the affirmative, state the date, times, places, names and circumstances under which such awareness, information or advice was received, and the name, address and telephone number of anyone present at the time you received such advice and/or who received the same or similar advice, information or awareness.

ANSWER:    None.

97.    State your average weekly or monthly earnings at the time of your last full-time employment.

ANSWER:    Objection. Plaintiff objects to this Interrogatory as irrelevant as no lost wage claim is being made.

98.    State fully and in detail your annual earnings for the past ten years:

(a)    Do you or your attorneys have your W-2 forms and/or income tax returns (or copies thereof) for any of the past ten years? If so, please state for which years you have such W-2 forms and/or income tax returns and/or copies thereof; and,

(b)    If you will do so without a motion to produce, please attach copies of said W-2 forms and/or income tax returns to your answers to these interrogatories.

ANSWER:    See response to Interrogatory 97.

99.    If you claim that you have sustained any loss of income or earning power as a result of the incident which is the subject of this lawsuit, either in the past, present or in the future, state:

(a)    The total value of the loss you claim was sustained;

(b)    The inclusive dates when you claim you were unable to work as a result of the incident and the reason why you were unable to work on such dates;

(c)    A specific description of the type or types of work you would have been performing or would have been able to perform during the period stated;

39

      (d)     The rate of income you would have been able to receive had the alleged incident not occurred, e.g., $1.00 per hour, $50.00 per week, etc.; and,

      (e)     The name and address of the person, corporation or other entity which would have been your employer

ANSWER:    See response to Interrogatory 97.

    100.    Insofar as you intend to introduce into evidence any expert testimony concerning part of future loss or earning power or the present value of a sum of money concerning a future loss of expense and such evidence will be introduced through an expert economist or actuary, state the name and address of such expert and, as to each such person named, state:

      (a)     A specific description of the losses for which such of future earnings, present value of the loss of future earnings, present value of second job earnings, present value of future medical expenses, etc.;

      (b)     Describe in detail precisely the manner in which the person reached his conclusions showing the mathematical calculations involved; and,

      (c)     Insofar as such person has prepared any report or memoranda showing in whole or in part his conclusions or the facts on which such conclusions were based, state the date of such writing and the names and addresses of persons having copies of it. If you will do so without a motion to produce, please attach a copy of any such report to these answers.

ANSWER:    See response to Interrogatory 97.

    101.    State all facts upon which you base your claim concerning your potential earnings or earning power.

ANSWER:    See response to Interrogatory 97.

    102.    If your claim that, as a result of the negligence alleged in the Complaint, you experienced any conscious pain and suffering for which you claim the right to recover damages in this lawsuit, state:

(a)   The inclusive times or dates when you claim such conscious pain and suffering was experienced;

(b)   The name and address of any person having knowledge that it was, in fact, experienced;

(c)   The specific acts which you claim the defendants performed which resulted in such pain and suffering; and,

(d)   A description of the pain and suffering and the areas of the body effected so far as you are aware.

ANSWER:   (a-b) See response to Interrogatory 44. By way of further answer, I have experienced significant pain and suffering since the symptoms began in August 2005. The doctors, my family, friends, and attorneys all have knowledge that this pain and suffering is real.

(c) See responses to Interrogatories 11-14.

(d) See medical records and responses to Interrogatories 39 and 44.

BIFFERATO, GENTILOTTI,
BIDEN & BALICK, L.L.C.

_Ian Connor Bifferato (DE Id. No. 3273)_

Ian Connor Bifferato (DE Id. No. 3273)
Garvan F. McDaniel (DE Id. No. 4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165
Tel. (302) 429-1900
Fax. (302) 429-8600
Attorney for Plaintiffs

Dated: _4\25\06_

OF COUNSEL:
SIMMONSCOOPER LLC
Michael Angelides (IL. Id. No. 623072)
707 Berkshire Boulevard
E. Alton, Illinois 62024
Phone: (618) 259-2222

41

# UNREPORTED
# CASES



Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 90070 (E.D.Va.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**C**
Briefs and Other Related Documents
Epperson   v.   Northrop   Grumman   Systems
Corp.E.D.Va.,2006.Only the Westlaw citation is
currently available.
    United States District Court,E.D. Virginia.
Lacy T. EPPERSON, Jr., Executor of the Estate of
    Mary Adams Epperson, Deceased, Plaintiff,
                          v.
    NORTHROP GRUMMAN SYSTEMS CORP.,
    Newport News Shipbuilding and Drydock
    Company, Newport News Shipbuilding, Inc.,
                      Defendants.
                **No. 4:05CV2953.**

                    Jan. 11, 2006.

Gary Wheeler Kendall, Michie, Hamlett, Lowry,
Rasmussen & Tweel, P.C., Charlottesville, VA, for
Plaintiff.
Brian James Schneider, John D. Epps, Joseph
Conrad Kearfott, Hunton & Williams LLP,
Richmond, VA, Kevin Joseph Cosgrove, Hunton &
Williams, Norfolk, VA, for Defendants.

            *ORDER AND OPINION*
FRIEDMAN, J.
**\*1** Pending before the court is plaintiff's Motion for
Remand, seeking to remand this case to the Circuit
Court for the City of Newport News, Virginia.
Plaintiff filed this motion in response to a Notice of
Removal, filed by defendants, Northrop Grumman
Systems Corp., Newport News Shipbuilding and
Drydock    Company,    and    Newport    News
Shipbuilding, Inc. (collectively "the Shipyard").[FN1]
After consideration of the memoranda and
materials submitted by the parties, for the reasons
set forth herein, plaintiff's Motion to Remand is
GRANTED.

            FN1. Plaintiff claims that Northrop
            Grumman Systems Corp. is the "parent

company" of Newport News Shipbuilding
and    Drydock    Company    ("NNS").
Defendants state that Newport News
Shipbuilding Inc. is the parent company of
NNS and that Northrop has never owned,
operated or controlled NNS and that "at
the appropriate time" Northrop plans to
file a motion to dismiss. As noted above,
for the purposes of this opinion, these
entities will be collectively referred to as "
the Shipyard."

        I. Factual and Procedural History

Plaintiff, Lacy T. Epperson, Jr., commenced this
action by filing a Motion for Judgment in the
Circuit Court for the City of Newport News against
the following corporations: Northrop Grumman
Systems Corp., Newport News Shipbuilding and
Drydock Company, Newport News Shipbuilding
Inc., Tenneco, Inc. (former owner of the Newport
News Shipyard), Owens-Illinois, Inc. (an asbestos
manufacturer), and Waco, Inc., (an asbestos
distributor and installer). Plaintiff, acting as
executor of the estate of his mother, Mary Adams
Epperson, alleges in his Motion for Judgment that
his mother developed malignant mesothelioma from
her exposure to asbestos dust and fibers that she
came into contact with by handling the clothes of
both plaintiff and his father, Lacy T. Epperson, Sr.
*See* Mo. for Judgment ¶ 12. The contaminated
clothing was brought into plaintiff's decedent's
home as a result of plaintiff's father being employed
as a "Pipefitter" at the Shipyard from 1943 to 1949
and the plaintiff being employed as a "Pipefitter" at
the Shipyard from 1961 to 1964. *Id.* at ¶ 8.
Plaintiff's mother was never an employee of the
Shipyard, however, she regularly handled and
washed the asbestos contaminated work clothes of
her husband and son. *Id.* at ¶¶ 9, 12. During the
time that plaintiff and his father were Shipyard
employees, the Shipyard constructed, repaired, and
renovated both commercial vessels and United
States Navy vessels; plaintiff acknowledges that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 90070 (E.D.Va.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

asbestos exposure occurred not only in Shipyard buildings and on commercial vessels, but also on military vessels. *Id.* at ¶ 11; Pl. Mo. Remand at p. 1.

On October 24, 2005, in response to plaintiff's Motion for Judgment filed in state court, defendants filed a Notice of Removal in the United States District Court for the Eastern District of Virginia. Defendants premised removal on 28 U.S.C. § 1442(a)(1), which permits removal of civil actions instituted against an agency or officer of the United States, or an individual acting under the authority of such officer. 28 U.S.C. § 1442(a)(1). Defendants' Notice of Removal asserts the federal government contractor defense, alleging that because defendants were acting under the direction of the United States Navy they are immune from liability for injuries arising out of asbestos exposure that occurred on United States Navy vessels.

On November 18, 2005, plaintiff filed a Motion for Remand, claiming that defendants failed to establish a colorable federal defense to plaintiff's claims, making removal improper. Furthermore, plaintiff alleges that defendants failed to establish a causal nexus between defendants' actions under the direction of the Navy and plaintiff's claims. Defendants filed their response in opposition to remand on December 6, 2005, and plaintiff filed his reply on December 12, 2005; therefore, the matter is now ripe for review.

## II. Discussion

**\*2** Plaintiff's Motion for Remand asserts that this court lacks jurisdiction over this matter based on defendants' failure to satisfy the requirements of the federal officer removal statute. The burden of establishing removal jurisdiction rests with the party seeking removal. *Mulcahey v. Columbia Organic Chem. Co.,* 29 F.3d 148, 151 (4th Cir.1994). Any doubts as to the propriety of the removal are to be resolved in favor of remand to state court. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Mulcahey,* 29 F.3d at 151 ("Because removal jurisdiction raises significant federalism concerns, [courts] must

strictly construe removal jurisdiction."); *Branch ex rel. Branch v. Coca-Cola Bottling Co. Consol.,* 83 F.Supp.2d 631, 633 n. 3 (D.S.C.2000) (holding that a court should presume that a case lies outside of federal jurisdiction and rejecting the defendant's claim that such principle had been "eroded by a ' recent trend' of interpreting removal statutes 'less strictly' ").[FN2] Additionally, a district court's decision to remand a case to state court for lack of jurisdiction is not reviewable. 28 U.S.C. § 1447(d); *Hinson v. Norwest Financial South Carolina, Inc.,* 239 F.3d 611, 614 (4th Cir.2001).

> FN2. Defendants argue that removal under § 1442(a)(1) should be broadly construed, and cite *Willingham v. Morgan,* 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969) and *Kolibash v. Comm. on Legal Ethics of West Virginia Bar,* 872 F.2d 571, 576 (4th Cir.1989). It appears that defendants are correct that the federal officer removal statue, 28 U.S.C. § 1442(a)(1), should be broadly construed; for example, a defendant need only assert a "colorable" federal defense to establish removal jurisdiction. However, even when applying a broad statute, removal jurisdiction must be strictly construed because the federal courts' limited jurisdiction "is not to be expanded by judicial decree" because federal courts "possess only that power authorized by [the] Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Therefore, when applying the broad test established by the Supreme Court in *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989) to determine if the requirements of § 1442(a)(1) are met, if the court still has doubts as to the propriety of removal then remand is proper.

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), provides that a civil action commenced in state court against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 90070 (E.D.Va.)
**(Cite as: Not Reported in F.Supp.2d)**

agency thereof, sued in an official or individual capacity for any act under color of such office" may be removed to federal court. 28 U.S.C. § 1442(a)(1) . In *Mesa v. California*, 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989), the Supreme Court set forth the criteria for removal pursuant to 28 U.S.C. § 1442(a). The Court required that a party seeking removal establish: (1) that it acted under the direction of a federal officer; (2) that there exists a colorable federal defense to the plaintiff's claims; and (3) that there exists a causal nexus between the plaintiff's claims and the acts performed by the defendant under the authority of a federal officer or agency. *Mesa*, 489 U.S. at 124-25, 129-34; *see also McCormick v. C.E. Thurston & Sons, Inc.*, 977 F.Supp. 400, 403 (E.D.Va.1997).

**A. Acting Under the Direction of a Federal Officer**

Although the parties disagree on the extent of the Shipyard's projects that were commercial versus military during the time plaintiff and his father were employed at the Shipyard, the parties agree that plaintiff and his father were exposed to asbestos, at least in part, through projects on military vessels. Plaintiff does not challenge defendants' assertion that when completing a military project, the Shipyard was required to follow military specifications in constructing, repairing, or refurbishing a military vessel. Furthermore, to establish the Navy's control over such projects, the Shipyard has submitted several exhibits, including the affidavits of Ronald Ward, former Vice-President of Contracts and Pricing for Newport News Shipbuilding and Drydock Company ("NNS"), and Bernard P. Clark, who became Program Director for Public-Private Initiatives at NNS in 2002, and prior to that, was in the Navy and held various positions at Naval Shipyards, including supervising Naval Shipyards from 1983 through 2002. *See* Def. Opp. to Remand, Exhibits A & B.

*3 Based on its review of these and other exhibits, as well as the parties' memoranda, the court finds that defendants were acting under the control of the United States Navy and its officers when constructing or repairing Naval vessels. *See Pack v. AC & S, Inc.*, 838 F.Supp. 1099, 1103 (D.Md.1993)

(finding that showing of strong government intervention establishes direct control). The Ward and Clark affidavits along with supporting contract documents establish that defendants constructed vessels according to precise specifications, promulgated by the United States Navy and administered by its officers.[FN3] Likewise, although plaintiff contends that "[m]uch of the exposure of Plaintiff's family members was to asbestos-containing products used during the construction, repair, or renovation of commercial ships and private buildings at the Shipyard," Pl. Opp. to Removal at p. 5, plaintiff admits that at least some exposure occurred on military vessels. Therefore, as the Shipyard has established the first prong of the *Mesa* test, the court turns to plaintiff's contention that removal was improper based on defendants' failure to assert a colorable defense and failure to establish a causal nexus.

> FN3. Specifically, the Ward affidavit discusses the level of control exercised by the Navy in paragraphs 6-12 and attached to the affidavit is a contract for the construction of two nuclear submarines entered into between NNS and the Navy in 1963. The contract includes language indicating that Naval plans were to be followed without deviation and that work was subject to review and approval by the government.

**B. Colorable Federal Defense and Causal Nexus**

Under the second prong of the *Mesa* test, defendants "do[ ] not need to show for the purposes of the removal that the[ir] defense is meritorious, but only whether there is a colorable claim to such a defense." *Pack*, 838 F.Supp. at 1103; *see also Mesa*, 489 U.S. at 128-29. Under the third prong, defendants must establish that a "causal nexus" exists between actions taken under color of federal office and the plaintiff's claims. *Mesa*, 489 U.S. at 132-34. In their Notice of Removal, defendants rely on *Boyle v. United Techs. Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) for the proposition that government contractor immunity provides a colorable defense as well as establishes a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2006 WL 90070 (E.D.Va.)
(Cite as: Not Reported in F.Supp.2d)

nexus between defendants' actions and plaintiff's claims. However, plaintiff correctly highlights an exception to *Boyle*, as the Eastern District of Virginia has repeatedly held that government contractor immunity does not apply in failure to warn cases. Therefore, as discussed below, the critical inquiry before the court is whether plaintiff's Motion for Judgment alleges only failure to warn, or whether it also alleges a products liability claim against the Shipyard. Because the court concludes that plaintiff's Motion for Judgment only seeks relief from the Shipyard based on the theory of failure to warn, defendants have not asserted a colorable federal defense or established a casual nexus; as a result, remand is proper .[FN4]

> FN4. Defendants do not allege that government contractor immunity would apply if this were strictly a failure to warn case, but rather, argue that this case is *not* strictly a failure to warn case.

The federal government is generally immune from suit based on the design of military equipment because the appropriate design involves "not merely engineering analysis but judgment as to the balancing of many technical, military, and even social considerations, including specifically the trade-off between greater safety and greater combat effectiveness." *Boyle v. United Techs. Corp.,* 487 U.S. 500, 511, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Such immunity is likewise extended to insulate a government contractor when the government removes a contractor's discretion and mandates construction under strict specifications. *See id.* at 512 ("It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production."). The government contractor immunity defense is available when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.*

**\*4** A well established exception to government contractor immunity dictates that such immunity does not apply in failure to warn cases. *See McCormick v. C.E. Thurston & Sons, Inc.,* 977 F.Supp. 400, 403 (E.D.Va.1997) ("[I]n the thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contractor defense is not available in 'failure to warn' cases."); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 1003 (7th Cir.1996) (finding that "design defect and failure to warn claims differ practically as well as theoretically" and that to be insulated under government contractor immunity for failure to warn a defendant must show "the government exercised its discretion and approved certain warnings"); *Faulk v. Owens-Corning Fiberglass Corp.,* 48 F.Supp.2d 653, 664-65 (E.D.Tex.1999) (holding that because the government "provided no direction or control on warnings," there were "no specifications ... sufficient to invoke the *Boyle* contractor defense"). The exception to government contract immunity exists because as long as the government does not mandate specific warnings or prohibit warnings, a civilian contractor can follow government specifications while at the same time protect employees by mandating safe handling though workplace education and safety procedures or, at a minimum, by requiring printed warnings. However, if the government does mandate a specific warning, or the lack thereof, the exception would no longer apply because the contractor would not have the freedom to determine appropriate warnings. *See Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 401 (5th Cir.1998) (denying a motion to remand in part because the contractors hired to produce Agent Orange failed to put warnings on the product only because they " were specifically prohibited from placing any warnings on the finished product itself except as allowed by contract").

To further illustrate the proper application of government contractor immunity, the Supreme Court in *Boyle* presented a hypothetical scenario focusing on the potential for conflict between state laws and federal contracts. *Boyle,* 487 U.S. at 509. The hypothetical imagined the United States contracting for the purchase of an air

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 90070 (E.D.Va.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

conditioning-unit and specifying by contract the "cooling capacity but not the precise manner of construction." *Id.* The Court explained that a state law requiring that such units "include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary." *Id.* Because the contractor could comply with the "state-prescribed duty of care" and still follow the terms of the contract there would be no need for the state law to be pre-empted; thus, there would be no need for the contractor to be shielded by immunity. *See id.* Likewise, if a Naval contract mandates the use of asbestos insulation on a miliary vessel, yet provides no requirements as to the installation procedure or warnings to be provided to civilians installing the asbestos, the contractor could comply with everything "promised the Government" while at the same time following the "state-prescribed duty of care" to both warn employees and to create procedures to avoid potentially fatal exposure to asbestos dust. *See, e.g., Adams v. Alliant Techsystems, Inc.,* 201 F.Supp.2d 700, 707 (W.D.Va.2002) ("[T]he productions of munitions for the Army is uniquely a federal interest, [however] defendants have not demonstrated that the duty of care defendants owe their employees conflicts with or even burdens defendants' federal regulatory or contractual obligations.").

*5 Here, considering plaintiff's father's and plaintiff's exposure to asbestos that occurred on military vessels, defendants have not presented evidence suggesting that the government in any way regulated warnings associated with asbestos. Likewise, defendants have presented no evidence that the government dictated installation procedures, such as regulating whether asbestos was wetted prior to removal, whether respirators or other air quality controls were in place, or whether contaminated clothing was required to be properly disposed. To the contrary, plaintiff has highlighted evidence that indicates such warnings and procedures were the responsibility of the Shipyard.[FN5]

> FN5. First, plaintiff points to the 1963 Naval submarine contract, an exhibit to the

Ward Affidavit provided by defendants. The contract requires NNS "to take all reasonable precautions in the performance of the work under the contract to protect the health and safety of employees and of members of the public and to minimize dangers from all hazards to life and property...." Def. Opp. to Remand, Exhibit A, Article 9. Plaintiff also states that when NNS eventually instituted asbestos safety procedures they did so without reference to the Navy. *See* Pl. Rebuttal, at p. 6. To support this claim, plaintiff provides NNS "Procedure S-1020," a safety procedure for "control, handling, and disposal of asbestos," which became effective November 10, 1975. *See id.,* Exhibit B. The new safety procedure lists its "Scope" as "encompass[ing] all operations both in shop and on ship that involve the handling of asbestos or asbestos containing materials" and lists its "Applicability" as "all shipyard departments involved in the receiving, storage, moving and handling of asbestos and asbestos-containing material." *Id.* Furthermore, plaintiff provides interrogatory answers submitted by NNS in a prior case in which NNS stated in response to an asbestos safety question that "all health and safety programs or policies are applicable to all yard work, both commercial and governmental contracts." *Id.* at Exhibit D.

Therefore, not only in "thousands" of previous asbestos cases did this court find that failure to warn cases are not subject to government contractor immunity, but the facts here indicate that, based on the reasoning in *Boyle,* the government contractor immunity defense does not apply to plaintiff's failure to warn claims. Likewise, the immunity defense does not apply to plaintiff's allegations relating to safety procedures such as requiring wetting, respirators, or disposal of contaminated clothing, because the lack of such procedures is synonymous with defendants' failure to warn employees of the dangers of asbestos. As discussed in detail below, because the allegations contained in plaintiff's Motion for Judgment are properly

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 90070 (E.D.Va.)
(Cite as: Not Reported in F.Supp.2d)

construed as alleging only that the Shipyard failed to warn of the dangers of asbestos, remand is appropriate.

*Plaintiff's Motion for Judgment*

Plaintiff's Motion for Judgment seeks relief based on the negligence of all defendants in that they failed to warn plaintiff and his father of the dangers of asbestos. *See* Mo. for Judgment, ¶¶ 14 -19. Specifically, paragraph 14 alleges that all defendants knew or should have known of the dangers of asbestos. Paragraph 16 singles out defendants Owens-Illinois, Inc., and Waco, Inc., who manufactured and supplied asbestos to the Shipyard and alleges negligence for failure to warn. *Id.* at ¶ 16. Although this paragraph refers to asbestos as a "defective product" that is " unreasonably dangerous," it only makes such allegations with respect to asbestos that lacks a warning and therefore, is most properly construed as alleging failure to warn. Specifically, paragraph 16 states that the non-Shipyard defendants provided a "defective product in the stream of commerce *in that they failed to warn* Plaintiff's Decedent, and others similarly situated," and that non-Shipyard defendants continued to "manufacture, sell, distribute and/or install asbestos products when each Defendant knew that such products were unavoidably unsafe [and] unreasonably dangerous *absent reasonable warnings." Id.* (emphasis added). Paragraph 17 singles out the Shipyard defendants and, in fifteen subsections constituting over three and a half pages of text, clearly alleges negligence only for failure to warn and failure to establish workplace safety procedures.[FN6] Although defendants attempt to establish that the final subsection of paragraph 17 alleges a design defect, when read in conjunction with the rest of this paragraph, defendants' claim is erroneous.[FN7] Rather, plaintiff's rebuttal properly characterizes paragraph 17 as only alleging negligence based on failure to warn.[FN8] *See* Pl. Rebuttal at p. 10-14.

FN6. As stated above, on these facts, failure to institute workplace safety procedures is synonymous with failure to

warn.

FN7. The first fourteen subsections of paragraph either allege failure to warn, failure to educate, or failure to establish proper safety and handling procedures. The final subsection states:
In failing, as contractors who employed Plaintiff and Plaintiff's father, to provide the Plaintiff and Plaintiff's father with a safe work place and to prevent the Plaintiff's Decedent and others similarly situated from being harmed by asbestos dust and fibers that were used by the Plaintiff, Plaintiff's father and their co-workers in the performance of the Defendants' contracts for the installation, removal, repair, or other use of asbestos and/or asbestos-containing products on Defendants' private premises.
Mo. for Judgment, ¶ 17(o). Although this paragraph references defendants' failure to provide a safe workplace, when read in conjunction with the previous fourteen subsections, such allegation clearly refers to defendants' failure to warn employees or establish workplace safety procedures. Therefore, defendants' characterization of paragraph 17(o) is erroneous.

FN8. The parties also both cite and discuss *Mitchell v. AC & S Inc.,* No. 04-cv-2713 (E.D.Va. Dec. 15, 2004) a recent asbestos case in which this court denied the plaintiff's motion to remand. However, in *Mitchell,* the issue central to the present matter was not disputed. Specifically, the Motion for Judgment in *Mitchell* alleged that all defendants, including the civilian contractor "did fail to remove the product or products from the market when the defendants knew or should have known of the hazards of exposure to asbestos"; "did sell the products which were defective and/or inherently dangerous"; "did supply the products which were defective and/or inherently dangerous"; "did fail to use safe, substitute products when such were available"; "did fail to design a reasonable

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 90070 (E.D.Va.)
(Cite as: Not Reported in F.Supp.2d)

and safe product for the purpose for which they were intended." *See* Def. Opp. to Remand, Exhibit G at ¶ 10. Additionally, ¶ 12 stated: "[I]n addition, the defendants were under a duty to exercise ordinary care to design a product that is reasonably safe for the purpose for which it is intended, and they negligently breached this duty...." *Id.* Therefore, it is clear from the language of the Motion for Judgment in *Mitchell* that the plaintiff was alleging a design defect claim; thus, the reasoning in *Mitchell* does not apply to the present matter.

*6 Defendants next claim that paragraph 18 of plaintiff's Motion for Judgment alleges that the Shipyard was negligent for failing to use asbestos-free products. Unlike paragraphs 16 and 17, which allege negligence against specific defendants in detailed subsections, paragraph 18 appears to address all defendants and does not all ege negligence but rather states in a single paragraph that certain actions were feasible. Paragraph 18 in its entirety states:
At all times relevant hereto, it was feasible for the Defendants to have protected Plaintiff's Decedent from asbestos exposure, adequately warned Plaintiff's Decedent, tested their asbestos-containing products, designed safer asbestos containing products, or substituted asbestos-free products.

Mo. for Judgment, ¶ 18. After careful consideration of this paragraph, the court concludes that it was not intended to add additional theories of liability with respect to Shipyard defendants. Although this paragraph, if read alone, would not necessarily foreclose a court from concluding that a design defect was alleged, this court does not consider such language in a vacuum. Rather, this short paragraph, considered in conjunction with the detailed allegations set out against the Shipyard in paragraph 17, is insufficient to transform plaintiff's claims against the Shipyard into allegations premised on products liability.[FN9] Therefore, as plaintiff's Motion for Judgment only alleges negligence on the part of the Shipyard for failure to warn, remand is required as defendants have failed to establish a colorable federal defense or establish a casual nexus between the use of asbestos as

mandated by the Navy and the Shipyard's failure to warn employees or establish safety procedures.

FN9. Paragraph 17 and its numerous subsections clearly allege only that the Shipyard was negligent for failure to warn. The only statements outside paragraph 18 that could arguably be construed as alleging a design defect were made against non-Shipyard defendants in paragraph 16. Therefore, although the court construes plaintiff's Motion for Judgment as alleging only failure to warn against all defendants, if the court were to construe paragraph 18 as alleging a design defect claim, based on the language in paragraphs 16 and 17, such claim would be alleged only against Owens-Illinois and Waco, not against the Shipyard.

III. Conclusion

Based on the memoranda and materials submitted to this court, as well as plaintiff's Motion for Judgment filed in state court, the court finds that the requirements necessary for removal pursuant to 28 U.S.C. § 1442(a)(1) have not been met. Because plaintiff's Motion for Judgment only seeks relief against the Shipyard for failure to warn, pursuant to 28 U.S.C. § 1447(c), plaintiff's motion to remand this case to the Circuit Court for the City of Newport News, Virginia, is GRANTED. It should be noted, however, that as plaintiff has argued before this court in good faith that he is only seeking relief against the Shipyard on the theory of failure to warn, plaintiff should be precluded on remand from seeking relief against the Shipyard on any theory other than failure to warn and the associated claim of the Shipyard's failure to establish safety procedures.

The Clerk is REQUESTED to mail a certified copy of this Order to the Clerk of the Circuit Court for the City of Newport News, Virginia, as well as copies to counsel for all parties.

IT IS SO ORDERED.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 90070 (E.D.Va.)
**(Cite as: Not Reported in F.Supp.2d)**

E.D.Va.,2006.
Epperson v. Northrop Grumman Systems Corp.
Not Reported in F.Supp.2d, 2006 WL 90070
(E.D.Va.)

Briefs and Other Related Documents (Back to top)

• 4:05cv02953 (Docket) (Oct. 24, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2850334 (W.D.Wash.)
(Cite as: Not Reported in F.Supp.2d)

C
Briefs and Other Related Documents
Westmiller     v.     Imo     Industries,
Inc.W.D.Wash.,2005.Only the Westlaw citation is
currently available.
    United States District Court,W.D. Washington.
    Marian WESTMILLER, for herself and as Personal
    Representative of the Estate by Lloyd Westmiller,
    Deceased. Plaintiff,
                        v.
    IMO INDUSTRIES, INC., et al., Defendants.
                **No. C05-945RSM.**

                Oct. 20, 2005.

Janet L. Rice, Kristin M. Houser, Schroeter
Goldmark & Bender, Seattle, WA, for Plaintiff.
James Edward Horne, Robert H. Fulton, II,
Kingman Peabody Pierson & Fitzharris, Christine
E. Dinsdale, Michael Ryan O'Clair, Soha & Lang
PS, Kevin C. Baumgardner, Mark B. Tuvim, Corr
Cronin Michelson Baumgardner & Preece, Ronald
C. Gardner, Gardner Bond Trabolsi McDonald &
Clement, Seattle, WA, for Defendants.

        ORDER ON MOTION FOR REMAND
MARTINEZ, J.
*1 This matter has come before the Court for
consideration of plaintiff's motion to remand,
together with a motion to strike. Oral argument was
held on October 17, 2005, and the parties'
arguments, together with the submitted exhibits and
declarations, have been fully considered. For the
reasons set forth below, the Court grants the motion
to remand, grants the motion to strike, and remands
the case to King County Superior Court for all
further proceedings.

                DISCUSSION

Plaintiff Marian Westmiller filed this action in King
County Superior Court on behalf of herself and as

personal representative of the estate of her husband,
Lloyd Westmiller, who died of lung cancer related
to asbestos exposure. Mr. Westmiller worked as a
pipefitter at Puget Sound Naval Shipyard in the
1950's. The case was removed to this Court by one
defendant, Viad Corporation ("Viad"), [FN1] under
the federal officer removal statute, 28 U.S.C. §
1442(a). The statute provides for removal by "[t]he
United States or any agency thereof or an officer (or
any person acting under that officer) of the United
States or of any agency thereof, sued in an official
or individual capacity for any act under color of
such office." § 1442(a)(1). This statute, unlike the
general removal statute, does not require joinder of
all defendants. *Ely Valley Mines v. Hartford Acc. &
Indemnity Co.*, 644 F.2d 1310, 1315 (9th Cir.1981).

> FN1. Viad is the successor-in-interest to
> Griscom-Russell. who       actually
> manufactured the distillers (desalinization
> units) used on the Navy vessels; these
> distillers were insulated with asbestos
> when installed on the ships.

Plaintiff has moved for remand to state court, and
also to strike the affidavit of defendant's expert. Dr.
Charles Cushing. The motions shall be addressed
separately.

            *1. Motion to Strike.*

Plaintiff in this action is proceeding on a "failure to
warn" theory of liability, under Washington State
law. In removing the case to this Court, defendant
Viad offered the Declaration of Charles Cushing, a
naval architect and marine engineer, as support.
After noting that Viad is named as the
successor-in-interest to Griscom-Russell Company,
now defunct, Dr. Cushing states,
The United States Navy was intimately involved in
the manufacture of any Griscom-Russell equipment
used on United States Navy vessels, as the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 2850334 (W.D.Wash.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

desalination units manufactured for those vessels were designed and built to the precise and exacting specifications of the United States Navy. Griscom-Russell would not have been able to deviate from those specifications. Moreover, pursuant to the Navy's specifications, Griscom-Russell would not have been able to affix, to its products, any type of warning or cautionary statement concerning alleged health hazards from the installation, use or maintenance of the products. Whether certain equipment used aboard U.S. Naval vessels should have warnings, and the content and format of any such warnings, was determined solely by the Navy. Griscom Russell could have had no discretion whatsoever to affix any warnings of its own to the products it delivered to the Navy.

Cushing Declaration, ¶ 4. Plaintiff moved to strike this paragraph, as well as a second ¶ 4 and a portion of ¶ 5. pursuant to Federal Rule of Evidence 1002, the "best evidence" rule. Plaintiff argues that. absent certain conditions set forth in ER 1004 (which have not been alleged here), Dr. Cushing's references to specifications are inadmissible under the best evidence rule and should be stricken. The Court agrees. Although defendant in response attempted to rehabilitate Dr. Cushing's testimony about the specifications by providing selected pages from his deposition, the submitted sections fail to cure the problem. Absent the actual specifications, Dr. Cushing's conclusory statements about what the specifications would have stated amount to mere speculation and are not admissible. Accordingly, plaintiff's motion to strike is GRANTED.

### 2. Motion for Remand.

*2 Unlike the general removal statute, which requires that the basis of removal appear on the face of the complaint, the federal officer removal statute allows removal on the basis of an asserted defense. Under 28 U.S.C. § 1442(a)(1), removal is proper if the defendant can (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to the plaintiff's claims; and (3) demonstrate a causal nexus between plaintiff's claims and the acts the defendant

performed under color of federal office. *Mesa v. California,* 489 U.S. 121, 129-34, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). The burden is on defendant to establish that removal is proper. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566-67 (9th Cir.1992). The removal statute is strictly construed against removal. *Id.*

The parameters of the federal defense in factor (2) were set forth in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). "Liability for design defects in military equipment cannot be imposed. pursuant to state law. when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512.

In the area of product liability, government contractor immunity requires a company to show " strong government intervention and the threat that a defendant will be sued in state court 'based upon actions taken pursuant to federal direction." ' *Fung v. Abex Corporation,* 816 F.Supp. 569, 572 (N.D.Cal.1992). Here, a defense to plaintiff's asserted failure to warn claim requires a showing by defendant that the government specifically prohibited it from placing warnings on its products. The government contractor defense is inapplicable to a failure to warn claim "in the absence of evidence that in making its decision whether to provide a warning ... [Viad] was 'acting in compliance with "reasonably precise specifications" imposed on [it] by the United States." ' *Butler v. Ingalls Shipbuilding, Inc.,* 89 F.3d 582, 586 (9 th Cir.1996); *quoting In re Hawaii Federal Asbestos Cases.* 960 F.2d 806, 813 (9th Cir.1992).

Thus, in this circuit, the government contractor defense applies to displace state tort law only " when the Government, making a discretionary, safety-related military procurement decision contrary to the requirements of state law, incorporates this decision into a military contractor's contractual obligations, thereby limiting the contractor's ability to accommodate safety in a different fashion." *In re Hawaii Federal Asbestos*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 3

Not Reported in F.Supp.2d, 2005 WL 2850334 (W.D.Wash.)
(Cite as: Not Reported in F.Supp.2d)

*Cases,* 960 F.2d at 813. In other words. " '
[s]tripped to its essentials, the military contractor's
defense under *Boyle* is to claim. 'The Government
made me do it." ' *Id.*

In responding to the motion to remand, Viad has
submitted the affidavit of Admiral Lehman as a
substitute for the challenged Charles Cushing
declaration. Admiral Lehman's affidavit is not
specific to this case; it was presented to a New York
District Court in *Neshiet v. General Electric, et al.*
2005 WL 697966 (S.D.N.Y.2005). Although the
New York district court found the affidavit
sufficient to establish Navy control over warnings
placed on asbestos-insulated steam turbines used on
ships during World War II, this Court is not bound
to follow that unreported decision. Mr. Westmiller
worked in the shipyard during the 1950's, and
Admiral Lehman's affidavit does not relate to that
time period with sufficient specificity to establish a
colorable defense. He states that he was Ship
Superintendent in the Brooklyn Navy Yard between
1942 and 1944, and that during his tenure there, he
was involved in the oversight of ship alterations. He
describes the very tight controls the Navy
maintained over everything *at that time.* Then, he
states that "[i]n the 1940's and afterward, the Navy
had complete control over every aspect of each
piece of equipment.... [T]he Navy controlled the
decision making with respect to instructions and
warnings on every piece of equipment ... In short,
the Navy dictated every aspect of the design,
manufacture, installation, overhaul, written
documentation and warnings associated with its
ships and did not permit deviation from any of its
contractors." Lehman Affidavit, ¶ 4. This
statement, in the absence of any specific reference
to the Admiral's experience or knowledge during
the 1950's, is too vague to constitute a showing of "
reasonably precise specifications" that were
imposed during the relevant time period. *Butler v.
Ingalls Shipbuilding, Inc.,* 89 F.3d at 586. In the
absence of this demonstration that, in the words of
the *Hawaii* Federal Asbestos *Cases court,* that "the
Government made me do it," Viad has not met the
burden of showing a colorable defense.

*3 While Viad admits that it has no specific
evidence of Navy control in the form of the actual

military specifications, it nevertheless argues that at
this stage of litigation, before discovery, it should
not be forced to come forward with such evidence.
While it is true that *Mesa* requires only a "colorable
" federal defense, Viad has not produced any
evidence that would meet even that minimum
standard. To the extent that, as to the affidavit of
Admiral Lehman, the New York district court in
*Nesbiet* found otherwise, this Court respectfully
disagrees.[FN2]

> FN2. Were this Court to look to
> unreported cases for guidance, it would
> look to the decisions of district courts in
> this circuit, including this Court. *See,
> Schilz v. A.P. Green Industries, Inc.,* 2002
> WL 102608 (N.D.Cal.) (no colorable
> federal defense); *Westbrook v. Asbestos
> Defendants,* 2001 WL 902642 (N.D.Cal.)
> (no colorable federal defense); *Nguyen v.
> Allied Signal,* 1998 WL 690854 (N.D.Cal.)
> (no colorable federal defense); *Ireton v.
> Kaiser Ventures, LLC,* C03-2840RBL
> (finding a colorable defense but no causal
> nexus); *Zink v. Rapid-American
> Corporation, et al.,* C99-964RSL (failure
> to establish a colorable defense), and
> others cited by plaintiff (Declaration of
> Melissa Mather, Exhibits J.M.N. O.)

As Viad has failed to submit evidence that it was
subject to reasonably precise specifications with
respect to warnings during the relevant time period,
it has not established a colorable federal defense.
Viad has therefore failed to meet the burden of
establishing that removal was proper. Accordingly,
plaintiff's motion for remand is GRANTED.

This case is hereby REMANDED to the King
County Superior Court, Cause No. 05-2-13717-7
SEA. The Clerk shall close this file and send a
certified copy of this Order to the Clerk of Court for
the King County Superior Court.

W.D.Wash.,2005.
Westmiller v. Imo Industries, Inc.
Not Reported in F.Supp.2d, 2005 WL 2850334
(W.D.Wash.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 4

Not Reported in F.Supp.2d, 2005 WL 2850334 (W.D.Wash.)
**(Cite as: Not Reported in F.Supp.2d)**


Briefs and Other Related Documents (Back to top)

• 2005 WL 3322152 (Trial Pleading) Defendant
Warren Pumps, LLC's Answer, Affirmative
Defenses, Counterclaim and Reservation of Rights
(Oct. 27, 2005) Original Image of this Document
(PDF)
• 2005 WL 2860655 (Trial Pleading) Answer of
Defendant IMO Industries, Inc. to Plaintiff's
Supplemental Complaint for Personal Injury and
Wrongful Death, Affirmative Defenses, and Answer
to Cross-Claims By Defendants (Aug. 31, 2005)
Original Image of this Document (PDF)
• 2005 WL 2860653 (Trial Pleading) Answer of
Defendant    Goulds    Pumps    to    Plaintiff's
Supplemental Complaint, Affirmative Defenses,
Counterclaim, and Answer to Cross-Claims By
Defendants. (Aug. 29, 2005) Original Image of this
Document (PDF)
• 2005 WL 2860892 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Reply re Motion for
Remand and Motion to Strike (Aug. 19, 2005)
Original Image of this Document (PDF)
• 2005 WL 3843288 () Deposition of Radm Ben J.
Lehman, USN (Ret) (Aug. 11, 2005)
• 2005 WL 3843287 () Deposition of Charles R.
Cushing, Ph.D., Pe (Jul. 13, 2005)
• 2:05cv00945 (Docket) (May. 25, 2005)
• 2005 WL 3978990 () (Partial Testimony) (2005)
Original Image of this Document (PDF)
• 2004 WL 3704404 () Affidavit of Admiral Ben J.
Lehman, U.S. Navy, Ret. (Oct. 6, 2004) Original
Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 889729 (M.D.Fla.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**C**
Briefs and Other Related Documents
Ward        v.        Lockheed        Martin
Corp.M.D.Fla.,2006.Only the Westlaw citation is
currently available.
United States District Court,M.D. Florida.
Laura A. WARD, et al., Plaintiffs,
v.
LOCKHEED MARTIN CORPORATION, Loral
Corporation, WPI Sarasota Division, Inc., Wire
Pro, Inc., Becsd, LLC. and Does 1-20, Defendants.
No. 805CV1878T17TGW.

March 31, 2006.

Bruce H. Denson, Whittemore, Denson P.A., St.
Petersburg, FL, for Plaintiffs.
Clifford J. Zatz, Jennifer R. Devery, Lynn E.
Parseghian, Richard E. Schwartz, Crowell &
Moring, LLP, Washington, DC, Leslie Norman
Vaughan-Birch, Kirk Pinkerton, P.A., Sarasota, FL,
for Defendants.

*ORDER*
KOVACHEVICH, J.
*1 This cause is before the Court on Plaintiffs,'
Laura A. Ward, *et al.,* (Plaintiffs) Motion for
Remand (Dkt.12) including Plaintiffs' Memorandum
of Law in Support of Plaintiffs' Motion for Remand
(Dkt.13), both filed on November 3, 2005. Also
before this Court is Defendant Lockheed Martin
Corporation's Opposition to Plaintiffs' Motion For
Remand (Dkt.22-1), filed on December 2, 2005.

PROCEDURAL BACKGROUND

Plaintiffs in this case either own or occupy homes in
Manatee County, Florida and on September 1,
2005, filed a multi-count complaint in the Manatee
County Circuit Court against Lockheed Martin
Corporation, Loral Corporation, WPI Sarasota
Division, Inc., Wire Pro, Inc., BECSD, LLC, and

Does 1-20, (Defendants). Plaintiffs allege that their
property has been contaminated with hazardous
chemicals and substances, including but not limited
to beryllium dust, trichloroethylene, 1,4 dioxin and
perchlorethylene.        (Complaint).        Plaintiffs
specifically contend that Defendants are legally
responsible for the contamination and, furthermore,
that Defendants knew of this contamination for
years and intentionally failed to disclose this
information to the Plaintiffs. (Complaint, ¶ 260).

Defendant Lockheed Martin Corporation is a
Maryland corporation with its principal place of
business in Maryland; it is authorized to do business
in Florida and has assumed the liabilities of Loral
Corporation. Defendant BESCD, LLC is a Florida
limited liability company whose sole entity is a New
Jersey limited partnership. Defendant Wire Pro, Inc.
is a Pennsylvania corporation with its principal
place of business in New Jersey. Defendant WPI
Sarasota Division, Inc. is a Florida corporation with
its principal place of business in Florida. Each
Defendant named in the suit is either a past or
present owner or operator of the site in Manatee
County, Florida from which the Plaintiffs allege that
the hazardous materials originated. The ownership
history of the plant in Manatee County ("site") is
quite convoluted. From 1991 to 1996, Loral Metals
Technology Beryllium Company, predecessor in
interest   to   Loral   Corporation,   operated   a
machine/metal working plant at the "site." In 1996,
Lockheed Martin Corporation merged with Loral
Corporation   and   Lockheed   Martin   obtained
ownership of the plant and the site; Lockheed
Martin discontinued the plant's operations in 1997.
In 2000, Wire Pro, Inc. purchased the site and
currently, WPI Sarasota Division, Inc., a subsidiary
of Wire Pro, Inc., presently operates at the site.
(Dkt.2).

Plaintiffs filed this lawsuit in Manatee County
Circuit Court on the basis that Plaintiffs are Florida
citizens and Defendant WPI Sarasota is a Florida
Corporation with its principal place of business in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 889729 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d)**

Florida. (Dkt.13). On or about October 6, 2005, Defendant Lockheed Martin filed a Notice of Removal of Plaintiffs' action alleging the fraudulent joinder of Defendant WPI Sarasota, the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332, and federal officer jurisdiction under 28 U.S.C. § 1442(a)(1).

### STANDARD OF REVIEW

*2 A district court "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." However, " any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1331; 28 U.S.C. § 1441(a). If a plaintiff objects to a defendant's removal, the burden of proof is on the defendant, as the removing party, to prove by a preponderance of the evidence that the action was properly removed. *Forest v. Penn Treaty American Corp.*, 270 F.Supp.2d 1357, 1360 (M.D.Fla.2003). A federal district court must remand to the state court any case that was removed without the necessary jurisdiction. *Cacciatore v. Liberty Life Assurance Co. Of Boston*, 85 F.Supp.2d 1282, 1283 (M.D.Fla.2000). Due to the fact that removal jurisdiction raises significant federal concerns, federal courts "are directed to construe removal statutes strictly and doubts about jurisdiction should be resolved in favor of remand to a state court." *Forest*, 270 F.Supp.2d at 1360-61.

### DISCUSSION

*Removal Pursuant to 28 U.S.C. § 1332*

Plaintiffs allege that that Defendant WPI Sarasota Division, Inc. has not been fraudulent joined and thus, removal pursuant to 28 U.S.C. § 1332 is improper and diversity jurisdiction does not exist. In order to have diversity jurisdiction, complete diversity is required; in other words, every plaintiff must be diverse from every defendant. 28 U.S.C.A. § 1332. The doctrine of fraudulent joinder provides an exception to the requirement of complete

diversity because an action may be removable if the joinder of the non-diverse party is fraudulent. 28 U.S.C. § 1441(a). In determining whether to sustain a fraudulent joinder allegation, "a state court must find that there was no possibility that the plaintiff could prove a cause of action against the resident defendant or that the plaintiff fraudulently pled jurisdictional facts in order to subject that resident defendant to the jurisdiction of the state court." *Insinga v. LaBelle,* 845 F.2d 249, 254 (11th Cir.1988)(citing *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983)). In *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284 (11th Cir.1998), the court clarified its position and stated that a plaintiff need not have a "winning case against the allegedly fraudulent defendant" in order to defeat diversity jurisdiction, the plaintiff only needs "a possibility of stating a valid cause of action." Thus, case law supports the notion that so long as Plaintiffs have stated a valid cause of action against Defendant WPI Sarasota, the doctrine of fraudulent joinder does not apply and removal pursuant to 28 U.S.C. § 1332 is improper.

Defendant WPI Sarasota is the present operator of the site. While no evidence has been submitted that Defendant WPI Sarasota used any of the alleged hazardous chemicals at its facility since it began its operations in 2000 (Dkt.22-2), evidence has been submitted that the hazardous materials present on the site in 2000 continue to migrate offsite into the residential communities. (Dkt.14). Moreover, pursuant to Fla. Stat § 376.313(3) and its interpretation in *Aramark Uniform and Career Apparel, Inc. v. Easton,* 894 So.2d 20, 24 (Fla.2004), a strict liability cause of action exists for the " non-negligent discharge of pollution without proof that the defendant caused it." Plaintiffs have alleged that Defendant WPI Sarasota operated the site during the time in which the hazardous chemicals emanated from the site onto the residential communities. (Dkt.13, p. 6). After reviewing the evidence, specifically the Affidavits and Declarations submitted on behalf of the Plaintiffs, this Court finds that the Plaintiffs have stated a claim for relief against Defendant WPI Sarasota and Defendant has not proved the contrary. Thus, this Court finds that removal is not warranted under 28. U.S.C. § 1332 because Defendant WPI Sarasota has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 889729 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d)**

not been fraudulently joined as Plaintiffs have alleged facts that support a basis for recovery.

*Removal Pursuant to 28 U.S.C. § 1442(a)(1)*

**\*3** Defendant Lockheed Martin also maintains that removal is proper pursuant to Federal Officer Removal, 28 U.S.C. § 1442(a)(1) (Dkt.22-1, p. 15), which provides that a civil action commenced in State court against "any officer (or any person acting under that officer) of the United States, ... for any act under color of such office or on account of any right, title, or authority, claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue" may be removed to a district court of the United States. If a federal officer is involved in the cause of action, removal is only proper pursuant to 28 U.S.C. § 1442(a)(1) when: (1) the defendant was a "person" within the meaning of the statute, (2) defendant was acting at the direction of a federal officer and a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims, and (3) the defendant has asserted a colorable federal defense. *See Mesa v. California,* 489 U.S. 121, 124-25, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). Plaintiffs concede that Defendant Lockheed Martin satisfies the "person" requirement and, thus, the only issues before this Court are whether Defendant Lockheed Martin acted under federal government direction and whether there is a causal nexus between that federal direction and the Complaint (prong 2), and whether the Defendant Lockheed Martin has asserted a colorable defense (prong 3).

This Court first addresses whether Defendant Lockheed Martin raised a colorable federal defense under federal law. In analyzing this, the question before the Court is not whether a claimed defense is meritorious, but only whether a colorable claim to such a defense has been made. *Fung v. Abex Corp.,* 816 F.Supp. 569, 573 (N.D.Cal.1992). Defendant Lockheed Martin asserts the government contractor and derivative sovereign immunity defenses. (Dkt.22-1, p. 22). In *Boyle v. United States Technology Corp.,* 487 U.S. 500, 512, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988),

announced a three part test for determining when state law tort is displaced by federal common law in a suit against a government military contractor: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. The Third Circuit in *Carley v. Wheeled Coach,* 991 F.2d 1117, 1120 (3d Cir.1993) , extended the *Boyle* holding to nonmilitary contractors explaining that "a private contractor who is compelled by a contract to perform an obligation for the United States should, in some circumstances, share the sovereign immunity of the United States." *Carley,* 991 F.2d at 1120.

Based on the evidence submitted by the parties, this Court finds that the United States provided reasonably precise specifications to Defendant Lockheed Martin and the equipment used by the Defendant conformed to those specifications. (Dkt.23-1, 24-1). As to whether the government was provided with specific warnings concerning the risks of beryllium dust, trichloroethylene, 1,4 dioxin and perchlorethylene, it is not entirely clear that this defense would apply here. The declarations submitted on behalf of Defendant Lockheed indicate that the U.S. Government inspected the facilities for cleanliness and safety, but do not expressly state that it specifically informed the government of the full extent of the risks. (Dkt.23-1, 24-1). Such an analysis, however, would be relevant to the "merits" of the defense and not to the question of whether the defense is "colorable." Thus, without further analysis, this Court finds that Defendant Lockheed Martin asserted a colorable defense and, therefore, satisfies that prong of the federal officer removal test.

**\*4** Next, this Court addresses whether Defendant Lockheed Martin was "acting under" an officer of the United States and whether there is a causal nexus between its actions under a federal officer and the Plaintiffs' claims. To establish that it was " acting under" a federal officer, Defendant Lockheed Martin must show a causal nexus between the conduct charged in Plaintiffs' claims and the acts performed by Defendant Lockheed Martin at the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 4

Not Reported in F.Supp.2d, 2006 WL 889729 (M.D.Fla.)
(Cite as: Not Reported in F.Supp.2d)

direction of official federal authority. *See Willingham v. Morgan,* 395 U.S. 402, 409, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). Defendant Lockheed Martin argues that the Loral American Beryllium Company (LABC) "acted under federal direction, and that the challenged conductDefendants' use and handling of beryllium and chlorinated solvents-arises out of actions taken by a government contractor at the direction of a federal officer." (Dkt.22-1). Specifically, Defendant Lockheed Martin submitted declarations of former LABC employees which demonstrate that LABC supplied beryllium parts, designed and specified by the federal government. These declarations also establish that the U.S. government "frequently inspected LABC's facilities" and "LABC's beryllium parts to ensure compliance with the government designs." (Dkt.23-1, Dkt.24-1, p. 5-6).

In response to Defendant Lockheed's argument, Plaintiffs' emphasize a distinction between governmental control over manufacture and production versus incidental waste disposal. Plaintiffs essentially contend that without governmental control over the latter, which is the basis of Plaintiffs' claims, federal officer removal does not exist. Case law supports Plaintiffs' position. In *Bahrs v. Hughes Aircraft Company,* 795 F.Supp. 965, 970 (D.Ariz.1992), the court distinguished between the government's control over production versus the government's control over waste method disposal. In *Bahrs,* the Plaintiffs were members of a class that sustained injuries as a result of the dumping of toxic substances, including TCE, into the ground, which polluted plaintiffs' water supply, and one of the defendants, General Dynamics, was an aerospace company under contract to United States War Department. *Id.* at 968-69. The facts in *Bahr* are similar to the instant case; the Plaintiffs in *Bahrs* objected to General Dynamics' removal petition on the ground that it did not meet the requirements of the federal officer removal statue just as the Plaintiffs in the instant case allege that Defendant Lockheed Martin did not meet the federal officer removal requirements. In *Barhs* the dispositive issue was whether General Dynamics demonstrated that it was "acting under" an officer of the United States. *Id.* at 969. The court ruled that removal was not appropriate because

General Dynamics did not demonstrate the government's necessary control over the method of waste disposal. *Id.* The Court specifically found that General Dynamics did not establish that the government exercised direct and detailed control over the alleged disposal of pollutants into plaintiff's water supply. *Id.* at 970.

*5 An examination of the case law submitted by each party reveals much about the merits of Defendant's assertions. Not one of Defendant's cited cases holding that the government exercised the requisite amount of control to trigger federal officer removal involve an instance of disposal of toxic substances ordered produced by the government. In contrast, cases relied on by the Plaintiffs finding federal officer removal inappropriate illustrate the distinction between governmental control over manufacture and production versus governmental control over disposal. *See Bahrs,* 795 F.Supp. 965 at 970; *Arness v. Boeing North American, Inc.,* 997 F.Supp. 1268, 1274-75 (C.D.Cal.1998). Accordingly, as Defendant Lockheed Martin has not offered any evidence supporting its claim that the federal government exercised control over the disposal of hazardous substances, this Court holds that Defendant Lockheed Martin has not met its burden of demonstrating the causal nexus to invoke the protections of the federal officer removal statute.

*CONCLUSION*

For the reasons stated above, this Court has no subject-matter jurisdiction over this case. First, Plaintiffs have not fraudulently joined Defendant WPI Sarasota. Stated simply, there is a possibility that a state court could find that the complaint states a cause of action against resident Defendant WPI Sarasota. Next, Defendant Lockheed Martin has not established the requisite causal connection to invoke the protections of the federal officer removal statutes. Specifically, Defendant Lockheed Martin did not submit any evidence supporting its claim that the government exercised control over the disposal of beryllium dust, trichloroethylene, 1,4 dioxin and perchlorethylene. Thus, because Defendant Sarasota WPI was not fraudulently joined and because Defendant Lockheed Martin

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5

Not Reported in F.Supp.2d, 2006 WL 889729 (M.D.Fla.)
**(Cite as: Not Reported in F.Supp.2d)**

does not qualify for federal officer removal, there is
not complete diversity between the parties, and the
United States federal courts do not have subject
matter jurisdiction over this case. Accordingly, it is

ORDERED that Plaintiffs' motion to remand is
GRANTED and the Clerk of the Court is
DIRECTED to remand this case to the Circuit Court
of the Twelfth Judicial Circuit in Manatee County,
Florida. The Clerk of Court should close this case
and terminate all pending motions.

DONE and ORDERED.

M.D.Fla.,2006.
Ward v. Lockheed Martin Corp.
Not Reported in F.Supp.2d, 2006 WL 889729
(M.D.Fla.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1047975 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Opposition to Defendants'
Motion for Redesignation to Track Three (Mar. 20,
2006) Original Image of this Document (PDF)
• 2005 WL 3614707 (Trial Motion, Memorandum
and Affidavit) Memorandum of Law in Support of
Plaintiffs' Motion for Remand (Nov. 3, 2005)
Original Image of this Document (PDF)
• 2005 WL 3138937 (Trial Pleading) Amended
Complaint Pursuant to Order of the Court Dated
October 11, 2005 (Nov. 1, 2005) Original Image of
this Document (PDF)
• 8:05cv01878 (Docket) (Oct. 11, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1201212 (S.D.W.Va.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**C**
Briefs and Other Related Documents
Roberts          v.          Anchor          Packing
Co.S.D.W.Va.,2005.Only the Westlaw citation is
currently available.
    United States District Court,S.D. West Virginia.
    Linda Louise ROBERTS, Executrix of the Estate of
             Kenneth John Roberts, Plaintiff,
                            v.
    ANCHOR PACKING CO., et al., Defendants.
             **No. Civ.A. 2:05-CV-00320.**

                    May 19, 2005.

Anne McGinness Kearse, Motley Rice, Mount
Pleasant, SC, Leslie Crosco, Hartley & O'Brien,
Wheeling, WV, for Plaintiff.
Apryll H. Boggs, David K. Hendrickson, R. Scott
Long, Stephen M. Schwartz, Hendrickson & Long,
Charleston, WV, for Defendants.

    MEMORANDUM OPINION AND ORDER
GOODWIN, J.
*1 Pending before the court is the plaintiff's Motion
to Remand and for Emergency Hearing [Docket 4].
Plaintiff Linda Louise Roberts originally filed this
action in West Virginia state court on August 16,
2004. On April 15, 2005, defendant Owens-Illinois,
Inc. removed the action based on the federal
defense of government contractor immunity,
pursuant to 28 U.S.C. § 1442(a)(1). Roberts now
moves this court for remand pursuant to 28 U.S.C. §
1447(c), arguing that Owens-Illinois exceeded the
30-day limit for removal and failed to show proper
removal on the merits under the federal officer
statute, 28 U.S.C. § 1442(a)(1). Because
Owens-Illinois did not timely remove this case,
federal jurisdiction does not exist. The court need
not address the substantive grounds for removal.
Accordingly, the court GRANTS the plaintiff's
motion to remand and DENIES AS MOOT the
plaintiff's request for emergency hearing.

Defendants generally must file for removal within
30 days of receiving the initial pleading. 28 U.S.C. §
1446(a). This 30-day period begins to run only
where an initial pleading reveals a ground for
removal. *Lovern v. Gen. Motors Corp.,* 121 F.3d
160, 162 (4th Cir.1997). Where such details are
obscured, omitted, or misstated, the defendant must
remove the case within 30 days of discovery of the
grounds for federal jurisdiction in an amended
pleading, motion, order, or other paper. 28 U.S.C. §
1446(b); *Lovern,* 121 F.3d at 162.

Neither party argues that the case was removable
based on initial pleadings. Instead, the parties
dispute when it could first be ascertained from "
other paper" that removal was proper. The Fourth
Circuit has determined that the "motion, order or
other paper requirement is broad enough to include
any information received by the defendant, whether
communicated in a formal or informal manner."
*Link Telecomms., Inc. v. Sapperstien, et al.,* 119
F.Supp.2d    536,    542    (D.Md.2000)    (citations
omitted). The term "other paper" has been
construed to include, for example, requests for
admissions, deposition testimony, settlement offers,
answers to interrogatories, briefs, and product
identification documents given in discovery. *Id.*

Roberts contends that the 30-day removal period
was triggered by service of the plaintiff's initial
disclosures on October 18, 2004 and alternatively
by service of the plaintiff's witness disclosures
concerning the anticipated deposition testimony of
Master Chief BT M. Joe Anderson on or about
March 4, 2005. The plaintiff's October 18, 2004
initial disclosures included a table of exposure
information that listed Owens-Illinois as the
manufacturer/supplier of Kaylo pipecovering and/or
block insulation associated with plaintiff's alleged
asbestos exposure while on a U.S. Navy work
site/location from 1955-1959. The plaintiff's March
4, 2005 disclosure revealed that Mr. Anderson's
anticipated deposition testimony would identify
Owens-Illinois    Kaylo    as    one    of    the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2005 WL 1201212 (S.D.W.Va.)
**(Cite as: Not Reported in F.Supp.2d)**

asbestos-containing products present on the U.S.S. Moale, the navy ship where plaintiff worked and was allegedly exposed to asbestos from 1955-1959. Owens-Illinois asserts that it was first put on notice of removability during the deposition testimony of Mr. Anderson taken on March 16, 2005 when it reasonably determined from Mr. Anderson's testimony that the federal contractor defense under 28 U.S.C. 1442(a) was available. Owens-Illinois argues that neither of the documents cited by Roberts could "unequivocally provide sufficient notice within the four corners of the documents themselves." Def.'s Resp. Mem. at 2-3.

**\*2** The Fourth Circuit has stated that it "will not require courts to inquire into the subjective knowledge of the defendant ... [r]ather, [it] will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Lovern*, 121 F.3d at 162. Most courts that have considered this issue require that a defendant remove the case within thirty days "unless the initial pleading provides no clue that the action may be removable." *Link Telecomms.*, 119 F.Supp.2d at 541 (quoting *Kaneshiro v. N. Am. Co. for Life and Health Ins.*, 496 F.Supp. 452, 460 (D.Haw.1980); *see also, Spreeman v. HealthSouth Corp.*, No. 95-1366, 1996 WL 129814 at \*3 (D.Kan. Feb.27, 1996) (indicating that the vast majority of cases that have considered this question since *Kaneshiro* have followed the above standard). Accordingly, there is no requirement that removability be unequivocally clear to trigger the thirty-day clock.

In light of the principles set forth above, I FIND that the plaintiff's discovery disclosures provided Owens-Illinois with sufficient information to constitute notice of grounds for removal. Both the October 18, 2004 and March 4, 2005 disclosures indicated that plaintiff alleged exposure to asbestos through work around Owens-Illinois Kaylo while in the Navy. *See, e.g., Carter v. Acands, Inc.* 2002 WL 31682352 \*3 (E.D.Tex. June 27, 2002) (Noting that a paper disclosing that plaintiff would present a witness to testify that Mr. Carter had been exposed

to asbestos through work around Westinghouse turbines aboard the U.S.S. Towers, a Navy ship, was specific enough to provide sufficient notice of removability). This information contained in the plaintiff's discovery disclosures certainly provided Owens-Illinois with more than a clue of possible government contractor immunity. Further considering the Fourth Circuit's directive that "[a]ny doubts concerning the propriety of removal must be resolved in favor of retained state court jurisdiction, " *Marshall v. Manville Sales,* Corp. 6 F.3d 229, 232 (4th Cir.1993), I FIND that remand is the appropriate course of action in this case. Accordingly, there is no need to address Owens-Illinois' substantive grounds for removal.

For these reasons, the plaintiff's Motion to Remand is GRANTED, and the plaintiff's Motion for Emergency Hearing is DENIED AS MOOT [Docket 4]. Accordingly, the court REMANDS this case to the Circuit Court of Marshall County, West Virginia.

The court DIRECTS the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented party.

S.D.W.Va.,2005.
Roberts v. Anchor Packing Co.
Not Reported in F.Supp.2d, 2005 WL 1201212 (S.D.W.Va.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 1330080 (Trial Motion, Memorandum and Affidavit) Response to Motion to Remand (May 3, 2005) Original Image of this Document (PDF)
• 2005 WL 1330079 (Trial Pleading) Amended Complaint (Apr. 26, 2005)
• 2005 WL 1330078 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss, Answer and Affirmative Defenses of John Crane, Inc., to Plaintiff's Amended Complaint and Answer to All Crossclaims of Defendants Asserting Crossclaims or Who May Assert Crossclaims (Apr. 25, 2005) Original Image of this Document (PDF)
• 2005 WL 1330077 (Trial Motion, Memorandum and Affidavit) Motion to Remand and for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 1201212 (S.D.W.Va.)
**(Cite as: Not Reported in F.Supp.2d)**

Emergency Hearing (Apr. 19, 2005) Original Image
of this Document (PDF)
• 2:05CV00320 (Docket) (Apr. 15, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Garvan F. McDaniel, hereby certify that on this 8th day of November, 2006 the

attached Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Remand to State

Court was served upon:

Armand Della Porta, Jr., Esquire
Ana Marie McCann, Esquire
Marshall, Dennehey, Warner,
Coleman & Goggin
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899

Loreto Rufo, Esquire
7217 Lancaster Pike, Suite F
Hockessin, DE 19707

Megan Mantzavinos, Esquire
Marks, O'Neill, O'Brien & Courtney
913 North Market Street, Suite 800
Wilmington, DE 19801

J. Michael Johnson, Esquire
Rawle & Henderson
300 Delaware Avenue, Suite 1015
P.O. Box 588
Wilmington, DE 19899

Timothy Dillon, Esquire
Slamon, Ricchezza, Singer & Turchi
222 Delaware Avenue, 11th Floor
Wilmington, DE 19801

Beth Valocchi, Esquire
Valocchi & Sasso
3513 Concord Pike, Suite 2000
Wilmington, DE 19803

Christian Singewald, Esquire
White & Williams
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899

Lynne Parker, Esquire
Hollstein, Keating, Cattell,
Johnson & Goldstein
One Commerce Center, Suite 730
1201 North Orange Street
Wilmington, DE 19801

Francis Murphy, Esquire
Murphy, Spadaro & Landon
1011 Centre Road, Suite 210
Wilmington, DE 19805

Mark Reardon, Esquire
Elzufon, Austin, Reardon,
Tarlov & Mondell
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE 19899

via electronic filing.

**BIFFERATO, GENTILOTTI,
BIDEN & BALICK, L.L.C.**

_____

Garvan F. McDaniel (#4167)
1308 Delaware Avenue
P.O. Box 2165
Wilmington, DE 19899-2165
Tel. (302) 429-1900
Fax. (302) 429-8600